# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PATRICIA MARTINEZ,

      Plaintiff,

vs.                                                                                    No. CIV 09-0281 JB/KBM

MICHAEL MARTINEZ, LYNDA LATTA,
HON. ELIZABETH WHITEFIELD, PAUL
WIEST, and JEAN SMITH,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Magistrate Judge's Proposed Findings

and Recommended Disposition, filed December 22, 2009 (Doc. 68)("PF&RD"); and (ii) the

Objections to Proposed Findings of Fact and Recommended Disposition, filed January 7, 2010

(Doc. 69). The primary issues are: (i) whether the allegations of Plaintiff Patricia Martinez'

Amended Complaint involve improper review of state-court orders, which the Rooker-Feldman[1]

doctrine prohibits; (ii) whether the abstention doctrine of Younger v. Harris, 401 U.S. 37 (1971),

warrants dismissal or a stay to allow the issues to be vetted in state court; (iii) whether the judicially

created domestic-relations exception to federal subject-matter jurisdiction applies to this case,

requiring a dismissal for want of jurisdiction; (iv) whether Defendant Hon. Elizabeth Whitefield,

State District Judge, is entitled to immunity from suit; and (v) whether P. Martinez' Amended

Complaint states a claim that entitles her to relief under the Supreme Court of the United States'

teachings in Twombly v. Bell Atlantic Corp., 550 U.S. 544, 555 (2007), and Ashcroft v. Iqbal, 129

---

[1] The Rooker-Feldman doctrine originates from the two cases from which it derives its name, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). See Dauwe v. Miller, No. 09-1321, 2010 WL 369366, at *1 (10th Cir. Feb. 3, 2010).

S. Ct. 1937 (2009). Because the Court finds that the doctrines proposed by the Magistrate Judge do not dispose of all parties and claims, and that P. Martinez appears to state a valid claim against Defendants Michael Martinez and Lynda Latta, the Court adopts in part and rejects in part the Magistrate Judge's PF&RD, and dismisses P. Martinez' Amended Complaint only in part.

**FACTUAL BACKGROUND**

The factual basis of this case is difficult to discern from the facts that P. Martinez states. What the Court can discern is this: this suit arises out of a divorce proceeding that P. Martinez alleges resulted in an unfair distribution of property. As the Magistrate Judge concisely put it:

> Plaintiff and Defendant Michael Martinez are ex-spouses, and their divorce has sparked a series of overlapping, interrelated, and frequently pro se state court actions concerning the distribution of marital property. Plaintiff believes that her ex-husband hid assets and that she therefore did not receive her fair share of the marital estate. See, e.g., Doc. 3 at 2, 4-20, 35, 46-49; see also Doc. 16 at 1-3. All of the Defendants were involved in those state suits either as a party, judge or counsel, or involved with the property Plaintiff believes should have been part of the distribution from the divorce. See, e.g., Doc. 3 at 4 (Defendant Martinez instituted suit); e.g., id. at 9-10 (Defendant Whitefield was a judge in one of the suits); e.g., id. at 16-17 (Defendant Latta served as ex-husband's attorney); see, e.g., id. at 50 (Defendants Wiest and Smith were involved with property allegedly withheld).

PF&RD at 2. The Court has reviewed the entire fifty-one-page Amended Complaint, and agrees with the Magistrate Judge's summary of the players and their parts in this dispute.

It bears emphasis, however, that P. Martinez' Amended Complaint involves more detail than that which the Magistrate Judge set forth. Most importantly for the disposition of the motions underlying the Magistrate Judge's PF&RD, P. Martinez insists that M. Martinez, represented by his attorney, Ms. Latta, filed a malicious-abuse-of-process claim, filed numerous frivolous motions, engaged in forum-shopping, and lied to judges. P. Martinez also alleges that M. Martinez and Ms. Latta engaged in this conduct with the intent to deplete P. Martinez' resources, to keep her from pursuing her rights in a contract dispute initiated in Oklahoma, and to keep her from engaging in

discovery that would uncover the assets that she alleges M. Martinez concealed during the divorce proceeding.

**PROCEDURAL BACKGROUND**

P. Martinez brings this suit for malicious abuse of process, civil-rights violations, and a partition/accounting under NMSA 1978, § 40-4-20A, based on both the Court's federal-question jurisdiction based on the assertion of federal claims, and its diversity jurisdiction based on her assertion that she is domiciled in Wisconsin and all Defendants are domiciled in New Mexico. See Amended Complaint ¶¶ 1-11, at 2-3, filed April 8, 2009 (Doc. 3). As the Magistrate Judge pointed out, "[a]ll of the Defendants have been served and answered or otherwise pleaded." PF&RD at 1. Just as it appears she did before filing this suit, P. Martinez has expended substantial time, effort, and paper filing various documents, many of which are an effort to procedurally bar her chosen Defendants from responding or defending themselves in this matter. See Motion to Strike "Paul Wiest's Answer to Lawsuit, August 4, 2009," filed August 25, 2009 (Doc. 13); Motion to Strike "Defendant Lynda Latta's Motion to Dismiss Plaintiff's Amended Complaint With Prejudice Prusuant [sic] to Fed. R. Civ. P. 12(b)(6) or in the Alternative to Dismiss with Prejudice for Lack of Jurisdiction," filed August 25, 2009 (Doc. 14); Motion to Correct Record as to Filing Dates of Document Number 12, 13, and 14, filed September 14, 2009 (Doc. 21); Motion to Strike "Defendant Elizabeth Whitefield's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) Filed on August 25, 2009, filed September 14, 2009 (Doc. 22); Motion to Strike "Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion to Dismiss," filed September 14, 2009 (Doc. 23); Motion to Strike "Motion to Stay Discovery Until the Court Rules on Defendant Judge Whitefield's Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion to Dismiss," filed Septmeber 14, 2009 (Doc. 24); Motion to

Strike and/or Deny Defendant Mike Martinez's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading, filed September 28, 2009 (Doc. 36); Motion to Strike and/or Deny Defendant Jean Smith's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading, filed September 28, 2009 (Doc. 37); Motion to Enter Default Against Defendant Mike Martinez, filed October 22, 2009 (Doc. 45); Motion to Enter Default Against Defendant Jean Smith, filed October 22, 2009 (Doc. 46); Motion to Enter Default Against Defendant Elizabeth Whitefield, filed October 22, 2009 (Doc. 47). On the other hand, all parties that have responded have sought dismissal of P. Martinez' case on various grounds. See Letter from Paul Wiest to the Court (dated August 5, 2009), filed August 10, 2009 (Doc. 10); Defendant Lynda Latta's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative to Dismiss with Prejudice for Lack of Jurisdiction, filed August 10, 2009 (Doc. 11); Defendant Judge Elizabeth Whitefield's Motion to Dismiss, filed August 25, 2009 (Doc. 15); Defendant Jean Smith's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading, filed September 24, 2009 (Doc. 31); Defendant Mike Martinez's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading, filed September 24, 2009 (Doc. 33).

On December 11, 2009, the Court ordered this matter referred to the Magistrate Judge for proposed findings and recommended disposition, which order the Court amended on December 14, 2009. See Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings, filed December 11, 2009 (Doc. 66); Amended Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings,

filed December 14, 2009 (Doc. 67). On December 22, 2009, the Magistrate Judge filed her PF&RD. P. Martinez filed her objections to the PF&RD within fourteen days, as federal law required her to do. M. Martinez, Smith, and Judge Whitefield filed responses to her objections, and P. Martinez filed a reply to each of the Defendants' responses.

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which the court can grant relief. Under rule 12(b)(6), a motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)(citing Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969). Pro se pleadings are interpreted liberally, see Swoboda v. Dubach, 992 F.2d 286, 289 (10th Cir. 1993), but must comply with the basic requirements of the Federal Rules of Civil Procedure, see Yang v. Archuleta, 525 F.3d 925, 927 n.1 (10th Cir. 2008)(citing Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994)). Accordingly, notwithstanding the liberal construction provided to pro se filings, the plaintiff is not relieved of the burden of alleging sufficient facts upon which to base a recognized legal claim. See Jenkins v. Currier, 514 F.3d 1030, 1032 (10th Cir. 2008)(citing Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)).

When ruling on a motion to dismiss, the court shall accept all the factual allegations set forth in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007)(citing Bell Atlantic Corp. v. Twombly, 550 U.S. at 555); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). It is not the court's role to weigh potential evidence that the parties might present a trial, but rather to determine whether the plaintiff's complaint states a legally sufficient claim upon which the court can grant relief. See Sutton v. Utah State Sch. for the Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). The controlling law does not require the court to accept the conclusions of law or asserted

application of law to the alleged facts. See Hackford v. Babbitt, 14 F.3d 1457, 1465 (10th Cir. 1994); Olpin v. Ideal Nat'l Ins. Co., 419 F.2d 1250, 1255 (10th Cir. 1969). The controlling law also does not require the court to accept as true legal conclusions that are presented as factual allegations. See Brooks v. Sauceda, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000)(citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555. See Ashcroft v. Iqbal, 129 S. Ct. at 1949-51. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555-56 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 547) (alterations omitted). "The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. at 1949. "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red

-6-

Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (emphasis in original).

## THE ROOKER-FELDMAN DOCTRINE

Although it has a complex history and was for a long time shrouded in mystery, the Rooker-Feldman doctrine embodies the simple principle that federal district courts have no jurisdiction to sit as courts of appeal to state courts. "The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Lance v. Dennis, 546 U.S. 459, 460 (2006)(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp, 544 U.S. 280, 284 (2005)). See Erlandson v. Northglenn Mun. Court, 528 F.3d 785, 788-89 (10th Cir. 2008); Mann v. Boatright, 477 F.3d 1140, 1146 (10th Cir. 2007). The elements, thus, are: (i) a state-court loser; (ii) who is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) which judgment was rendered before the commencement of the federal proceeding. See Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006)("The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.")(quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 284). The Tenth Circuit has made clear that "the Rooker-Feldman doctrine is confined to cases brought after the state proceedings have ended." Mann v. Boatright, 477 F.3d at 1146 (internal quotations omitted). See Guttman v. Khalsa, 446 F.3d at 1031-32 (holding that Rooker-Feldman doctrine applies only where state-court appeals process has run its full course).[2]

---

[2] The Magistrate Judge, in her PF&RD, relied heavily on the Honorable Bruce Black, United States District Judge's description of Rooker-Feldman in Burke v. Kass, Memorandum Opinion and

## RELEVANT LAW OF ABSTENTION UNDER YOUNGER V. HARRIS

Abstention under Younger v. Harris involves circumstances in which, although Congress has granted the federal district courts subject-matter jurisdiction, they must nevertheless decline to exercise that jurisdiction. See Amanatullah v. State Bd. of Med. Examiners, 187 F.3d 1160, 1163 (10th Cir. 1999). "Under the Younger abstention doctrine, federal courts should not 'interfere with state court proceedings by granting equitable relief -- such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings --' when a state forum provides an adequate avenue for relief." Weitzel v. Div. of Occ'l. & Prof'l Licensing of Dep't of Commerce of Utah, 240 F.3d 871, 875 (10th Cir. 2001).

> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

Amanatullah v. State Bd. of Med. Examiners, 187 F.3d at 1163 (quoting Taylor v. Jaquez, 126 F.3d 1294 (10th Cir. 1997)). Furthermore, if the ongoing state action is civil or administrative, it must also be one that the United States Court of Appeals for the Tenth Circuit categorizes as coercive -- generally, a state-initiated proceeding which the federal-court plaintiff/state-court defendant asserts to be unlawful. See Brown ex rel. Brown v. Day, 555 F.3d 882, 888-89 & n.5 (10th Cir. 2009). The Tenth Circuit has stated:

> [T]he Younger pedigree is rooted in state coercive action (namely criminal proceedings) that parties were seeking to enjoin in federal court. The Younger doctrine originated in concerns that federal plaintiffs might stymie state coercive

_____

Order at 7-8, No. CIV 99-0962-BB/RLP (D.N.M. Feb. 4, 2000)(Doc. 40). More recently, however, Justice Ginsburg's 2005 opinion in Exxon Mobil Corp. v. Saudi Basic Industries Corp. and the Supreme Court's 2006 per curiam opinion in Lance v. Dennis substantially revised the doctrine.

> proceedings by bringing suit in the federal courts.  This same motivating concern made its way into later <u>Younger</u> decisions expanding the doctrine to state court civil proceedings.

<u>Id.</u> at 888 n.5.  "In considering these three conditions, this court 'must be sensitive to the competing tension between protecting federal jurisdiction and honoring principles of Our Federalism and comity.'"  <u>Brown ex rel. Brown v. Day</u>, 555 F.3d at 887-88 (quoting <u>Taylor v. Jaquez</u>, 126 F.3d at 1296).  "Critically, this court must keep in mind that abstention 'is the exception, not the rule,' and hence should be 'rarely . . . invoked, because the federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  <u>Brown ex rel. Brown v. Day</u>, 555 F.3d at 888 (quoting <u>Ankenbrandt v. Richards,</u> 504 U.S. 689, 705 (1992)).

## <u>RELEVANT LAW REGARDING THE DOMESTIC-RELATIONS EXCEPTION TO FEDERAL DIVERSITY JURISDICTION</u>

The domestic-relations exception is a judicially created exception to Congress' grant of diversity-based subject-matter jurisdiction on the federal district courts.  The Supreme Court of the United States has recognized that, in a highly circumscribed category of "domestic-relations" cases, federal district courts lack jurisdiction even when there is complete diversity between the parties.  The Tenth Circuit concisely phrased the various rationales for the rule:

> (1) the states have a strong interest in domestic relations matters and have developed an expertise in settling family disputes; (2) such disputes often require ongoing supervision, a task for which the federal courts are not suited; (3) federal adjudication of such disputes increases the chances of incompatible or duplicative federal and state court decrees; and (4) such cases serve no particular federal interest, while they crowd the federal court docket.

<u>Vaughan v. Smithson</u>, 883 F.2d 63, 65 (10th Cir. 1989)(citing <u>Rykers v. Alford</u>, 832 F.2d 895, 899-900 (5th Cir.1987), and <u>Ruffalo v. Civiletti</u>, 702 F.2d 710, 717 (8th Cir.1983)).  The Court has recently applied the exception, finding that it did "not have the power to grant the relief requested in the Petition for Dissolution of Marriage -- namely, dissolution of the marriage and equitable

division of the marital property." Velarde v. Velarde, No. CIV. 08-1044 JB/RLP, 2009 WL 2426232, at *6 (D.N.M. June 29, 2009)(Browning, J.).

The exception grew from a snippet of dicta in the 1858 Supreme Court case of Barber v. Barber, 62 U.S. 582 (1858).

> Our first remark is -- and we wish it to be remembered -- that this is not a suit asking the court for the allowance of alimony. That has been done by a court of competent jurisdiction. The court in Wisconsin was asked to interfere to prevent that decree from being defeated by fraud.
>
> We disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery or as an incident to divorce a vinculo, or to one from bed and board.

62 U.S. at 584. The Supreme Court latched on to these statements in the more recent case of Ankenbrandt v. Richards, 504 U.S. 687 (1992). The Supreme Court recognized that the above statements, "disclaiming jurisdiction over divorce and alimony decree suits, though technically dicta, formed the basis for excluding 'domestic relations' cases from the jurisdiction of the lower federal courts, a jurisdictional limitation those courts have recognized ever since." 504 U.S. at 694. It also noted that it "[subsequently . . . expanded the domestic relations exception to include decrees in child custody cases." Id. at 702 (citing In re Burrus, 136 U.S. 586, 594 (1890)). The Supreme Court then concluded that "the domestic relations exception, as articulated by this Court since Barber, divests the federal courts of power to issue divorce, alimony, and child custody decrees." Ankenbrandt v. Richards, 504 U.S. at 703.[3] As recently as 2004, in Elk Grove Unified Sch. Dist.

---

[3] Ankenbrandt v. Richards dealt with a mother who was asserting, on behalf of her daughters, claims of sexual and physical abuse by the children's father and the father's girlfriend. See 547 U.S. at 305. Ultimately, the Supreme Court concluded that the domestic-relations exception did not encompass ordinary tort claims between people who happened to be family members. See id. at 706-07 ("Because the allegations in this complaint do not request the District Court to issue a divorce, alimony, or child custody decree, we hold that the suit is appropriate for the exercise of § 1332 jurisdiction . . . .").

-10-

v. Newdow, 542 U.S. 1 (2004), the Supreme Court stated:

> So strong is our deference to state law in [the area of domestic relations] that we
> have recognized a "domestic relations exception" that "divests the federal courts of
> power to issue divorce, alimony, an child custody decrees."
>
> * * * *
>
> Thus, while rare instances arise in which it is necessary to answer a substantial
> federal question that transcends or exists apart from the family law issue, in general
> it is appropriate for the federal courts to leave delicate issues of domestic relations
> to the state courts.

542 U.S. at 12-13 (quoting Ankenbrandt v. Richards, 504 U.S. at 703, internal citation omitted).

The exception appears to be firmly entrenched in this Country's jurisprudence.[4]

Over time, the contexts in which courts would apply the domestic-relations exception

expanded, sometimes encompassing suits that were only tangentially related to a divorce, alimony,

or child-custody decree.  For example, the United States Court of Appeals for the Eighth Circuit

reached the following articulation of the rule:

> The domestic relations exception, first articulated in Barber v. Barber, . . . divests the
> federal courts of jurisdiction over any action for which the subject is a divorce,
> allowance of alimony, or child custody.  Ankenbrandt v. Richards, 504 U.S. 689 . .
> . (1992).  In addition, as observed previously . . . when a cause of action closely
> relates to but does not precisely fit into the contours of an action for divorce, alimony
> or child custody, federal courts generally will abstain from exercising jurisdiction.

Kahn v. Kahn, 21 F.3d 859, 861 (8th Cir. 1994).[5]  As the Supreme Court stated: "In the more than

_____

[4] This fact is apparently to the chagrin of Justice Stevens, who said, just two years after Elk
Grove Unified Sch. Dist. v. Newdow, that he "would provide the creature [referring to the domestic-
relations exception] with a decent burial in a grave adjacent to the resting place of the Rooker-
Feldman doctrine."  Marshall v. Marshall, 547 U.S. 293, 318 (2006)(Stevens, J., concurring).

[5] In the Eighth Circuit's defense, it knew this was not truly an articulation of the domestic-
relations exception, recognizing that "Courts generally use abstention in the context of a dispute
relating to domestic relations when the controversy does not fall within the exact purview of divorce,
alimony or child custody, but instead is closely related."  Kahn v. Kahn, 21 F.3d at 860 n.1.

100 years since this Court laid the seeds for the development of the domestic relations exception, the lower federal courts have applied it in a variety of circumstances.  Many of these applications go well beyond the circumscribed situations posed by Barber and its progeny."  Ankenbrandt v. Richards, 504 U.S. at 701.

In 2006, the Supreme Court commented again on the narrow breadth of the domestic-relations exception.  The Supreme Court stated that "the exception covers only 'a narrow range of domestic relations issues.'"  Marshall v. Marshall, 547 U.S. at 307.  "[O]nly 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds."  Id. at 308.

## RELEVANT LAW OF ABSOLUTE JUDICIAL IMMUNITY

In general, judges are entitled to absolute immunity when acting in their judicial capacity. See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982); Stump v. Sparkman, 435 U.S. 349 (1978).  The only exception to this rule is when the judge acts "in the clear absence of all jurisdiction."  Moss v. Kopp, 559 F.3d 1155, 1163 (10th Cir. 2009).  This exception, however, rarely applies because

> the scope of the judge's jurisdiction must be construed broadly when the issue is the immunity of the judge and the necessary inquiry in determining whether a defendant judge is immune from suit is whether at the time he took the challenged action he had jurisdiction over the subject matter before him.

Moss v. Kopp, 559 F.3d at 1164 (citing Stump v. Sparkman, 435 U.S. at 356)(internal quotations omitted).  "[A] judge does not act in the clear absence of all jurisdiction even if the action he took was in error, was done maliciously, or was in excess of his authority."  Moss v. Kopp, 559 F.3d at 1163.

In 1871, the Supreme Court drew a helpful distinction between action taken in excess of jurisdiction and those taken in the clear absence of all jurisdiction.

> [I]f a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences,

jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked.

Bradley v. Fisher, 80 U.S. 335, 352 (1871).  Thus, if a judge has reason to believe he or she has jurisdiction to perform the acts of which the plaintiff complains, or if the judge has jurisdiction of the general subject-matter underlying his or her actions, even if the judge knew his or her actions were in excess of that jurisdiction, the judicial officer is protected.  See Stein v. Disciplinary Bd. of Supreme Court of N.M., 520 F.3d 1183, 1195 (10th Cir. 2008)("There are only two exceptions to [absolute judicial immunity]: (1) when the act is not taken in the judge's judicial capacity, and (2) when the act, though judicial in nature, is taken in the complete absence of all jurisdiction. Regarding the second exception, an act taken in excess of a court's jurisdiction is not to be confused with an act taken in the complete absence of all jurisdiction.")(citations, quotes, and alterations omitted); Guttman v. Khalsa, 446 F.3d at 1033-34 ("Judicial immunity is not overcome by allegations of bad faith or malice[.] Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all jurisdiction can overcome absolute immunity.")(citing Mireles v. Waco, 502 U.S. 9, 12 (1991))(internal quotations omitted).

## RELEVANT LAW OF ELEVENTH-AMENDMENT IMMUNITY

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The immunity articulated in the Eleventh Amendment has also been construed to prohibit federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent.  See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  State agencies and state officials sued in their official capacity are likewise provided immunity as "an arm of the state."  Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977).  In other words, a suit against a state official in his or her official capacity is analogous to one against the state, and thus Eleventh Amendment immunity bars the suit unless a waiver applies. On the other hand, "suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment."  Cornforth v. Univ. of Okla. Bd. of Regents, 263 F.3d 1129, 1132 (10th Cir. 2001).

Exceptions to a state's Eleventh-Amendment immunity are few.  A state may, however, voluntarily waive its immunity.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974).  Congress may also abrogate Eleventh-Amendment immunity pursuant to section 5 of the Fourteenth Amendment to the Constitution of the United States, where the statute explicitly manifests Congress' intent to do so.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  Congress did not, however, abrogate Eleventh Amendment immunity when enacting 42 U.S.C. § 1983 or 42 U.S.C. § 1985.  See Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Quern v. Jordan, 440 U.S. 332, 340, 345 (1979); Ellis v. Univ. Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998).  Consequently, state defendants are entitled to Eleventh Amendment immunity against claims under those statutes, and claims pursuant thereto in the federal courts are barred as a matter of law.

