IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**PATRICIA MARTINEZ**,

    Plaintiff,

v.                                                             **No. CIV-09-281 JB/KBM**

**MICHAEL MARTINEZ and
LYNDA LATTA**,

    Defendants.

## **REPORT AND RECOMMENDATION**[1]

**THIS MATTER** comes before me on an Order of reference issued pursuant to 28 U.S.C. §§ 636(b)(1)(B), (b)(3), and *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990), and directing me to "perform any legal analysis required to recommend to the Court an ultimate disposition" of any motions filed in this case. Doc. 67. Before the Court is pro se Plaintiff Patricia Martinez's 23-page *Request (Motion) to Judge Browning re 54(b) Judgement Determination for Doc. 124 Order - Either in Confirmation of Final Judgment or a Doc. 54(b) Determination of His Actions Dismissing Defendants Weist, Smith and Whitefield*, filed February 9, 2011 [Doc. 134]. P. Martinez requests an expedited decision on this motion, contending that it was not promptly filed because of electricity outages caused by the recent winter storms. *See* Doc. 134 at 23. As is her practice, P. Martinez has combined what should have been a simple request for certification with a lengthy discourse on other matters - specifically why she believes that Judge Browning erred in dismissing her claims and overruling her objections.

---

[1] Within fourteen (14) days after a party is served with a copy of this analysis and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendation. A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the analysis and recommendation. If no objections are filed, no appellate review will be allowed.

Contrary to P. Martinez's assertion that the Tenth Circuit "has assumed jurisdiction" over her interlocutory appeal of three rulings issued in this case, on January 24, 2011 the Tenth Circuit Court of Appeals issued an Order to Show Cause informing P. Martinez that "it appears that this court lacks jurisdiction over this attempted appeal." Doc. 132 at 2. The Tenth Circuit told P. Martinez that, "[t]o the extent she wishes to appeal the dismissal of her claims against defendants Whitefield, Wiest and Smith, she may file in this court a copy of a district court order granting certification under Fed. R. Civ. P. 54(b)." *Id.* Of course, as noted in my January 26, 2011 Report and Recommendation recommending that the Court deny P. Martinez's request for a stay of all proceedings in this case, no such order exists because "[t]he Court did not direct in either Order [located at Doc. 81 and 124], nor did P. Martinez request, that a final judgment should issue as to P. Martinez's claims against these Defendants, nor did the Court expressly determine that 'there is no just reason for delay' such that P. Martinez could immediately appeal from those Orders under FED. R. CIV. P. 54(b) and 28 U.S.C. § 1292(b)." Doc. 133 at 2. As I also noted in my January 26 Report and Recommendation,

> the circuit courts of appeal have statutory discretionary immediate subject-matter jurisdiction only over appeals from interlocutory civil orders of the federal district courts if the district court, "within ten days after the entry of the [interlocutory] order" requests an interlocutory appeal because the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and [if] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b)......Certification of interlocutory appeals under § 1292(b) is "limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate and final decision of controlling questions encountered early in the action." *State of Utah By and Through Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994).

Doc. 133 at 5-6.

P. Martinez now untimely requests that the Court either construe its December 20, 2010 Order [Doc. 124] dismissing Wiest, Smith, and Whitefield as Defendants as a Rule 54(b) order

2

certifying the dismissals as final or that it now issue a new Rule 54(b) order doing so.  I recommend that the Court deny P. Martinez's requests.

First, the Court's December 20, 2010 order clearly was not intended to be a final order; it simply relieved the three Defendants from having to further participate in this document-intensive litigation.  Second, entering a Rule 54(b) order at this point would violate § 1292(b)'s 10-day time limit to request or issue certification for an interlocutory appeal.  This time limit would be meaningless if a party may retroactively request certification any time she decides she wants to appeal from an adverse ruling.  Most importantly, however, this is not one of those "extraordinary cases" in which the orders P. Martinez seeks to interlocutory appeal "involve[] a controlling question of law as to which there is substantial ground for difference of opinion" and an immediate appeal from the orders would not "materially advance the ultimate termination of the litigation." § 1292(b).

