IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PATRICIA MARTINEZ,

    Plaintiff,

v.                                            No. CIV-09-0281 JB/KBM

MICHAEL MARTINEZ and
LYNDA LATTA,

    Defendants.

# ORDER DENYING MOTION FOR STAY and
# REQUIRING BRIEFING OF PRELIMINARY ISSUES

THIS MATTER comes before me on pro se Plaintiff Patricia Martinez's *Motion to Stay Proceedings*, filed October, 24, 2011 [Doc. 184] and on several pending motions regarding the scope and propriety of discovery. My duty, authority, and jurisdiction to rule on this non-substantive pre-trial matter and to enter orders requiring briefing regarding discovery or other legal issues arises under 28 U.S.C. § 636(b)(1)(A). *And see Celotex Corp. v. Catrett*, 477 U.S. 317, 326-27 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence" and noting that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'").

## Plaintiff's Request for a Stay

P. Martinez requests a stay of these proceedings pending the resolution of her petitions for certiorari to the United States Supreme Court regarding the Tenth Circuit Court of Appeal's

denial of her two petitions for writs of mandamus. Martinez's petitions requested my disqualification to serve as the referral magistrate judge and the vacation of what P. Martinez incorrectly characterizes as "sanction orders issued in the District Court's August Order." Doc. 184 at 1; *see In re Martinez*, No. 11-2145 (10th Cir. July 22, 2010) (Order denying petition for writ of mandamus and holding that my "adverse rulings do not establish any improper bias against petitioner," and that my descriptions and comments "do not display a deep-seated favoritism or antagonism that would make fair judgment impossible"); *In re Martinez*, No. 11-2174 (10th Cir. September 2, 2011) (Order denying petition for writ of mandamus regarding Judge Browning's denial of P. Martinez's request to modify the Scheduling Order because "the circumstances here do not warrant the issuance of an extraordinary writ"). After the Tenth Circuit denied Martinez's petition for rehearing in case No. 11-2145, it declined to even file her "Motion to Stay Order," noting that a request to stay a mandate under Fed. R. App. P. 41(d)(2) is inapplicable. *See In re Martinez*, No. 11-2145 (Aug. 16, 2011 letter to P. Martinez from the Court).

On October 20, 2011, Martinez filed a petition for writ of certiorari in the Supreme Court regarding No. 11-2145, but she improperly changed the style of the case to "Patricia Martinez (Petitioner) v. United States District Court for the District of New Mexico (Respondent)" and sent a notice to me that also improperly and erroneously names me as "Counsel for Respondent." I will disregard that "notice."

P. Martinez contends that this case should be stayed because she may be successful in her petition for a writ of certiorari. Because the odds that the very busy Supreme Court will take certiorari on the issues that Martinez raises are quite slim, and because this case needs to move

forward, I will deny the request for stay.

### The Need to Clarify the Record to Determine Certain Preliminary Issues

This case presents the most tangled and muddled procedural history of any case ever before me. I can understand the parties' extreme frustrations with the way the case appears to have been bungled not only by the parties, but also by former attorneys, and even by the various state courts, with judges passing the claims from one case to another and failing to enter timely final orders. P. Martinez contends that she has never had her day in court to prove that Michael Martinez committed fraud during the protracted divorce proceedings and that she is entitled to more money; M. Martinez contends that he's spent 16 years in never-ending litigation with her that should end now[1].

There are pending two opposing motions regarding discovery – M. Martinez's motion for a protective order asserting that P. Martinez's requests are overly burdensome, irrelevant, and improperly seek confidential records of scores of third-parties, *see* Doc. 173, and P. Martinez's motion to compel discovery, in which she contends that she has owned half of M. Martinez's real-estate businesses since 1998, so she is entitled to discover anything and everything associated with those businesses to the present time, *see* Doc. 180. Because her global request for discovery would affect scores of third-parties and require production of hundreds of documents that were created over a period of twelve years, I conclude that the parties should