Although not properly characterized as an exception to Eleventh-Amendment immunity, the Ex parte Young doctrine allows for suits against state officials under certain circumstances.  See

Elephant Butte Irrig. Dist. of N.M. v. Dep't of the Interior, 160 F.3d 602, 607-08 (10th Cir. 1998)("The Ex parte Young doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state."). In Ex parte Young, 209 U.S. 123 (1908), the Supreme Court of the United States held that the Eleventh-Amendment bar generally does not apply to state officials defending suits in federal court which seek only prospective relief from violations of federal law. The Ex parte Young doctrine allows suit to proceed against defendant state officials if the following requirements are met: (i) the plaintiffs are suing state officials rather the state itself; (ii) the plaintiffs have alleged a non-frivolous violation of federal law; (iii) the plaintiffs seek prospective equitable relief rather than retroactive monetary relief from the state treasury; and (iv) the suit does not implicate special sovereign interests. See Elephant Butte Irrig. Dist. of N.M. v. Dep't of the Interior, 160 F.3d at 609.

## NEW MEXICO LAW OF MALICIOUS ABUSE OF PROCESS

The tort of malicious abuse of process recently received a face-lift by the Supreme Court of New Mexico. In Durham v. Guest, the Durhams were in a car accident with an uninsured motorist. See 145 N.M. 694, 695, 204 P.3d 19, 20 (2009). When the Durhams tried to make a claim on their uninsured motorist coverage with their auto insurer, Allstate, a dispute arose regarding the amount of damages owed the Durhams under the policy. See id. Guest was Allstate's attorney. See id. The parties eventually went to arbitration, and the Durhams were awarded $45,000.00 plus arbitration costs. See Durham v. Guest, 145 N.M. at 695, 204 P.3d at 20.

The Durhams then brought a bad-faith action against Allstate, Guest, and Allstate's sales agent, alleging numerous common-law and statutory violations, one of which was malicious abuse of process. See id. at 696, 204 P.3d at 21. The trial court dismissed the Durhams' malicious-abuse-of-process claim against Guest, and the Durhams appealed that decision. See id. The Court of

Appeals of New Mexico affirmed on two grounds: (i) an arbitration proceeding, from which the wrongful acts arose, was not a "judicial proceeding" for the purposes of the malicious-abuse-of-process tort; and (ii) Guest did not "initiate" the arbitration, even if it did constitute a judicial proceeding. See id. The Supreme Court of New Mexico granted the Durham's petition for a writ of certiorari.

The Supreme Court of New Mexico reversed. It held that: (i) an arbitration proceeding is a judicial proceeding for the purposes of a claim for malicious abuse of process, see id. at 703, 204 P.3d at 28; and (ii) that the requirement that the defendant initiate judicial proceedings against the plaintiff -- which had previously been an essential element to a malicious-abuse-of-process claim -- was no longer an element, see id. at 701, 204 P.3d at 26. The tort of malicious abuse of process under New Mexico law now has only three elements: (i) "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge;" (ii) "a primary motive in the use of process to accomplish an illegitimate end;" and (iii) damages. Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.

In elaborating upon the first element, the Supreme Court commented:

> An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt. Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts.

Id. at 701, 204 P.3d at 26. About the general policies underlying the malicious-abuse-of-process tort, the Supreme Court said:

> When the judicial process is used for an illegitimate purpose such as harassment, extortion, or delay, the party that is subject to the abuse suffers harm, as does the

-16-

judicial system in general.  Thus, the malicious abuse of process tort makes the process abuser liable to the other party for the harm caused by the abuse of process.

Id. at 702, 204 P.3d at 27.

## RELEVANT LAW OF CIVIL-RIGHTS CLAIMS
## UNDER 42 U.S.C. § 1983 AND § 1985(3)

Both 42 U.S.C. § 1983 and 42 U.S.C. § 1985 are statutes creating a private right of action through which an individual can file a private lawsuit for vindication of his or her civil rights. Section 1983 provides a right of action against state actors who, acting alone or in concert, deprive the claimant of rights secured by the Constitution or laws of the United States.  On the other hand, 42 U.S.C. § 1985 creates a cause of action that can be brought against private individuals who conspire to deprive an individual of the equal protection of the laws.

**1.  Claims Under 42 U.S.C. § 1983.**

Section 1983 of Title 42 of the United States code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action, but does not create any substantive rights -- those must come from the Constitution or federal statute.  See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights.").  "Under 42 U.S.C. § 1983," a plaintiff

> must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)(quoting 1A M. Schwartz, Section

-17-

1983 Litigation: Claims and Defenses § 1.4, at 12 (3d ed.1997)).

      2.        **Claims Under 42 U.S.C. § 1985(3).**

      Claims under 42 U.S.C. § 1985 are less common than claims under § 1983.  Section 1985 pertains to the prohibition of conspiracies which interfere with civil rights.  See 42 U.S.C. § 1985.  The Supreme Court recognizes "five broad classes of conspiratorial activity" that § 1985 prohibits.  Kush v. Rutledge, 460 U.S. 719, 724 (1983).  "Three of the five broad categories . . . relate to institutions and processes of the Federal Government."  Id.  The fourth and fifth classes of § 1985 claims apply to conspiracies to "obstruct the course of justice in state courts" and to "go in disguise on the highway or in the premises of another."  Kush v. Rutledge, 460 U.S. at 724 (internal quotation marks omitted).  Both of these latter categories require an "intent to deprive their victims of the equal protections of the laws," id., which means that there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspiratorial action," id. at 726 (internal quotation marks omitted).  See Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979)("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").

      To succeed on a § 1985 claim, a plaintiff must prove a conspiracy.  See Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1447 (10th Cir. 1990).  To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983).  "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action."  Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).

The Tenth Circuit has held that it is error to "precondition consideration of a plaintiff's § 1985(3) claim upon the finding of § 1983 liability." Dixon v. City of Lawton, Okla., 898 F.2d at 1447 (10th Cir. 1990).

> Although neither § 1983 nor § 1985(3) create any substantive rights, a § 1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws.

Dixon v. City of Lawton, Okla., 898 F.2d at 1447.

To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom. See Paris v. Sw. Bell Tel. Co., 94 Fed. Appx. 810, 815 (10th Cir. 2004); Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993). Conclusory allegations that the defendants acted in concert or conspired, without specific factual allegations to support such assertions, are insufficient to state a claim under § 1985(3). See Merritt v. Hawk, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001).

The Tenth Circuit has stated that § 1985(3) was intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives." Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985). "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979). The Tenth Circuit has consistently dismissed § 1985(3) claims devoid of racial, discriminatory animus. For example, in Paris v. Southwestern Bell Telephone Co., the Tenth Circuit held that the plaintiff's hostile-work-environment claim failed because she did not show racial discriminatory animus on the part of the alleged conspirators. See 94 Fed. Appx. at 815.

-19-

<u>**ANALYSIS**</u>

The Court liberally construes P. Martinez' Amended Complaint, as it must when dealing with a pro se litigant. <u>See</u> <u>Swoboda v. Dubach</u>, 992 F.2d at 289. Nevertheless, the Court finds that it should dismiss the vast majority of P. Martinez' claims. The Court will dismiss P. Martinez' claims against Wiest and Smith because the facts alleged in her Amended Complaint, taken as true, do not state a cause of action and, even if they did, the statute of limitations would bar those claims. Her claims against Judge Whitefield fail because, although Judge Whitefield might have been acting beyond her jurisdiction -- the Court does not resolve that question -- she did not lack all jurisdiction over suits related to the Martinez' divorce, and therefore absolute judicial immunity and the Eleventh Amendment protect her as a judge. To the extent that she makes such claims, P. Martinez' claims under 42 U.S.C. §§ 1983 and 1985 fail, because, based on the Court's other rulings, there remain no state-actor Defendants -- defeating P. Martinez' claim under § 1983 -- and P. Martinez provides no evidence of a conspiracy or discriminatory animus -- defeating P. Martinez' claim under § 1985. The only claims that survive are P. Martinez' claims against M. Martinez for malicious abuse of process and a partition, and against Ms. Latta for malicious abuse of process.

**I.     THE COURT LACKS JURISDICTION OVER SOME, BUT NOT ALL, CLAIMS.**

The Magistrate Judge dismissed this case for lack of jurisdiction. The Court agrees that it must first determine whether it has jurisdiction. The Court determines, however, that: (i) the <u>Rooker-Feldman</u> doctrine precludes only some of the claims against Judge Whitefield; (ii) the <u>Younger</u> abstention doctrine does not require abstention; and (iii) the domestic-relations exception does not apply to this case. The Court retains jurisdiction over most of P. Martinez' claims. The Court therefore adopts in part and rejects in part the Magistrate Judge's PF&RD, and sustains in part P. Martinez' objections.

-20-

**A.   THE _ROOKER-FELDMAN_ DOCTRINE BARS THE COURT FROM HEARING SOME CLAIMS AGAINST JUDGE WHITEFIELD.**

P. Martinez makes several factual allegations against Judge Whitefield.  The bulk of them, however, complain of the impropriety of Judge Whitefield's dismissal of her state-court suit for want of prosecution.  P. Martinez is, therefore, a state-court loser complaining of harm done to her by a state-court judgment of dismissal, and asking the Court to review that grant of dismissal and determine whether it is valid.  See, e.g., Amended Complaint ¶ 12, at 26 ("Judge Whitefield's court . . . exceeded its jurisdiction . . . so the ruling should be set aside.").  This request falls within the _Rooker-Feldman_ doctrine's narrow scope, and to the extent that the doctrine applies, the Court lacks subject-matter jurisdiction to entertain P. Martinez' claims against Judge Whitefield.  See Lance v. Dennis, 546 U.S. at 460; Clements v. Chapman, 189 Fed. Appx. 688, 691 (10th Cir. 2006); Guttman v. Khalsa, 446 F.3d at 1032 ("The _Rooker-Feldman_ doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").  If P. Martinez believed that Judge Whitefield's dismissal was wrong, the appropriate action for P. Martinez was to file a notice of appeal or seek a writ of mandamus against Judge Whitefield from the Court of Appeals of New Mexico.  If she continues to believe she was wronged, she should seek her remedy procedurally in state court and not seek relief from the state-court order in a federal district court.  The Court thus dismisses all claims against Judge Whitefield arising from the order of dismissal of P. Martinez' state-court suit.  To the extent that P. Martinez' claims rely on any other conduct alleged against Judge Whitefield, the Court addresses those allegations below.

**B.   THE _ROOKER-FELDMAN_ DOCTRINE DOES NOT BAR THE COURT FROM HEARING THIS ACTION FOR A PARTITION AND ACCOUNTING.**

P. Martinez' second claim requests a "Partition (and Accounting)" pursuant to NMSA 1978,

§§ 40-4-20A and 42-5-1.  As the Court construes the Amended Complaint, this asks the Court to take account of what was once community property and divide it between P. and M. Martinez. Section 42-5-1 of the New Mexico statutes authorizes such an action, stating that a person can "present to the district court their complaint in chancery, praying for a division and partition of [jointly owned property] according to the respective rights of the parties interested therein."  NMSA 1978, § 42-5-1.