In an attempt to buttress her claims that an immediate appeal is essential, P. Martinez again contends, as she did in her objections to dismissal of her claims against Judge Whitefield, *see* Doc. 69 at 7-9 & 14-15, that Judge Whitefield is not absolutely immune from suit under § 1983.  She argues that Judge Whitefield acted in excess of, or in total absence of, subject-matter jurisdiction in issuing an order dismissing one of P. Martinez's 2007 suits[2] for partition and accounting of

---

[2] P. Martinez has previously sued M. Martinez at least 5 times for a partition/accounting or other theories including fraud and unjust enrichment for concealing what she claims was community property during the divorce proceedings, which lasted from 1995 until 1999.  She sued him in federal court in 2001 but her federal claims were dismissed with prejudice and her state-law claims were ultimately dismissed without prejudice; she moved to reopen the divorce proceedings in 2003 to litigate the issue but later withdrew that motion; she brought counterclaims for partition in 2005 in M. Martinez's state-court suit against her for malicious prosecution; she reopened the divorce proceeding in 2007 but allegedly voluntarily withdrew the motion to reopen; and she filed another separate suit in state court in 2007 but later voluntarily dismissed it and attempted to convince the judge presiding over the malicious-prosecution suit to reconsider her decision not to hear the counterclaims.

3

undivided community property against M. Martinez – which raised the exact issues P. Martinez raises against him in this federal suit – for failure to prosecute on March 24, 2009. But the Amended Complaint alleges that P. Martinez in fact brought a motion seeking partition and accounting of that property in state-case number DR 95-2963, which was the original divorce proceeding; that she voluntarily dismissed the claim in February 2003; but that she again refiled the claim in that case on January 5, 2007. *See* Amended Complaint at 33-34. Although P. Martinez contends that the January 5, 2007 refiling was in error and that she filed a new state-court complaint for partition and accounting on January 8, 2007 (which she also voluntarily dismissed in May 2007), it is undisputed that Michael Martinez reopened the divorce case by filing a motion for declaratory judgment on August 28, 2007 and seeking a ruling on P. Martinez's attempts to obtain partition of the property she alleged was community property. In ruling on M. Martinez's motion, Judge Whitefield concluded that if P. Martinez's claim for partition was still pending in the 95-2963 case over which she was the presiding judge, it was dismissed for failure to prosecute. *See* Am. Complaint at 18.

Under New Mexico law, "[a] court has subject matter jurisdiction in an action if the case is within the general class of cases that the court has been empowered, by constitution or statute, to determine." *Marchman v. NCNB Texas Nat'l Bank*, 120 N.M. 74, 83, 898 P.2d 709, 718 (1995). Judge Whitefield clearly had jurisdiction to issue further rulings after M. Martinez attempted to reopen the divorce case, and P. Martinez has not demonstrated a controlling question of law on which there is substantial ground for a difference of opinion regarding Judge Whitefield's absolute immunity from suit.

In regard to Wiest's and Smith's dismissals, P. Martinez complains that the Court *sua sponte* dismissed the claims against them on different grounds than those I recommended, without giving her an opportunity to respond and "particularize" her pleadings. Doc. 134 at 4. She contends that,

4

had she been notified that Judge Browning was going to dismiss the malicious-prosecution claims against Wiest and Smith, she could have alleged a claim for fraudulent concealment of documents relating to their fraudulent conduct in 1996-1998, support for which she contends was clearly stated in the Amended Complaint, and which she contends would toll the statute of limitations. *See* Doc. 134 at 12. But P. Martinez never sought reconsideration or to amend her complaint between the time Judge Browning dismissed the only claim she had brought against Wiest and Smith and almost nine months later, when he issued his order dismissing them as Defendants in this case.

And her new contention that she could state a claim for fraud against Wiest and Smith that is not barred by the statute of limitations because she did not know until 2005, when her attorney examined ledgers attached to M. Martinez's 1998 tax returns, that he had a "complicity of ownership" with Wiest and Smith in a building located on Candelaria before their divorce, *see* Doc. 134 at 15, is not only frivolous but deceitful.