---

[1] As noted in my Report and Recommendation filed on February 16, 2011, and which was adopted by the Court, *see* Doc. 138, "P. Martinez has previously sued M. Martinez at least 5 times for a partition/accounting or other theories including fraud and unjust enrichment for concealing what she claims was community property during the divorce proceedings . . . ." Doc. 135 at 3 n.2. The claims for partition based on alleged fraud actually began in 2000, in her first motion to set aside the divorce decree, which was not counted in that estimated number of suits and which she voluntarily withdrew.

brief four legal issues critical to P. Martinez's right to discovery regarding Albuquerque Commercial Realty and Albuquerque Realty.  *See Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

### The Types of Property for Which Discovery is Sought

There are two types of property that P. Martinez seeks to divide in her suit for partition of allegedly undivided community property: (1) the real properties located at 8501 Candelaria, 6700 Silkwood NW, 4908 Alberta Lane, and 3400 Blake Rd. SW in Albuquerque, New Mexico and income or profits generated by those real properties; and (2) personal property consisting of two businesses - Albuquerque Commercial Realty and  Albuquerque Realty, which M. Martinez created and which both had offices in the Candelaria building at one point in time before it was sold.  She also requests division of additional personal property in the amount of $14,175 in child-support monies that M. Martinez paid to P. Martinez between March 1998 and February 2001, using his business checks from Albuquerque Commercial Realty.  *See* Am. Compl. at 47-48.

### The Timing of Acquisitions and Legal Effect of Orders in the Divorce Action

P. Martinez's initial burden at trial will be to establish that the real properties and the real-estate businesses were purchased or created with community property during the parties' marriage.  Only then can she proceed to demonstrate that the properties were not divided in the divorce proceedings and thereby establish her right to co-tenancy and partition.  Then she must establish their increase in value and/or income derived from their ownership.

Thus, evidence will be relevant only as to properties acquired or businesses created

4

***before*** the date of the dissolution of the marriage.  So the correct date for when that dissolution occurred is a critical inquiry.  In my September 1, 2010 Order, *see* Doc. 121, I concluded that business records after the parties' divorce in 1998 were not reasonably calculated to lead to admissible evidence.  Judge Browning disagreed and upheld Plaintiff's objections to that part of my Order.  *See* Doc. 139.  In a footnote, Judge Browning made the following observation:

> A review of the record shows that M. Martinez misstated the year of the divorce to be June 1998 instead of the accurate date of June 1999 in his motion for protective order.  *See* Defendants' Joint Motion for Protective Order or in the Alternative to Deem Plaintiff's Discovery Requests as Premature and Overly Burdensome at 3, filed June 4, 2010 (Doc. 109).  The Court now corrects that date.

*Id.* at 6, n.1.

It is unclear whether Judge Browning was aware of information that might call this correction into question.  I take judicial notice of the recently-filed docket sheet from the divorce proceedings, Exhibit A to Doc. 186 (Defendant's Response to Motion to Compel).  This document reveals that in Cause No. D-202-DM-1995-02963, the following events occurred:

- 02/02/1998    Partial Decree Granting Divorce by Minute Order with determinations of support, child custody and property division to be deemed the court's final order if no proposed findings and conclusions were filed by 02/27/1998

- 02/25/1998    Requested Findings and Conclusions were filed by a party

- 05/04/1998    Court files its Findings of Fact and Conclusions of Law, but failed to file a final decree at that time

- 04/28/1999    Memorandum Order reaffirming Conclusions of Law filed May 4, 1998 and adopting them as final decree and final judgment from which appeal could proceed unless counsel file an alternative decree by May 10, 1999

- 06/02/1999    Final Decree of Dissolution of Marriage entered

I note that in New Mexico,

> [t]here are two types of divorces. A unified divorce is where "property division judgments [are] simultaneous with the divorce decree." A bifurcated divorce is "where a partial decree of divorce is entered before the division of community property.". . . Upon entry of a partial decree in a bifurcated divorce, the undivided community property automatically changes from community property to property that the parties hold as tenants in common.

*Gilmore v. Gilmore*, 147 N.M. 625, 632, 227 P.3d 115, 122 (Ct. App. 2009) (quoting *Lewis v. Lewis*, 106 N.M. 105, 109–10 (Ct. App. 1987). Thus, the first legal question that must be resolved: what is the legal effect, if any, on the parties' rights to obtain, create, or purchase property in their separate capacities of the February 2, 1998 minute order apparently granting the divorce and the May 4, 1998 Order setting forth the state-court's final conclusions of law?