The Court is somewhat concerned that, by entertaining an action that asks it to divide property that allegedly belonged to a marital estate, after a state court issued a decree of divorce dividing other marital property of which it was aware, it might be "reviewing" a state-court judgment in contravention of the <u>Rooker-Feldman</u> doctrine.  The Court concludes, however, that the 1995-1998 divorce action, which resulted in a decree of divorce and a distribution of marital property, would not bar the Court from entertaining P. Martinez' action for partition and accounting in this case.  P. Martinez' factual justification for her entitlement to a partition does not draw into question the correctness of the state court's division of property based on the information available to the judge at that time.  Rather, she asserts that M. Martinez' fraud kept the state-court judge from knowing about certain assets such that those assets could be distributed in the final decree of divorce.  Furthermore, the elements of a cause of action for an accounting do not require P. Martinez to show that the state-court judge was wrong.  The Court need not find that the state-court judge was wrong, but only that he or she was deceived.  The Court also need not find that the divorce decree is incorrect, but only that it omits to distribute certain assets about which the state-court judge did not know.

P. Martinez' alleges that M. Martinez, with a little help from his friends, concealed assets from the judge in M. and P. Martinez' divorce proceeding, thereby keeping the judge from dividing

those assets in the divorce decree.  New Mexico has a statute that deals with this situation.  It states, in relevant part:

> A.       The failure to divide or distribute property on the entry of a decree of dissolution of marriage or of separation shall not affect the property rights of either the husband or wife, and either may subsequently institute and prosecute a suit for division and distribution or with reference to any other matter pertaining thereto that could have been litigated in the original proceeding for dissolution of marriage or separation.

NMSA 1978, § 40-4-20.  The statute has no requirement that the subsequent proceeding be in the same court that originally granted the decree of divorce, nor does it imply that such a subsequent division invalidates or draws into question the prior divorce decree.  The Supreme Court of New Mexico has implied that an action under § 40-4-20 is properly instituted in a court other than the court which presided over the original divorce proceeding.  See Zarges v. Zarges, 79 N.M. 494, 496, 445 P.2d 97, 99 (1968)("[T]here can be no question that where property rights are not considered or disposed of in the divorce action, a suit seeking division and distribution of the property may be subsequently prosecuted.").  See also Pacheco v. Quintana, 105 N.M. 139, 142-43, 730 P.2d 1, 4-5 (Ct. App. 1985)(holding that res judicata did not bar an action for partition of property that was not divided in the original divorce proceeding because the subsequent action under § 40-4-20 constitutes a new cause of action, distinct from the underlying divorce proceeding); Mendoza v. Mendoza, 103 N.M. 327, 333, 706 P.2d 869, 875 (Ct. App. 1985)(drawing a distinction between the right to ask a trial court to modify its judgments under rule 60B and the right to bring a new action for partition under § 40-4-20).  P. Martinez seeks to bring a new action which is recognized and approved under New Mexico law, and which does not draw into question the correctness of the division that the first state-court judge ordered.   The Rooker-Feldman doctrine thus does not bar this Court from exercising jurisdiction over P. Martinez' claim for a partition and accounting.

-23-

## C.    <u>YOUNGER</u> ABSTENTION DOES NOT APPLY IN THIS CASE.

The Magistrate Judge rested her decision in part on a finding that <u>Younger</u> abstention might apply in this case. <u>See</u> PF&RD at 3. The Court disagrees. The Magistrate Judge correctly concluded that this case involved a state civil proceeding, that the state court provided an adequate forum to hear the claims raised, and that the state proceeding involved important state interests. Thus, based on the summary of elements provided by the Tenth Circuit in several of its opinions, the elements might appear to be met. <u>See</u> <u>Amanatullah v. State Bd. of Med. Examiners</u>, 187 F.3d at 1163; <u>Brown ex rel. Brown v. Day</u>, 555 F.3d at 888-89. There are, however, two elements of the <u>Younger</u> doctrine that are missing. First, the state proceeding must be ongoing. <u>See</u> <u>Liberty Mut. Ins. Co. v. Hurlbut</u>, 585 F.3d 639 (2d Cir. 2009)("Common to all the cases in which the <u>Younger</u> abstention doctrine is applied is the need to find that state proceedings, whether they be criminal, civil or administrative, are ongoing or 'pending.'"); <u>Amanatullah v. State Bd. of Med. Examiners</u>, 187 F.3d at 1163. Judge Whitefield argues in her motion to dismiss that, because the state-court divorce proceeding can be reopened at any time, it is considered "ongoing." Whitefield Memo. at 10. She does not, however, cite authority for the proposition that a case that can be reopened is "ongoing," nor is the Court aware of any. Given rule 60B, NMRA, Rule 1-060B, most if not all New Mexico cases can be reopened for some reason, making abstention the rule rather than the exception. In a broad view, there is no ongoing state proceeding from which the federal court should abstain.

Even if the state divorce proceeding would be considered "ongoing" under state law, given the ability to re-open the proceeding under limited circumstances, the Court is not sure reliance on state law would be appropriate. It appears that federal law dictates when a state proceeding is "ongoing" for the purposes of <u>Younger</u> abstention, and such state proceeding is considered

"pending" or "ongoing" so long as the party has yet to exhaust state appellate remedies or the judgment has not yet been imposed.  See Danner v. Bd. of Prof'l Responsibility of Tenn. Supreme Court, 277 Fed. Appx. 575, 579 (6th Cir. 2008)("The action 'remains pending until a litigant has exhausted his state appellate remedies.'"); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 166 (4th Cir. 2008)("[A] necessary concomitant of Younger is that a party must exhaust his state appellate remedies before seeking relief in the District Court.'"); Addiction Specialists, Inc. v. Township of Hampton, 411 F.3d 399, 408-09 (3d Cir. 2005)(stating that a case is ongoing notwithstanding that it has been stayed); Loch v. Watkins, 337 F.3d 574, 578-79 (6th Cir. 2003)("[A]ll of the evils at which Younger is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial.").  In O'Neill v. City of Phila., 32 F.3d 785 (3d Cir. 1994), the United States Court of Appeals for the Third Circuit stated:

> [S]tate proceedings remain "pending," within the meaning of Younger abstention, in cases . . . where a coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State's judgment by filing a federal action.

32 F.3d at 791.

The Supreme Court denied an application for a writ of certiorari on the issue whether a state-court proceeding was "ongoing" for Rooker-Feldman purposes in 1982.[6]  Justices White and Brennan dissented from that denial.  See Etlin v. Robb, 458 U.S. 1112, 1114 (1984)(White, J., dissenting, joined by Brennan, J.).  Justices White and Brennan reasoned that the Court of Appeals had improperly applied Younger abstention in two respects: (i) it abstained based on a state-court

---

[6] The Justices who denied the writ application did not issue an accompanying opinion.

-25-

suit that was not state-initiated or "coercive;" and (ii) it abstained when "there was no on-going or

pending state proceedings in the usual sense." Id. at 1113-14 (White, J., dissenting, joined by

Brennan, J.). Justice White stated in his dissenting opinion, in which Justice Brennan joined:

> Dismissal of the federal action was deemed appropriate because child custody orders
> in Virginia are subject to modification at any time and petitioner could follow that
> avenue in order to raise his constitutional claims. It is clear that, under the Court of
> Appeals reasoning, custody proceedings would never be final and petitioner would
> be forced to attempt to reopen state proceedings before receiving a hearing in federal
> court on any constitutional grounds. None of our Younger decisions contemplates
> this result[.]

Id. at 1114-15 (White, J., dissenting, joined by Brennan, J.).[7] Similarly, in this case, the state-court

judge issued a decree of divorce -- P. Martinez has provided the Court an excerpt from the minute

order granting the divorce and distributing the marital property. See Doc. 26-2. Divorce decrees

are, in many respects, final. They may be enforced, they may be appealed, and New Mexico law

provides that an action to distribute property which was not distributed in the original divorce

proceeding may be brought as a separate, independent suit. That jurisdiction of the state court is in

some sense continuing should not justify considering the state-court proceeding "ongoing" for the

purposes of Younger abstention.

    Moreover, as the Tenth Circuit recently clarified in Brown ex rel. Brown v. Day, the ongoing

---

[7] The United States Court of Appeals for the Fourth Circuit's opinion, from which a writ of
certiorari was sought, was unpublished and difficult to find. The analysis of the seemingly complex
issue of federal jurisdictional and abstention was limited to the following:

> Under Virginia Law, child custody determinations and support orders may be subject
> to modification at any time. Because custody proceedings are considered ongoing
> proceedings in Virginia, they afford a disappointed litigant, such as Etlin, an
> adequate opportunity to present his constitutional claims. Therefore, it is clear that
> the doctrine of abstention applies in this instance.

Etlin v. Dalton, No. 81-1760, at *1 (4th Cir. Dec. 30, 1981)(internal citations omitted). The Court
finds the reasoning of Justices White and Brennan to be more persuasive.

state-court civil proceeding must be "coercive" for the <u>Younger</u> doctrine to apply. 555 F.3d at 888-89.[8] The general rule is that a state proceeding is considered coercive only if it is a mandatory, state-initiated suit to enforce a law or regulation, and the state proceeding itself is the wrong that the federal plaintiff seeks to remedy by the federal suit. <u>See id.</u> at 891-92; <u>Lynk v. LaPorte Superior Court No. 2</u>, 789 F.2d 554, 558 (7th Cir. 1986)("Based as it is on a policy of noninterference with proceedings brought by the state itself, the <u>Younger</u> doctrine has little if any direct application to private suits."); 1A <u>Federal Procedure Lawyers' Edition</u> § 1:621 (2002)("A pending state judicial proceeding does not come within <u>Younger</u> unless the federal plaintiff is being prosecuted in state court under the same law that is challenged in federal court.")(citing <u>Wiener v. County of San Diego</u>, 23 F.3d 263 (9th Cir. 1994)). <u>See also</u> <u>Etlin v. Robb</u>, 458 U.S. at 1113 (White, J., dissenting; Brennan, J., joining in dissent)("[T]his Court has never applied the <u>Younger</u> doctrine to a case where the State was not a party to the pending state proceedings."). Here, M. Martinez, not the state, initiated the divorce proceeding, and the wrongs that P. Martinez alleges were perpetrated by M. Martinez and not by the state.[9] Thus, even if it were considered "ongoing," the state divorce proceeding was not a state-initiated civil-enforcement proceeding that the Tenth Circuit would consider "coercive." The <u>Younger</u> abstention doctrine is thus inapplicable.

### D.   THE DOMESTIC-RELATIONS EXCEPTION DOES NOT APPLY TO P. MARTINEZ' CLAIM FOR A PARTITION AGAINST M. MARTINEZ.

Although she does not couch the relief she seeks in such terms, the Court understands from

---

[8] In support of this coercive/remedial distinction, the Tenth Circuit noted that "[t]he <u>Younger</u> doctrine originated in concerns that federal plaintiffs might stymie state coercive proceedings by bringing suit in the federal courts." <u>Brown ex rel. Brown v. Day</u>, 555 F.3d at 888 n.5.