I take judicial notice, *see United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (stating, "we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand")[3], that in 2001 P. Martinez sued M. Martinez, Wiest, and Smith in this Court in *Martinez v.*

---

[3] P. Martinez alluded to the 2001 federal suit in her Amended Complaint, falsely alleging that Defendant Latta "deceit[fully]" told Judge Whitefield that P. Martinez's "former RICO case was dismissed as 'frivolous'" when it had been dismissed on "federal issues" and was "remanded to the state without prejudice," and that her attorney was sanctioned for "failing to supply requested case law." Amended Complaint at 10; *see id.* at 5 (falsely stating that her RICO suit was dismissed without prejudice). In fact, P. Martinez had initially filed the complaint pro se, and after an attorney appeared in the case, Judge Black dismissed her complaint under FED. R. CIV. P. 9 and 12(b)(6) but allowed her attorney to submit an amended complaint. *See Martinez,* No. 01cv036 BB/WD Doc. 30 at 2. Judge Black warned the attorney, however, that "the case did not appear appropriate for the type of federal claim Plaintiff was attempting to bring, an action under [RICO] . . . and instructed Plaintiff's counsel to read several cases before deciding whether to file an amended complaint retaining the RICO claim." *Id.* Doc. 63 at 2. When she again brought federal RICO claims in her amended complaint, Judge Black again dismissed them *with prejudice*, noting:

*Martinez*, No. 01cv036 BB/WD for violation of state and federal RICO statutes, fraud and conspiracy, intentional infliction of emotional distress and unjust enrichment, and that her complaint arose out of the exact same set of facts that she alleges in the Complaint at bar. In January 2001, P. Martinez alleged that these same three defendants engaged in an "enterprise" to fraudulently conceal assets and income from her in the divorce proceedings. No. 01cv036 Doc. 1 at 1-2. As in the Complaint at bar, she alleged that they concealed records of real-estate sales – which she had discovered after the divorce – and fraudulently concealed the fact that M. Martinez actually owned the Candelaria building by conspiring to have Wiest and Smith take legal title to the building in July 1996, and by Wiest transferring his interest to Smith and then Smith quit-claiming the building to M. Martinez in 1998. *Id.* at 3. She referred to the quit-claim deeds and other documents showing the chain of ownership. She contended that Smith, whose income was only $2200/month, could not have been making her half of the monthly mortgage payment on the building, which was $2000, for the two years before she quit-claimed the property to M. Martinez, and suggested that M. Martinez

---

> From a review of the record in this case and the amended complaint, it is apparent that Plaintiff's federal RICO claim is nothing more than an attempt to re-litigate, in a different forum, a claim she failed to prove in her divorce proceedings: that Defendants conspired to hide her exhusband's income and assets from her, so she would not receive her fair share of community property or child support. Unfortunately for Plaintiff, even if her claim is true, it does not present an actionable RICO claim

*Martinez,* No. 01cv036 BB/WD Doc. 63 at 10-11. Judge Black dismissed the state and federal RICO claims and her state-law claims for conspiracy to commit fraud, fraud, intentional infliction of emotional distress, negligent misrepresentation, and unjust enrichment with prejudice. He later sanctioned the attorney because filing the amended complaint with the RICO claims violated both FED. R. CIV. P. 11 and that portion of the Lawyers Creed of Professionalism of the State Bar of New Mexico in which attorneys agree to "refrain from filing frivolous motions." *Id.* Doc. 69 at 2. The 10th Circuit affirmed the dismissal with prejudice of the federal RICO claims but reversed the dismissal with prejudice of the state-law claims on the grounds that, because it appeared that Judge Black dismissed those claims for Martinez's failure to show diversity jurisdiction, they should have been dismissed without prejudice for lack of subject-matter-jurisdiction. *See id.* Doc. 82 at 11-12.

had actually been making the payment. *See id.* In her amended complaint, she repeated these allegations and also stated that M. Martinez had understated his income on his tax returns from 1995-1999, *see* No. 01cv036 BB/WD Doc. 31 at 4-6, and that her discovery of these records and her investigation established Martinez, Wiest's and Smith's racketeering, fraud, and concealment, *see id.* at 5-7. Because P. Martinez clearly had all the information she needed to file a complaint against Wiest and Smith for fraud and fraudulent concealment in 2001, even though she may have discovered more evidence of the alleged fraud in 2005 by examining M. Martinez's tax records (at least some of which had been produced by 2001 according to the amended complaint), her contention that she could file a new suit against Wiest and Smith for fraud in 2010 because the statute-of-limitations would be tolled is frivolous.

Wherefore,

I RECOMMEND that the Court deny Doc. 134, P. Martinez's request for an untimely Rule 54(b) certification for interlocutory appeal of the December 20 and 21, 2010 rulings.

_____
UNITED STATES MAGISTRATE JUDGE