P. Martinez failed to conduct *any* discovery during the discovery period set by the Scheduling Order in this case, so Judge Browning upheld my finding that she has given up her right to discover pre-1999 business records. Judge Browning did allow, however, P. Martinez an additional eighteen days from the entry of his order in which to serve discovery requests regarding income or profits from the real properties and businesses that M. Martinez received after June, 1999, when the appealable divorce decree was entered. *See* Doc. 164 at 2.

### The Law Applicable to the Property Types

The discovery P. Martinez now seeks pursuant to Judge Browning's order primarily relates to *personal* property – the real-estate businesses – and not to any accounting for income or profits M. Martinez may have received from his alleged ownership of the four real properties[2]

---

[2] New Mexico's Partition Act includes § 47-1-5 – the statute under which P. Martinez seeks to divide the real property – which applies only to real estate, including "lands, tenements, and hereditaments," but courts also have the equitable power at common law to partition personal property associated with realty, such as leaseholds, *see Sims v. Sims*, 122 N.M. 618, 622, 930 P.2d

that P. Martinez seeks to partition under NMSA 1978 § 42-5-1 of "lands, tenements, or hereditaments." *See* Doc. 173, Ex. A at 4 (requesting "the names and addresses of all financial institutions that Albuquerque Commercial Realty and any of its affiliates or branches and any other businesses that you either owned or were involved with"); *id.* (requesting "names and addresses of any persons having present custody or control of your post-divorce business records involving any business income derived from your commissions, or any other business sources generated by yourself, including fee-split shared commissions generated from any of your business associates in any capacity affiliated with Albuquerque Commercial Realty or any other income-generating businesses which you owned or were a part of wherein you received this income for the relevant aforementioned period of time"); *id.* at 4-6 (requests for production stating that they "refer back to" the two quoted requests for interrogatories and that "each request is also intended to include the source of Albuquerque Commercial Realty or any of its aliases or any other income-producing businesses you either owned during the marriage or co-owned or held jointly or that you shared with others;" and requesting 1099s "involving your real estate associates," including 82 brokers "that hold licenses under Albuquerque Commercial Realty").

  In support of her global requests, P. Martinez cites New Mexico case law indicating that former spouses are entitled to an accounting for the profits from community real property that *itself* creates income or may be rented, such as a tavern, notwithstanding the four-year statute of limitations that would bar a similar suit to divide undivided personalty. *See Martinez v.*

---

153, 157 (N.M.1996), and section 40-4-20 also grants authority to partition community personalty, such as businesses and retirement accounts.

*Martinez*[3], 135 N.M. 11, 83 P.3d 298 (2003) (concluding that the four-year statute of limitations found in NMSA 1978, § 37-1-4 does not apply to suits for partition of undivided community real property and the associated accounting for profits from that property brought under § 42-5-1). But in *Martinez*, the Supreme Court also indicated that an alleged co-tenant of real community property "*would* be subject to a limitations period . . . if her cotenant did 'something which amounts to an ouster.'" *Id.* at 14, 83 P.3d at 302. And in *Martinez*, the Court noted that it has already held that the four-year statute of limitations found in section 37-1-4 bars suits for undivided *personal* property (as opposed to real property) under section 40-4-20 that are brought after that limitations period has passed, based on the "crucial" "distinction between personal and real property." *See id.* (citing *Plaatje v. Plaatje*, 95 N.M. 789, 790, 626 P.2d 1286, 1287 (1981) (holding that, except for a claim for retirement benefits, the four-year statute of limitations found in section 37–1–4 applies to suits to divide personal community property brought under Section 40–4–20); *and see Gilmore v. Gilmore*, 147 N.M. 625, 632, 227 P.3d 115, 122 (Ct. App. 2009) ("we have identified two circumstances in which the four-year statute of limitations will not apply to a division of undivided assets under Section 40–4–20, namely, when the asset consists of retirement benefits and when the asset is real property"); *Mendoza v. Mendoza*, 103 N.M. 327, 333, 706 P.2d 869, 875 (Ct. App. 1985) (noting distinction between "the authority invested in the district court under Section 40-4-20" to divide undivided community property and the "specific statutory authorization . . . invoked by a party seeking partition of real estate held as tenants in common" under section 42-5-1).