[9] The Amended Complaint mentions several other state-court proceedings. None of them were state-initiated or could be considered coercive under the Tenth Circuit's definition.

reading the entire Amended Complaint that what P. Martinez desires is the distribution of what was, at the time of divorce, marital property.[10]  The Court understands that M. and P. Martinez were divorced in or around 1998, see Response to Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion to Dismiss Exhibit 2, ¶ 1, at 1 (filed in the Second Judicial District Court of New Mexico, Bernalillo County on Feb. 6, 1998), filed September 14, 2009 (Doc. 26-2)(Minute Order granting divorce),[11] and that the property distribution was dealt with at that time, see id. ¶ 4-10, at pp. 2-3.  The idea of distributing property that allegedly should have been

---

[10] It is unclear from the Amended Complaint whether the judge who presided over the original divorce proceeding -- No. 95-2963 -- was Judge Whitefield, although Judge Whitefield presided over the case when it was most recently re-opened in, it appears, 2007.  See Amended Complaint ¶¶ 41, at 9.  To the extent that P. Martinez' Amended Complaint is alleging that she was harmed by the state-court judge's incorrect division of property in 1998, she asks the Court to review and correct the decree of divorce, conduct in which the Rooker-Feldman doctrine bars the Court from engaging.  See Lance v. Dennis, 546 U.S. at 460; Guttman v. Khalsa, 446 F.3d at 1032 ("The Rooker-Feldman doctrine . . . is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.").  The Court, however, reads P. Martinez' Amended Complaint to more simply assert that certain assets were hidden from the judge in the first proceeding and to assert that the wrongful conduct of M. Martinez, not the first state-court judge, caused the harm about which she complains.  "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he [or she] was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'"  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 293 (quoting GASH Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)).  Accordingly, while res judicata or collateral estoppel might preclude P. Martinez from bringing some of her claims, that does not mean the Court lacks jurisdiction to determine whether the claims are barred by claim or issue preclusion under New Mexico law.

[11] The Court can take judicial notice of the contents of public filings, both because they are essential to P. Martinez' Amended Complaint and P. Martinez implicitly relies upon them, and because the facts contained therein are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," under rule 201 of the Federal Rules of Evidence.  See In re Thornburg Mortgage, Inc. Sec. Litig., No. CIV 07-0815 JB/WDS, 2009 WL 5851089, at **1-2 (D.N.M. Dec. 21, 2009)(Browning, J.)("[W]hen considering a motion to dismiss, 'the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.'")(quoting Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001)).

distributed during a prior divorce proceeding raises concerns regarding the Court's jurisdiction under the domestic-relations exception.

If the Court accepts P. Martinez' allegations as true and attempts to re-distribute the marital estate -- taking account of assets that M. Martinez allegedly hid from the divorce court -- the Court might be mingling in the realm of New Mexico domestic-relations law.  Nevertheless, the Court finds that the domestic-relations exception would not apply.  Based on the Supreme Court's recent admonitions in Marshall v. Marshall, the Court finds it must restrict the exception to the claims for which it was created: those seeking decrees of divorce, alimony, or child custody.  See Marshall v. Marshall, 547 U.S. at 307-08 ("[W]e clarified that only 'divorce, alimony, and child custody decrees' remain outside federal jurisdictional bounds . . . .")(quoting Ankenbrandt v. Richards, 504 U.S. at 703-04); Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. at 12; Ankenbrandt v. Richards, 504 U.S. at 702-3; Barber v. Barber, 62 U.S. at 584; Johnson v. Rodriguez (Orozco), 226 F.3d 1103, 1111 (10th Cir. 2000); Vaughan v. Smithson, 883 F.2d at 64 ("It is now well established that federal courts do not have diversity jurisdiction to grant a divorce or annulment, determine support payments, or award custody of a child.").  P. Martinez' request for a partition is not seeking a decree of divorce, alimony, or child custody; rather, it is more in the nature of a fraud claim against her ex-husband and an enforcement of her property rights under New Mexico law.  See NMSA 1978, § 40-4-20A.  For that reason, the Court has jurisdiction over P. Martinez' partition claim against M. Martinez.  This result is not inconsistent with the Court's use of the domestic-relations exception in Velarde v. Velarde, because the plaintiff in that case sought a decree of divorce as well as alimony and a distribution of marital property incident to the divorce decree.  See 2009 WL 2426232, at *1. Velarde v. Velarde thus fell within the bounds set forth in Marshall v. Marshall, Ankenbrandt v. Richards, and other Supreme Court case law.  To the extent that the Magistrate Judge's PF&RD

found that the Court lacked jurisdiction under the domestic-relations exception, the Court rejects that finding.[12]

### E.     THE AMOUNT-IN-CONTROVERSY APPEARS TO BE MET.

P. Martinez asserts that her claims are for an amount in excess of the jurisdictional minimum amount-in-controversy.  See Amended Complaint ¶ 8, at 3 ("The amount sought in this suit is over $75,000.").[13] Ms. Latta asserts that P. Martinez cannot meet the amount-in-controversy requirement because P. Martinez asserts claims against multiple Defendants, but only makes a blanket assertion that her claims exceed $75,000.00.  Ms. Latta asserts that P. Martinez thus aggregated her claims against the Defendants in reaching that amount, and it is thus unclear from the Amended Complaint whether P. Martinez' claims against any particular Defendant exceed the jurisdictional amount.  The Court is not convinced that this possibility impedes its jurisdiction.

Generally, a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement.  See 14AA C. Wright, A Miller, & E. Cooper, Fed. Prac. & Proc. Juris. § 3704, at 146-50 (3d ed. 2009)("[T]he cases are quite clear and virtually unanimous that separate and distinct claims by different plaintiffs still cannot be aggregated for

---

[12] At this point, the Court could consider its work done and return this case to the Magistrate Judge for further disposition.  In the interest of efficiency, because the additional work needed to do so is nominal, the Court will instead resolve the merits of the remaining claims before returning it to the Magistrate Judge for further consideration.  See Liverman v. Comm. on the Judiciary, U.S. House Of Representatives, 51 Fed. Appx. 825, 827 (10th Cir. 2002)("Implicit in a district court's discretionary authority under 28 U.S.C. § 636(b)(1)(B) to refer a matter to a magistrate is the power to withdraw a reference."); Estes v. Utah Supreme Court, 3 Fed. Appx. 734, 736 (10th Cir. 2001)("Implicit in a district court's power to refer a matter to a magistrate judge under § 636(b) is the power to withdraw the reference.").

[13] P. Martinez alleges some federal claims, which might have given the Court jurisdiction under 28 U.S.C. § 1331, rather than § 1332.  Those claims, however, will be dismissed later in this opinion, so the amount-in-controversy issue is relevant to the Court's jurisdiction over the claims that survive.

purposes of measuring the amount in controversy. The same rule also applies when suit is brought by a single plaintiff against multiple defendants."). On the other hand, courts have held that, where two defendants are jointly liable, the same damages can satisfy the amount-in-controversy requirement as to both defendants. See Middle Tenn. News Co. v. Charnel of Cincinnati, Inc., 250 F.3d 1077, 1081 (7th Cir. 2001); Alberty v. Western Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957)("[W]here a single plaintiff has multiple claims . . . against two or more defendants jointly, and the claims are of such character that they may properly be joined in one suit, the aggregate amount thereof is for the purpose of federal jurisdiction the amount in controversy."); 15 J. Moore & M. Redish, Moore's Federal Practice § 102.108[2], at 102-189 (3d ed. 1998)("A plaintiff must allege that the amount in controversy is in excess of the jurisdictional amount against each defendant unless the plaintiff's claims against the defendants are common and undivided so that the defendant's liability is properly characterized as joint and not several.")(emphasis added). New Mexico law still recognizes joint and several liability for intentional torts. See NMSA 1978, § 41-3A-1C ("The doctrine imposing joint and several liability shall apply: (1) to any person or persons who acted with the intention of inflicting injury and damage[.]"). P. Martinez asserts that several individuals intentionally engaged in conduct that caused her harm, and brings the claims against each individual whom she believes contributed to her injury. She alleges the "intention of inflicting injury and damage" against every Defendant, making New Mexico's joint and several liability applicable to her state-law claims against all Defendants.[14] In the context of this case,

---

[14] To the extent that P. Martinez asserts federal claims, the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is inapplicable. Plaintiffs raising federal questions under 28 U.S.C. § 1331 have not needed to plead an amount-in-controversy since 1980. See Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006)(Ginsburg, J.)("Congress amended 28 U.S.C. § 1331 in 1980 to eliminate the amount-in-controversy threshold.")(citing Federal Question Jurisdictional Amendments Act of 1980, § 2, 94 Stat. 2369).

P. Martinez may allege the same damages against each of the individuals that she claims is responsible for them.

Furthermore, even if P. Martinez cannot aggregate the amount she seeks from multiple defendants to reach the amount-in-controversy requirement, the Court is to liberally construe P. Martinez' pro se pleadings.  See Swoboda v. Dubach, 992 F.2d at 289.  P. Martinez alleges that her claims are for in excess of $75,000.00, and appears to seek emotional and punitive damages, as well as her attorneys' fees from this and other litigation.  It is not inherently unreasonable that the total she seeks from each of M. Martinez and Ms. Latta exceeds $75,000.00, and the Court can envision a jury awarding such sums for the conduct P. Martinez alleges, if she can prove her allegations at trial.  Ultimately, in the absence of evidence to the contrary, P. Martinez' good-faith pleadings control the amount-in-controversy of this matter.  See Mid-America AG Network, Inc. v. Monkey Island Dev. Auth., 109 Fed. Appx. 187, 189 (10th Cir. 2004)("If the amount in controversy claimed by the plaintiff is apparently made in good faith, the jurisdictional minimum is met, unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.'").  Ms. Latta provides no evidence or argument that P. Martinez would be unable to receive damages in excess of $75,000.00 against each Defendant.  Even if the Court found a problem with the amount-in-controversy allegations, the Court would give P. Martinez an opportunity to amend -- which she would undoubtedly take, given her zeal for pursuing this action -- and she would simply change one sentence in her Amended Complaint to read "The amount sought in this suit is over $75,000 against each Defendant."  The Court finds that the amount-in-controversy requirement for diversity jurisdiction is met in this case.

II.   **ANY CLAIMS AGAINST JUDGE WHITEFIELD NOT BARRED BY <u>ROOKER-FELDMAN</u> ARE BARRED BY JUDICIAL AND ELEVENTH-AMENDMENT IMMUNITY, AND FAIL TO STATE A CLAIM.**

Because the <u>Rooker-Feldman</u> doctrine prohibits the Court from exercising jurisdiction only over claims that ask the Court to review and correct state-court judgments, if P. Martinez alleges other wrongful conduct as the basis of her malicious-abuse-of-process claim against Judge Whitefield, the Court has jurisdiction over that claim, unless some other doctrine applies. <u>See</u> <u>Wolfe v. Strankman</u>, 392 F.3d 358, 363 (9th Cir. 2004)(finding <u>Rooker-Feldman</u> did not apply when "there was no vexatious litigant order entered against Wolfe at the time he filed in district court," because "there was no state court judgment from which he could have been seeking relief"). It is unclear from the Amended Complaint when Judge Whitefield became involved with the Martinez' dispute, but when she was involved, she presided over domestic-relations case number 95-2963, which is M. and P. Martinez' original divorce proceeding. <u>See</u> Doc. 26-2. P. Martinez makes several allegations of wrongdoing against Judge Whitefield, but they can all be put into three categories: (i) Judge Whitefield issued orders, ruled on motions, and dismissed a domestic-relations case for want of prosecution, which was wrong because she lacked jurisdiction to do so, <u>see</u> Amended Complaint ¶¶ 26, at 7, ¶¶ 77-79, at 15-16, ¶ 83-84, at 19, ¶ 87, at 20, ¶ 12, at 25-26, ¶¶ 14-19, at 28-30; (ii) Judge Whitefield engaged in other miscellaneous judicial conduct -- <u>i.e.</u>, presided over the case, held hearings, and made allegedly false statements during hearings, <u>see</u> Amended Complaint ¶ 42, at 9, ¶¶ 51-54, at 12-13, ¶ 80-84, at 17-19, ¶ 17, at 29; and/or (iii) Judge Whitefield had an intent to deprive P. Martinez of her rights, <u>see</u> Amended Complaint ¶ 87, at 20. In her motion to dismiss, Judge Whitefield asserts that absolute judicial immunity and Eleventh Amendment immunity protect her, notwithstanding P. Martinez' allegations that she was acting in a complete absence of jurisdiction. <u>See</u> Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion

to Dismiss at 10-15, filed August 25, 2009 (Doc. 16).  To the extent that the Amended Complaint alleges wrongs against Judge Whitefield other than the allegedly improper dismissal of P. Martinez' state-court proceeding -- a claim over which the Court has no jurisdiction under <u>Rooker-Feldman</u> -- the Court agrees that Judge Whitefield is immune from suit.