   Further, it appears that P. Martinez's request for division of Albuquerque Commercial

---

  [3] The litigants in that case are not the same as in the case at bar.

Realty and Albuquerque Realty and her request for division of the child-support monies that were paid to her in 1998-2001 may be barred by the statute of limitations set forth in § 37-1-4 and *Plaatje*. In her Amended Complaint, P. Martinez indicates that she knew in March 1998 that M. Martinez had created Albuquerque Commercial Realty because he was paying his child-support payments to her with checks from that business, and that she moved in 2000 to set aside the state-court's original community-property division in part on the basis of fraud regarding the failure to report income in 1995-1997. *See* Am. Compl. at 41-48; *see also* Doc. 194 at 6, 10-11. And her claims for an accounting regarding the increase in value and rental or sales profits from the other properties may be subject to the four-year statute of limitations based on the principle of "ouster" as set forth in the *Martinez* case.[4]

---

[4] As noted in my February 16, 2011 Report and Recommendation, which the Court has adopted, *see* Doc. 138,

> in 2001 P. Martinez sued M. Martinez, Wiest, and Smith in this Court in *Martinez v. Martinez*, No. 01cv036 BB/WD for violation of state and federal RICO statutes, fraud and conspiracy, intentional infliction of emotional distress and unjust enrichment, and [] her complaint arose out of the exact same set of facts that she alleges in the Complaint at bar. In January 2001, P. Martinez alleged that these same three defendants engaged in an "enterprise" to fraudulently conceal assets and income from her in the divorce proceedings. No. 01cv036 Doc. 1 at 1-2. As in the Complaint at bar, she alleged that they concealed records of real-estate sales – which she had discovered after the divorce – and fraudulently concealed the fact that M. Martinez actually owned the Candelaria building by conspiring to have Wiest and Smith take legal title to the building in July 1996, and by Wiest transferring his interest to Smith and then Smith quit-claiming the building to M. Martinez in 1998. *Id.* at 3. She referred to the quit-claim deeds and other documents showing the chain of ownership. She contended that Smith, whose income was only $2200/month, could not have been making her half of the monthly mortgage payment on the building, which was $2000, for the two years before she quit-claimed the property to M. Martinez, and suggested that M. Martinez had actually been making the payment. *See id.* In her amended complaint, she repeated these allegations and also stated that M. Martinez had understated his income on his tax returns from 1995-1999, *see* No. 01cv036 BB/WD Doc. 31 at 4-6, and that her discovery of these

**Issues to be Briefed by the Parties**

Given the above observations on which the parties have not had the opportunity to be heard, the parties shall contemporaneously brief the following issues: (1) did the state-court's February 2 and May 4, 1998 Orders legally change the parties' marital relationship, such that property obtained, purchased, or created by them after February 2 or May 4, 1998 is not considered community property? (2) even if P. Martinez can prove that M. Martinez's two businesses were created before the marriage was dissolved and were never divided, does § 37-1-4 bar P. Martinez's suit for partition of Albuquerque Commercial Realty and Albuquerque Realty and the $14,175 paid for child support between March 1998 and February 2001 because those assets are personal, as opposed to real, property? and (3) assuming, without deciding, that M. Martinez fraudulently hid the purchase of the real properties from P. Martinez until a later date when she discovered that they may have been purchased for him during their marriage with community funds through "strawmen," was his behavior tantamount to an "ouster" such that the four-year statute of limitations should be applied from the date P. Martinez discovered the alleged fraud? The briefs are limited to fifteen pages each, and the parties shall not file response briefs unless I order them to do so.

---

      records and her investigation established Martinez, Wiest's and Smith's racketeering, fraud, and concealment, *see id.* at 5-7. Because P. Martinez clearly had all the information she needed to file a complaint against Wiest and Smith for fraud and fraudulent concealment in 2001, even though she may have discovered more evidence of the alleged fraud in 2005 by examining M. Martinez's tax records (at least some of which had been produced by 2001 according to the amended complaint), her contention that she could file a new suit against Wiest and Smith for fraud in 2010 because the statute-of-limitations would be tolled is frivolous.