It is unclear from the Supreme Court's and Tenth Circuit's case law whether the <u>Rooker-Feldman</u> doctrine bars the Court's review of what P. Martinez claims are improper and incorrect interlocutory orders and rulings, as opposed to judgments, from the state-court judge.  Given that the rationale behind the <u>Rooker-Feldman</u> doctrine is that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments," <u>Lance v. Dennis</u>, 546 U.S. at 463, it seems logical that the Court cannot, after a final judgment, review the propriety of interlocutory orders by the state-court judge.  Most articulations of the <u>Rooker-Feldman</u> doctrine, however, use the word judgments or final judgments, implying that only the judgment itself is shielded from review.[15]  <u>See Lance v. Dennis</u>, 546 U.S. at 463; <u>Hawks v. Abbott</u>, No. 09-2075, 2010 WL 456907, at *1 (10th Cir. Feb. 11, 2010)("[A] complaint filed in a federal district court that seeks review and reversal of a state-court judgment is properly dismissed under <u>Rooker-Feldman</u>.")(quoting <u>Erlandson v. Northglenn Mun. Court</u>, 528 F.3d 785, 788 (10th Cir. 2008)); <u>Lyons v. Kyner</u>, No. 09-3308, 2010 WL 447008, at *2 n.4 (10th Cir. Feb. 10, 2010)("The <u>Rooker-Feldman</u> doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced.")(quoting <u>Mann v. Boatright</u>, 477 F.3d 1140, 1146 (10th Cir. 2007)); <u>Dauwe v. Miller</u>,

_____

[15] Of course, if the judgment is attacked on the ground that the trial judge made an incorrect interlocutory ruling which ultimately caused the allegedly erroneous final judgment, a court would likely be without jurisdiction to analyze the propriety of that interlocutory order.

2010 WL 369366, at *1 ("The Rooker-Feldman doctrine . . . precludes inferior federal courts from reviewing the final decisions of state tribunals.")(quoting Hennelly v. Flor De Maria Oliva, 237 Fed. Appx. 318, 319 (10th Cir. 2007)).  Furthermore, an appeal is generally a review of a lower court's legal determinations.  The Court is not entirely convinced it would always be acting as an appellate court, and thus stripped of jurisdiction by Rooker-Feldman, in finding that a judge's conduct was fraudulent or tortious.  Regardless, to the extent that P. Martinez can premise her claims on Judge Whitefield's interlocutory judicial conduct without running afoul of the Rooker-Feldman doctrine, the Court finds that immunity doctrines discussed in this section would still protect Judge Whitefield from suit.

First, to the extent that P. Martinez' Amended Complaint contains claims against Judge Whitefield in her official capacity, Judge Whitefield is protected by the Eleventh Amendment as an arm of the State of New Mexico.  See Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81. "An 'official capacity' claim is the equivalent of a claim against the state, and . . . claims against the state, for monetary damages, may not be brought in a federal forum under a state's Eleventh Amendment immunity."  Sain v. Snyder, No. CIV 08-1019 JB/LFG, 2009 WL 1312954, at *3 (D.N.M. Apr. 2, 2009)(Browning, J.)(citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 63 (1989)).  The Court will thus dismiss all claims against Judge Whitefield in her official capacity.

Second, a judicial officer is protected from liability for all actions taken in her judicial role. Clements v. Chapman, 189 Fed. Appx. at 691.  "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  Stump v. Sparkman, 435 U.S. at 355-56 (quoting Bradley v. Fisher, 80 U.S. at 351).  The only noteworthy exception is that absolute immunity does not apply when the judge acts "in the clear absence of all jurisdiction."

Moss v. Kopp, 559 F.3d at 1163.  In this case, Judge Whitefield was presiding over civil action 95-2963 -- the Martinez' original divorce proceeding.  Judge Whitefield therefore had some semblance of jurisdiction over the Martinez' dispute and had reason to believe that she could entertain motions filed in that proceeding.  Furthermore, New Mexico law appears to provide that the judge presiding over the original divorce proceeding has continuing jurisdiction over the property distribution, showing that Judge Whitefield may have had genuine jurisdiction over some of the Martinez' disputes.  In Thornton v. Gamble, 101 N.M. 764, 688 P.2d 1268 (Ct. App. 1984), the New Mexico Court of Appeals stated:

> [W]e are not unmindful of the fact that a divorce court may reserve continuing jurisdiction over the parties to modify such matters as alimony, support, or custody, Smith v. Smith, 98 N.M. 468, 649 P.2d 1381 (1982), and that the statute provides such continuing jurisdiction whether or not there is an express reservation. § 40-4-7.

Thornton v. Gamble, 101 N.M. at 768, 688 P.2d at 1272.  See NMSA 1978, § 40-4-7G ("The district court shall also have exclusive, continuing jurisdiction with reference to the property decreed or funds created for the children's maintenance and education.").  At the very least, a judge that has entered a judgment has jurisdiction to review a motion for relief from judgment under rule 60(b).  See NMRA, Rule 1-060(b).  All of the conduct P. Martinez alleges against Judge Whitefield that does not fall under the Rooker-Feldman doctrine was done in Judge Whitefield's role as a judicial officer.  The Court thus finds that Judge Whitefield did not act in the absence of all jurisdiction, and absolute judicial immunity therefore protects her from suit.  The Court will therefore dismiss all claims against Judge Whitefield over which it has jurisdiction.

## III.   THE COURT WILL DISMISS P. MARTINEZ' CLAIMS AGAINST WIEST AND SMITH.

It is not clear what P. Martinez' claims are against Wiest or Smith.  Her Amended Complaint references them in its initial summary of claims by saying only:

> Paul Wiest 5, and Jean Smith 6 Defendants joined Defendant 2 [referring to M. Martinez] in their intentional misuse of the normal course of judicial process in false reports to the judicial system by false testimony in courts, on real estate contracts, mortgage, depositions, and other real estate related endeavors by concealing the true identity of properties and business interests that were ½ community property of this Plaintiff, to accomplish the illegitimate end of defrauding Plaintiff of her due property rights during the divorce as are more explicitly detailed in Count II below.

Amended Complaint at 2.  P. Martinez' Amended Complaint, however, has only two Counts: (i) malicious abuse of process; and (ii) a partition or accounting of M. Martinez' assets.  See Amended Complaint at 21, 32.  The Amended Complaint also arguably asserts claims under 42 U.S.C. §§ 1983 and 1985 against M. Martinez, Ms. Latta, and Judge Whitefield.  See Amended Complaint ¶¶ 14-15, at 28.  Given that neither Wiest nor Smith are included in the allegations of constitutional violations or conspiracy, and given that P. Martinez cannot sue persons other than M. Martinez for a partition and an accounting of M. Martinez' property, the Court assumes P. Martinez intends to sue Wiest and Smith for malicious abuse of process.  Further, in P. Martinez' prayer for relief, she seeks only punitive damages against Wiest and Smith; she therefore appears not to seek any particular compensatory damages against them, nor allege that anything that they have in their possession is rightly hers.

### A        P. MARTINEZ DOES NOT STATE A MALICIOUS-ABUSE-OF-PROCESS CLAIM AGAINST WIEST OR SMITH.

The facts that P. Martinez alleges against Wiest and Smith do not state a claim for malicious abuse of process.  The only paragraphs of the Amended Complaint that make reference to Wiest or Smith are the following: ¶¶ 23-24, at 39; ¶ 28, at 38; ¶¶ 29, 30, at 41; ¶ 31, at 41-42; ¶ 32, at 44; ¶¶ 39-40, at 46-47; and ¶ 42, at 47.  Not all of them allege wrongful conduct.  Generally, they allege that Wiest was M. Martinez' employer for some period of time and that Smith was M. Martinez' girlfriend.

Paragraph 24 states that Wiest "fraudulently reported [M. Martinez] to be under his umbrella of Sun Star Associates through March, 1998," and "did not provide accurate commissions and tax reports from [M. Martinez] in his Depositions in 1996 and 1997." Amended Complaint ¶ 24, at 39-40. Paragraph 28 alleges that "Smith, who is not a realtor, purchased one half interest of [a piece of M. Martinez'] property in July of 1996." Id. ¶ 28, at 40-41. Paragraphs 29 and 30 allege that Wiest and Smith formed a partnership, and "were straw figures in [a July 1996] purchase and the intentional manipulation of the legal real estate process . . . to achieve ownership of a property interest that was really [M. Martinez'] by" hiding the buyer's identity. Id. ¶¶ 29, 30, at 41. In paragraph 31, P. Martinez' alleges that Wiest and Smith sold the property back to Wiest in April of 1998. See id. ¶ 31, at 41-42. Finally, in paragraph 39, P. Martinez alleges that M. Martinez bought home improvements for Smith, and paragraph 40 alleges general fraudulent conduct and motive. See id. ¶ 39-40, at 46-47.

To establish a claim for malicious abuse of process under New Mexico law, P. Martinez must show that: (i) Wiest and/or Smith's use of process in a judicial proceeding would be improper in the regular prosecution or defense of a claim; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages. See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26. While P. Martinez makes a reference to Wiest and Smith joining M. Martinez "in their intentional use of the normal course of judicial process in false reports to the judicial system by false testimony on courts," none of the facts that P. Martinez alleges involve use of process in a judicial proceeding. Twombly and Iqbal now require more factual allegations to see if the claim is plausible. P. Martinez must give the Court some facts to decide if her claim of "false requests" and "false testimony" rises to the level of plausibility. Here, the facts which she provides do not indicate that Wiest and Smith used process in a judicial proceeding in a wrongful way. Accordingly, P. Martinez

-38-

does not state a claim for malicious abuse of process against Smith or Wiest with this general allegations.

The only more specific allegation that hints at a use of judicial process was Wiest's alleged failure to "provide accurate commissions and tax reports . . . in his Depositions in 1996 and 1997." First, under New Mexico law, the contexts in which a non-litigant in the underlying proceeding can be held liable for malicious abuse of process are highly circumscribed. In <u>Valles v. Silverman</u>, the Court of Appeals of New Mexico considered the question and determined that a non-party to the underlying proceeding can only be held liable for malicious abuse of process where the non-party was an "active participant" in the proceeding. 135 N.M. 91, 96-97, 84 P.3d 1056, 1061-62 (Ct. App. 2003), <u>cert. denied</u> <u>Valles v. Walmart</u>, 135 N.M. 160, 85 P.3d 802 (2004).[16]  It is unclear what proceeding P. Martinez is referring to when she discusses Wiest's conduct or what exactly he did in the deposition.  It is also unclear whether being deposed, even if the third-party deponent lies, constitutes "active participation" in the judicial proceeding so that one can be subject to a claim for malicious abuse of process under New Mexico law.