Doc. 135 at 6-7. The question is whether, accepting P. Martinez's version of the facts as true, has she established ouster that triggered the four-year statute of limitations after discovery of that ouster.

Further, even if none of P. Martinez's claims for partition are barred by any statute of limitations, I take judicial notice that, in her brief in support of her petition for a writ of mandamus, P. Martinez contended to the Tenth Circuit that Judge Browning's August 12, 2011 Order denying discovery except for M. Martinez's business records from 1999 to the present "eliminate[s] discovery for the pre-divorce dates that would be necessary to establish my claims," and that her case "cannot be prosecuted without the proper discovery." *In re Martinez*, No. 11-2174 Petition at 19-21 (filed Aug. 26, 2011). She further asserted that the August 12, 2011 Order permitting discovery of only M. Martinez's *post-divorce* business records "holds the fatality of a dismissal with prejudice . . . [because] parties and multiple years of claims and properties will in essence be dismissed . . . unless this case is reviewed and reversed." *Id.* at 30.

It is true that the opportunity for discovery of M. Martinez's pre-divorce business records has now been precluded – not as a "sanction" but because P. Martinez waived her right to discovery by failing to timely conduct it. If P. Martinez is correct that she cannot establish that real property at issue were purchased with community property during the parties' marriage, or that realty businesses were started during the marriage using community funds, then she cannot establish the condition precedent to require partition of the properties and businesses – her legal co-tenancy in those properties and businesses . Accordingly, it would be futile and an enormous waste of resources to require M. Martinez to find and produce the business records (some of which are more than a decade old) necessary to give an accounting of the profits/losses and/or income from those properties and businesses. Further, if she cannot establish her claims for malicious prosecution against M. Martinez and Lynda Latta without discovery on those issues, they too should be dismissed.

Therefore, P. Martinez shall show cause in writing why, based on her statements made to the Tenth Circuit Court of Appeals, all of her claims should not be dismissed because she does not have, and cannot obtain, sufficient evidence to establish that the real properties and businesses that are the subject of this lawsuit were purchased or created with community funds during the parties' marriage or that Latta and M. Martinez are liable for the tort of malicious prosecution.  The brief is limited to five pages, but P. Martinez may refer to exhibits already in the record or attach exhibits, if any, from past discovery that she has conducted in previous suits, that support the essential elements of her claims.

### Timing Concerns

In her response to M. Martinez's motion for protective order, P. Martinez states that she will be having unspecified "eye surgery" on an unspecified day during the week of November 11, which she states would "preclude study [and] preparation." Doc. 179 at 11.  In her "notice of unavailability" she states that she will be "unavailable" until December 10, 2011 because her "doctor said he would like to allow this timing for a final post operative checkup." Doc. 185 at 1.  But the fact that a doctor does not schedule a final post-operative checkup until a month after a surgical procedure says nothing about whether it would be medically safe or inadvisable for that person to read and use a computer before that time.  I will set a deadline for all briefs described above to be filed by Monday, December 5, 2011.  If P. Martinez cannot meet this deadline, she must file a written request for extension of time, accompanied by a signed doctor's statement affirming that she should not read or use a computer before or after her eye surgery and that designates a specific period of time in which it would be medically unsafe or inadvisable to do so.

Finally, M. Martinez's request for an extension of time in which to complete the production of documents related to P. Martinez's discovery requests will be granted until such time as I enter an order finally ruling on the competing motions for protective order and to compel.

Wherefore,

**IT IS ORDERED AS FOLLOWS:**

(1)  P. Martinez's motion for stay [Doc. 184] is DENIED;

(2)  M. Martinez's request for an extension of time in which to completely respond to P. Martinez's discovery requests is temporarily granted until I issue a final order regarding that matter; and

(3)  The parties shall file the required contemporaneous briefs regarding the limitations and other issues set forth above no later than December 5, 2011.

_____
CHIEF UNITED STATES MAGISTRATE JUDGE