P. Martinez' allegations as to Wiest's conduct fail under the stringent pleading standards of <u>Twombly</u> and <u>Iqbal</u>.  The Court would be required to compose P. Martinez' arguments and interpret her Amended Complaint to include facts that it does not allege to determine how Wiest's actions

---

[16] The Court of Appeals of New Mexico in <u>Valles v. Silverman</u> further defined active participation as "more . . . than encouragement, advice, or consultation," but rather the nonparty's conduct must have been "the determining factor in the decision to file the lawsuit."  135 N.M. at 97, 84 P.3d at 1062.  <u>Valles v. Silverman</u>, however, was issued before the Supreme Court of New Mexico's opinion in <u>Durham v. Guest</u>, which abolished the requirement that the malicious-abuse-of-process defendant have initiated the underlying suit.  Because initiation of the suit is no longer an element of the malicious-abuse-of-process tort, it is likely that "active participation" must now mean something other than instigating the lawsuit.  It thus is unclear what third-party conduct makes one an "active participant" under New Mexico law.

could have abused judicial process.  She states only that:

> [Wiest], owner and former employer of [M. Martinez] fraudulently reported [M. Martinez] to be under his umbrella of Sun Star Associates through March, 1998.  He also did not provide accurate commissions and tax reports from [M. Martinez] in his Depositions in 1996 and 1997.  This done with the motive to defraud Plaintiff of her legitimate property interests and rights, woven falsely through the court records and legal records.

Amended Complaint ¶ 24, at 39-40.  The Court cannot determine in what context Wiest fraudulently reported most of the information -- it could have been in deposition, at a trial or hearing, during a private meeting or settlement conference, or in conversation.  As to when he failed to "provide accurate commissions and tax reports," the Court cannot determine whether Wiest did not provide any commissions or tax reports, provided false ones, or provided ones with information P. Martinez considered unhelpful.  The Court cannot determine to what commissions and tax reports P. Martinez even refers.  The Court finds that the allegations do not state a plausible claim for relief.

Even if Wiest's conduct could somehow be construed as active participation in the underlying proceeding, his conduct may fall outside the categories of conduct that the Supreme Court of New Mexico considers to be a use of process, such as "filing a complaint without probable cause," or litigation conduct suggesting "extortion, delay, or harassment."  Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.[17]  See Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. 150, 157,

---

[17] In Durham v. Guest, the Supreme Court of New Mexico eliminated from the malicious-abuse-of-process tort the requirement that the defendant have initiated judicial proceedings against the plaintiff.  See 145 N.M. at 701, 204 P.3d at 26.  The modification to the tort was aimed at cases in which the original defendant responds to a suit by engaging in cutthroat litigation tactics that would otherwise constitute a malicious abuse of process.  See id. at 699, 204 P.3d at 24 ("[T]he Durhams argue that [the] requirement that the defendants must have initiated the judicial proceedings in which they allegedly abused process is unfair because it allows defendants to abuse process within those proceedings simply because the defendants did not commence them.  We agree.").  The Supreme Court gave no indication that non-litigation conduct could be considered a malicious abuse of process.

164 P.3d 31, 38 (2007)("Complaints that assert a multitude of unfounded claims brought in bad faith and for the purpose of harassing a defendant, even though coupled with a valid claim, can constitute a procedural impropriety that will support a malicious abuse of process claim."); <u>Richardson v. Rutherford</u>, 109 N.M. 495, 501-02, 787 P.2d 414, 420-21 (1990)(discussing the conduct that can give rise to the torts of malicious prosecution and abuse of process).  P. Martinez apparently accuses Wiest lying at some unknown time and place, and failing to provide documents at a deposition. Without more detail about what Wiest and Smith did to abuse the process, these allegations do not sufficiently inform the Court whether P. Martinez states a plausible claim of malicious abuse of process under New Mexico law.  <u>See</u> <u>Twombly v. Bell Atlantic Corp.</u>, 550 U.S. at 570.  The Court cannot conclude whether P. Martinez states a claim under New Mexico malicious-abuse-of-process law without a clear understanding of what Wiest and Smith allegedly did wrong.  The Court will therefore dismiss the claims against Smith and Wiest.

### B.   ASSUMING P. MARTINEZ' ALLEGED FACTS ARE TRUE, THE STATUTE OF LIMITATIONS BARS ANY CLAIMS AGAINST SMITH OR WIEST.

Even if P. Martinez properly stated a claim against Wiest or Smith for malicious abuse of process, the statute of limitations would bar that claim based on the facts alleged on the face of the Amended Complaint.  The statute of limitations for claims for malicious abuse of process in New Mexico is four years.  <u>See</u> NMSA 1978, § 37-1-4 (setting the statute of limitations for "all other actions not herein otherwise provided for" as four years).  All of the facts alleged against those Defendants are associated with dates.  The only conduct in which P. Martinez alleges Wiest or Smith engaged occurred in the late 1990s, over four years before April 8, 2009, when P. Martinez filed her Amended Complaint.  <u>See</u> Amended Complaint ¶¶ 23-24, at 39 (alleging Wiest engaged in fraudulent acts in 1998, 1996, and 1997); <u>id.</u> ¶ 28, at 38 (alleging Smith engaged in fraudulent

conduct in 1996 and/or 1998); id. ¶¶ 29, 30, at 41 (alleging wrongful conduct in July of 1996); id. ¶ 31, at 41-42 (alleging wrongful conduct in April 1998); id. ¶¶ 39-40, at 46-47 (alleging conduct in May of 1995).  Moreover, P. Martinez does not attempt to plead around the statute of limitations in any way, such as by invoking the discovery rule or alleging fraudulent concealment.  The one exception is Paragraph 42 on page 47, in which P. Martinez alleges that Smith and Wiest are in possession of documents relating to properties that M. Martinez allegedly concealed during the divorce, which presumably means they are currently in such possession.  This conduct does not satisfy any element of a claim for malicious abuse of process.  The Court dismisses P. Martinez' claims against Smith and Wiest.

**IV.    P. MARTINEZ' CONSTITUTIONAL ALLEGATIONS FAIL TO STATE A CLAIM.**

P. Martinez bases her jurisdictional allegations, in part, on the fact that she asserts claims under 42 U.S.C. §§ 1983 and 1985 for alleged violations of her equal-protection and due-process rights under the Fifth and Fourteenth Amendments.  See Amended Complaint ¶ 10, at 3.  Those allegations do not again rear their head until page twenty-eight of P. Martinez' fifty-one-page Amended Complaint.  See id. ¶ 14, at 28.  The entirety of the constitutional claims appear to be these:

> 14.    In the Court's Defendant 4's [i.e., Judge Whitefield's] ruling to dismiss this case against Plaintiff first of all is a violation of Federal Rule 60(b)(4) because the Court lacked jurisdiction over the subject matter and that dismissal, for lack of prosecution, which conduct was done as a state actor under color of law by [Judge Whitefield] and in conspiracy with [Ms. Latta] on behalf of [M. Martinez], to achieve these ends.  [Ms. Latta] is included in this legal process, entered into knowingly and fraudulently to achieve the illegitimate end of depriving Plaintiff of her due civil rights by [Judge Whitefield's] void ruling, which rights are afforded by USC 42 SS 1983 and 1985(3) to a fair hearing of the property as she has attempted to litigate for these last years.
>
> 15.    [Ms. Latta and Judge Whitefield] are participants with [M. Martinez] and have conspired to keep Plaintiff at bay in obtaining her rights to this undivided

property by engaging improper courts and attempts to harass and exhaust Plaintiff
of her financial resources. . . .

* * * *

17.    The Fourteenth Amendment states thus: "No state shall make or enforce any
law which shall abridge the privileges or immunities of citizens of the United States,
nor shall any State deprive any person of life, liberty or property without due process
of law . . . And further in the Fifth Amendment "the Bill of Rights protects against
abuse of government -- the 'double jeopardy' clause seems to be applied here,
because Plaintiff's same former case 95-2963 was voluntarily dismissed by Plaintiff
without prejudice in 2003, and resurrected from the dead improperly by [M.
Martinez, Ms. Latta, and Judge Whitefield] on August 28, 2007 by Motion. . . .

18.    [Judge Whitefield] attempts to adjudicate a new dismissal of this same closed
case by dismissing it again against Plaintiff for lack of prosecution and would
attempt by doing so, to take away her right to adjudicate it elsewhere -- this would
be a gross violation for Plaintiff from [Judge Whitefield] and finds into the double
jeopardy type of thinking easily -- a double dismissal, one legitimate by Plaintiff and
one illegitimate (reopened by Defendants by Motion) after this dismissal, and done
(the second) with intention by [M. Martinez and Ms. Latta] and especially with the
power of [Judge Whitefield], to attempt to deprive Plaintiff of her due process rights
of hearing and eliminating her possibility to adjudicate her claim because [Judge
Whitefield's] ruling would then be the second dismissal on the basis of lack of
prosecution which then adjudicates a case and it could not be brought again by this
Plaintiff.

Amended Complaint ¶¶ 14-15, 17-18, at 28-29.

## A.    P. MARTINEZ FAILS TO STATE A CLAIM UNDER § 1983.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege conduct by a person, taken

under color of state law, that proximately causes the deprivation of a right or privilege guaranteed

by the Constitution or laws of the United States.  See Summum v. City of Ogden, 297 F.3d at 1000.

Giving the Amended Complaint the benefit of every doubt, and assuming for the sake of argument

that P. Martinez alleges the deprivation of a constitutional or statutory right, P. Martinez fails to state

a claim.

As to Judge Whitefield, the two barriers that the Court has already discussed stand in

-43-

P. Martinez' way: (i) to the extent that P. Martinez asks the Court to review the propriety of Judge Whitefield's rulings and orders, the Court lacks jurisdiction under the Rooker-Feldman doctrine; and (ii) to the extent that Martinez asserts wrongful conduct other than the issuance of allegedly harmful rulings and orders, Judge Whitefield's conduct was all undertaken in her judicial capacity, entitling her to absolute judicial immunity in her individual capacity and to Eleventh Amendment immunity in her official capacity. P. Martinez alleges no conduct which could state a claim against Judge Whitefield that the Court could entertain.

Regarding P. Martinez' § 1983 claims against M. Martinez and Ms. Latta, P. Martinez encounters a different obstacle. Neither M. Martinez nor Ms. Latta were acting under color of state law when they engaged in the conduct about which P. Martinez complains. Rather, Ms. Latta was acting as a representative of a private individual in a civil proceeding, and M. Martinez was acting as a litigant. See Clements v. Chapman, 189 Fed. Appx. at 691 ("Clements' complaint, however, acknowledged that both Grier and Miller were private actors, i.e., attorneys in private practice who were retained by Clements and his ex-wife to represent them in the state domestic relations case."). The alleged conspiracy with Judge Whitefield fails because it is conclusory and made without an underlying factual predicate. See Lowe v. Devine, No. 09-4014, 2010 WL 1141492, at *1 (7th Cir. Mar. 25, 2010)(holding that unsupported allegations of conspiracy between prosecutors, lawyers, judges, and others to violate plaintiff's civil rights were "fanciful" and "facially implausible"); In re N'Jai, No. 10-1061, 2010 WL 780881, at *1 (3d Cir. 2010)(per curiam)("To the extent that N'Jai claims that Judge Fischer and the defendants acted in concert to interfere with her lawsuit, we conclude that her unsubstantiated allegations do not support a conspiracy claim warranting relief through mandamus or otherwise.")(emphasis added); Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009)("[A] 'judicial conspiracy' claim must include at least a

discernible factual basis to survive a Rule 12(b)(6) dismissal."); <u>Cooney v. Rossiter</u>, 583 F.3d 867,

970 (7th Cir. 2009)("Even before <u>Bell Atlantic Corp. v. Twombly</u> . . . and <u>Ashcroft v. Iqbal</u> . . . , a

bare allegation of conspiracy was not enough to survive a motion to dismiss for failure to state a

claim.  It was too facile an allegation."); <u>Hays v. McLachlan</u>, 97 F.3d 1464 (Table), 1996 WL

557805, at *3 (10th Cir. Sept. 30, 1996)("[S]tate tort claims, such as the alleged fraud and forgery

by the bank here, cannot be federalized for purposes of the civil rights statutes simply by including

conclusory allegations of conspiracy with government officials.").  Moreover, no alleged facts

would support a finding that M. Martinez or Ms. Latta were state actors, as is required to state a

claim under 42 U.S.C. § 1983.  <u>See</u> <u>Summum v. City of Ogden</u>, 297 F.3d at 1000; <u>Shaffer v. Cook</u>,

634 F.2d 1259 (10th Cir. 1980)("We have stated before that '(l)awyers do not act under color of

state law solely by engaging in private litigation on behalf of their clients.'")(quoting <u>Brown v.</u>

<u>Chaffee</u>, 612 F.2d 497, 501 (10th Cir. 1979)).  The Court will thus dismiss P. Martinez' § 1983

claim against M. Martinez and Ms. Latta.

### B. P. MARTINEZ FAILS TO PROPERLY ALLEGE DISCRIMINATORY ANIMUS OR CONSPIRACY, SO HER § 1985 CLAIM MUST FAIL.

In addition to her § 1983 claim, P. Martinez alleges a conspiracy to deprive her of her

equal-protection rights under 42 U.S.C. § 1985(3).  This claim must also fail.  To state a claim under

42 U.S.C. § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially discriminatory

animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act

in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom.  <u>See</u> <u>Clements</u>

<u>v. Chapman</u>, 189 Fed. Appx. at 691 ("Clements' complaint is void of any allegations of racial or

class-based discriminatory animus on the part of Grier and Miller, as is necessary to support the

claims against them under §§ 1985 and 1986"); <u>Paris v. Sw. Bell Tel. Co.</u>, 94 Fed. Appx. at 815;

Tilton v. Richardson, 6 F.3d at 686; Campbell v. Amax Coal Co., 610 F.2d at 702.  As the Tenth

Circuit has recognized, the intent of § 1985 was to "provide redress for victims of conspiracies

impelled by a commingling of racial and political motives."  Brown v. Reardon, 770 F.2d at 907.

Furthermore, conclusory allegations that the defendants acted in concert or conspired, without

specific factual allegations to support the assertions, are insufficient to state a claim.  See Brever v.

Rockwell Int'l Corp., 40 F.3d 1119, 1126 (10th Cir. 1994)("A plaintiff must allege, 'either by direct

or circumstantial evidence, a meeting of the minds or agreement among the defendants.' . . . more

than mere conclusory allegations are required to state a valid claim . . ."); Merritt v. Hawk, 153 F.

Supp. 2d at 1225.

        P. Martinez makes no allegation of discriminatory animus by M. Martinez, Ms. Latta, or

Judge Whitefield.  No alleged facts touch on any individual's race, political or religious affiliation,

or any other categorization against which the Defendants might hold a discriminate animus.  While

M. Martinez is male, both Ms. Latta and Judge Whitefield are female, mitigating against the

inference that the Defendants might be discriminating against P. Martinez because she is a woman.

Furthermore, there is nothing more than a conclusory allegation of conspiracy, lacking any

underlying facts.  Some courts have held that when an attorney is acting in his or her representative

capacity, he or she cannot "conspire" with his or her client.  See Heffernan v. Hunter, 189 F.3d 405,

411-14 (3d Cir. 1999) ("The challenged activity may violate the canons of ethics, but so long as it

is within the scope of representation, it does not eliminate the exemption from a conspiracy charge

under section 1985.").  See also Shaffer v. Cook, 634 F.2d 1259 (10th Cir. 1980)(holding that

plaintiff failed to allege conspiracy between attorney and trial judge when plaintiff alleged that he

saw judge and attorney talking before hearings).  The Court thus finds that P. Martinez fails to state

a claim under 42 U.S.C. § 1985(3).  The Court will dismiss this claim.

## V.    P. MARTINEZ STATES A CLAIM FOR MALICIOUS PROSECUTION AGAINST M. MARTINEZ AND MS. LATTA.

The only remaining claims are P. Martinez' claims of malicious abuse of process against M. Martinez and Ms. Latta.  The Court has jurisdiction over these claims because the parties are completely diverse and P. Martinez alleges a proper amount in controversy.  Ms. Latta asserts that P. Martinez fails to state a claim for malicious abuse of process against her.  The Court finds that these claims are properly pled and should survive the underlying motions to dismiss.

To properly state a claim for malicious abuse of process under New Mexico law, the plaintiff must allege: (i) a use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in doing so to accomplish an illegitimate end; and (iii) damages.  P. Martinez alleges damages in the form of emotional distress and attorneys fees.  She also seeks punitive damages against all Defendants.  She also alleges that M. Martinez, and Ms. Latta, on M. Martinez' behalf, filed frivolous motions, initiated proceedings, engaged in forum-shopping, and lied to judges, all in an effort to deplete P. Martinez' funds, force her to stop asserting her rights against M. Martinez in a separate contract dispute, and stop P. Martinez from engaging in discovery that would uncover assets that M. Martinez allegedly concealed during the divorce proceedings.  These facts, although scattered throughout a long and rambling Amended Complaint, state a malicious-abuse-of-process claim against M. Martinez and Ms. Latta.  The Court will therefore deny Ms. Latta's motion to dismiss this claim and reject the Magistrate Judge's PF&RD to the extent that it finds that this claim should be dismissed.

## VI.    THE COURT SUSTAINS IN PART AND REJECTS IN PART P. MARTINEZ' OBJECTIONS.

P. Martinez filed objections to the PF&RD.  While the Court has reanalyzed most of the claims and defenses involved in the case with P. Martinez' objections in mind, rendering them moot,

the Court notes that some of P. Martinez' objections deserve explicit treatment.  First, P. Martinez asserts that several of the Defendants answered after the time for filing an answer had expired, and that they were therefore in default.  The Court, however, has discretion to permit late-filed answers if the untimeliness does not appear to be in bad faith.  See Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1494 (10th Cir. 1995).  The Court has no reason to suspect bad faith, and would rather that P. Martinez' claims be heard in a proper court, on their merits. The Court has a strong preference to decide issues on their substance, rather than on procedural default.  The Court therefore accepts all of the responses, be they answers, motions to dismiss, or motions for a more definite statement, as timely answers to the Amended Complaint.  Those parties as to whom the Court does not dismiss P. Martinez' claims, however, must now file an answer to P. Martinez' lawsuit.  Second, to the extent that P. Martinez objected to the Magistrate Judge's failure to analyze the specific elements of a malicious-abuse-of-process claim and objected to the Magistrate Judge's dismissal of the case on Younger-abstention or domestic-relations-exception grounds, those objections are sustained.

Ultimately, the Court has considered the arguments presented in all of the motions to dismiss that the various parties filed, and has come to the conclusion that, for the reasons stated above, P. Martinez properly states a claim for malicious abuse of process against M. Martinez and Ms. Latta, and states a claim for a partition and accounting against M. Martinez.  On the other hand, she does not state a claim that this Court can entertain against Judge Whitefield, Smith, or Wiest.  The Magistrate Judge's PF&RD is adopted in part and rejected in part.  The Court's conclusion thus disposes of the following pending motions:

1.      Defendant Lynda Latta's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) or in the Alternative to Dismiss with Prejudice for Lack of Jurisdiction (Doc. 11) is denied;

2.     P. Martinez' Motion to Strike "Paul Wiest's 'Answer to Lawsuit, August 4, 2009" (Doc. 13) is denied;

3.     P. Martinez' Motion to Strike "Defendant Lynda Latta's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice Prusuant [sic] to Fed. R. Civ. P. 12(b)(6) or in the Alternative to Dismiss with Prejudice for Lack of Jurisdiction" (Doc. 14) is denied;

4.     Defendant Judge Elizabeth Whitefield's Motion to Dismiss (Doc. 15) is granted;

5.     Judge Whitefield's Motion to Stay Discovery Until the Court Rules on Defendant Judge Whitefield's Dispositive Motion (Doc. 18) is denied as moot;

6.     P. Martinez' Motion to Strike "Defendant Elizabeth Whitefield's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice Pursuant to Fed. R. Civ. P. 12(b)(6) Filed on August 25, 2009 (Doc. 22) is denied;

7.     P. Martinez' Motion to Strike "Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion to Dismiss" (Doc. 23) is denied;

8.     P. Martinez' Motion to Strike "Motion to Stay Discovery Until the Court Rules on Defendant Judge Whitefield's Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion to Dismiss" (Doc. 24) is denied as moot;

9.     Judge Whitefield's Motion for Extension of Time to File Briefs (Doc. 29) is denied as moot;

10.    Defendant Jean Smith's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading (Doc. 31) is denied as moot;

11.    Defendant Mike Martinez's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading (Doc. 33) is denied;

12.    Judge Whitefield's Amended Motion for Extension of Time to File Briefs (Doc. 34) is denied as moot;

13.    P. Martinez' Motion to Strike and/or Deny Defendant Mike Martinez's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading (Doc. 36) is denied as moot;

14.    P. Martinez' Motion to Strike and/or Deny Defendant Jean Smith's Motion for a More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) or in the Alternative to Strike the Pleading (Doc. 37) is denied as moot;

15.    P. Martinez' Motion to Enter Default Against Defendant Mike Martinez (Doc. 45)

is denied;

16.    P. Martinez' Motion to Enter Default Against Defendant Jean Smith (Doc. 46) is denied as moot;

17.    P. Martinez' Motion to Enter Default Against Defendant Elizabeth Whitefield (Doc. 47) is denied as moot;

18.    P. Martinez' Application -- Motion for Hearing to Assess Liability Damages for Entry of Default Judgment -- on Separate Claim -- rule 54(b) for Defendant Mike Martinez (Doc. 48) is denied; and

19.    P. Martinez' Application -- Motion for Hearing to Assess Liability Damages for Entry of Default Judgment -- on Separate Claim -- rule 54(b) for Defendant Jean Smith (Doc. 49) is denied as moot.

**IT IS ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition is adopted in part and denied in part, as more fully set forth in this Order.  This case is re-referred to the Magistrate Judge for proceedings consistent with this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel*:

Patricia Martinez
Broken Arrow, Oklahoma

    *Plaintiff pro se*

Joshua Simms
Albuquerque, New Mexico

    *Attorney for Defendants Michael Martinez and Jean Smith*

Jessica C. Roth
Albuquerque, New Mexico

    *Attorney for Defendant Lynda Latta*

Alfred A. Park
Lawrence M. Marcus
Cadigan & Park, PC
Albuquerque, New Mexico

    *Attorneys for Defendant Hon. Elizabeth Whitefield*

Paul Wiest
Albuquerque, New Mexico

    *Defendant pro se*