**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**PATRICIA MARTINEZ**,

      Plaintiff,

v.                                  **No. CIV-09-281 JB/KBM**

**MICHAEL MARTINEZ and
LYNDA LATTA**,

      Defendants.

# DISCOVERY ORDER AND
# REPORT AND RECOMMENDATION[1]

THIS MATTER comes before me on Defendant Michael Martinez's *Motion for Extension of Time to Provide Relevant Records and Protective Order or in the alternative to Deem Plaintiff's Requests as Overly Burdensome*, filed Sept. 26, 2011 [Doc. 173]; on pro se Plaintiff Patricia Martinez's *Motion to Compel*, filed October 11, 2011 [Doc. 180]; and on my November 10, 2011 Order requiring the parties to present evidence and brief critical issues essential to determining the proper scope of discovery and the applicable law in this case, *see* Doc. 196. P. Martinez failed to file timely briefs as required by my November 10, 2011 Order and Judge Browning's December 30, 2011 Order. She also refused to comply with my March 29, 2012 Order requiring her either to submit affidavits from her treating eye surgeons to support her claims of medical disability that

---

[1] Within fourteen (14) days after the parties are served with a copy of my discovery order and my proposed findings of fact, analysis, and recommended disposition of the claims in this case, a party may, pursuant to 28 U.S.C. § 636(b)(1)(A) & (B), file a motion for reconsideration of the discovery rulings and/or may also file a motion containing written objections to my proposed findings and recommended disposition on the merits. Such motions must be filed within the fourteen-day period allowed if appellate review of this Order is desired. If no motion to reconsider the discovery order and/or no written objections to the proposed findings and recommendation are filed, no appellate review will be allowed.

allegedly precluded her from submitting timely briefs, or waive her right to brief the issues.  *See*

April 11, 2012 Letter from P. Martinez (stating that she "will not be furnishing the medical affidavits

[Magistrate Judge Molzen] requested.").[2]  Judge Browning has ruled that "P. Martinez may not file,

and the Court will not consider, any briefs regarding the discovery issues set forth in the November

10, 2011 Order that were due on January 30, 2012."  May 28, 2012 MOO at 12-13.

My duty, authority, and jurisdiction to rule on the nonsubstantive pre-trial matters and to

enter a discovery order arises under 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure

26.  *And see Crawford-El v. Britton*, 523 U.S. 574, 598-99 (1998) ("Rule 26 vests the trial judge

with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.")

In my November 10, 2011 Order, I set out P. Martinez's partition claims:

There are two types of property that P. Martinez seeks to divide in her suit for partition of allegedly undivided community property: (1) the real properties located at 8501 Candelaria, 6700 Silkwood NW, 4908 Alberta Lane, and 3400 Blake Rd. SW in Albuquerque, New Mexico and income or profits generated by those real properties; and (2) personal property consisting of two businesses - Albuquerque Commercial Realty and Albuquerque Realty, which M. Martinez created and which both had offices in the Candelaria building at one point in time before it was sold. She also requests division of additional personal property in the amount of $14,175 in child-support monies that M. Martinez paid to P. Martinez between March 1998 and February 2001, using his business checks from Albuquerque Commercial Realty. *See* Am. Compl. at 47-48.

Doc. 196 at 4.  I required the parties to

contemporaneously brief the following issues: (1) did the state-court's February 2 and

---

[2]  Instead of filing the medical affidavits I required, on April 11, 2012 P. Martinez filed a document entitled *Verified Affidavit of Patricia Martinez Regarding Genuine Disputes Regarding Claims and Defenses in Partitioning and Malicious Abuse of Process Claims*, attaching several exhibits and pages from her Amended Complaint.  *See* Doc. 224.  The "affidavit" does not directly address any of the issues I directed P. Martinez to brief in the November 10, 2011 Order, and if I construed it as an attempt to comply with that Order, it is untimely and barred by Judge Browning's May 28, 2012 Order.

May 4, 1998 Orders legally change the parties' marital relationship, such that property obtained, purchased, or created by them after February 2 or May 4, 1998 is not considered community property? (2) even if P. Martinez can prove that M. Martinez's two businesses were created before the marriage was dissolved and were never divided, does § 37-1-4 bar P. Martinez's suit for partition of Albuquerque Commercial Realty and Albuquerque Realty and the $14,175 paid for child support between March 1998 and February 2001 because those assets are personal, as opposed to real, property? and (3) assuming, without deciding, that M. Martinez fraudulently hid the purchase of the real properties from P. Martinez until a later date when she discovered that they may have been purchased for him during their marriage with community funds through "strawmen," was his behavior tantamount to an "ouster" such that the four-year statute of limitations should be applied from the date P. Martinez discovered the alleged fraud?

*Id.* at 10.

In my September 10, 2010 Order granting a protective order to M. Martinez, I concluded that, "because Plaintiff's suit for partition regards only those assets that were community property during their marriage that remained undivided after their 1998 divorce, requests for business information after their divorce and until the present date are irrelevant, unduly burdensome, and an unwarranted invasion of privacy." Doc. 121 at 4. Judge Browning overruled that conclusion in part but extended the discovery deadline only to permit discovery of M. Martinez's "post-divorce business records" relating to undivided real property purchased, or undivided businesses started, during the marriage. *See* Doc. 164 at 2.

In my November 10, 2011 Order I further noted that P. Martinez had made several averments to the Tenth Circuit in her briefing, insisting that the Court's discovery rulings gutted her whole case. Accordingly, I concluded that,

If P. Martinez is correct that she cannot establish that the real properties at issue were purchased with community property during the parties' marriage, or that realty businesses were started during the marriage using community funds, then she cannot establish the condition precedent to require partition of the properties and businesses – her legal co-tenancy in those properties and businesses. Accordingly, it would be

3

> futile and an enormous waste of resources to require M. Martinez to find and produce the business records (some of which are more than a decade old) necessary to give an accounting of the profits/losses and/or income from those properties and businesses. Further, if she cannot establish her claims for malicious prosecution against M. Martinez and Lynda Latta without discovery on those issues, they too should be dismissed.

*Id.* at 11.  I required P. Martinez to submit an additional, separate brief explaining

> why, based on her statements made to the Tenth Circuit Court of Appeals, all of her claims should not be dismissed because she does not have, and cannot obtain, sufficient evidence to establish that the real properties and businesses that are the subject of this lawsuit were purchased or created with community funds during the parties' marriage or that Latta and M. Martinez are liable for the tort of malicious prosecution.  The brief is limited to five pages, but P. Martinez may refer to exhibits already in the record or attach exhibits, if any, from past discovery that she has conducted in previous suits, that support the essential elements of her claims.

*Id.* at 12.

Because, as discussed below, undisputed facts demonstrate that Defendant Michael Martinez is entitled to dismissal of Patricia Martinez's claims for division of allegedly undivided community real property under New Mexico's Partition Act, N.M.S.A. 1978 § 42-5-1, and that he is also entitled to dismissal of her claims for division of allegedly undivided personal community property under N.M.S.A. 1978 § 40-4-20, including his two businesses and income/child-support payments deriving from those businesses and for fraud associated with those claims, I will grant M. Martinez's motion for a protective order, and deny P. Martinez's motion to compel.  I will also recommend that Judge Browning dismiss these claims with prejudice, pursuant to the authority granted to me by the Order of reference directing me to "perform any legal analysis required to recommend to the Court an ultimate disposition" of this case pursuant to 28 U.S.C. §§ 636(b)(1)(B), and *Virginia Beach Fed. Sav. & Loan Ass'n v. Wood*, 901 F.2d 849 (10th Cir. 1990).  *See* Doc. 67.  Also, because P. Martinez has refused to brief the issue whether she can establish her malicious-abuse-of-process claims

without further discovery, I will recommend that they also be dismissed for her refusals to obey court orders.

Despite the Defendants' inexplicable failures to make any effort toward bringing these matters to a close, and because the Court prefers to address claims on their merits whenever possible, I have scoured the record to determine whether there exists any viable basis for those claims, accepting P. Martinez's recitation of the facts. I alternatively recommend that all malicous-abuse-of-process claims should be dismissed with prejudice as a matter of law.

### I.  UNDISPUTED FACTS AND/OR FACTS ALLEGED BY P. MARTINEZ.

1.  The parties were legally divorced on February 6, 1998, when, after holding a trial on January 12, 1998, the state district court in DR 95-2963 filed a signed "Minute Order" reflecting the court's declaration, made "in Open Court," that "[t]he parties are divorced."  Doc. 207, Ex. A at 1, ¶ 1 (certified copy of Minute Order filed February 6, 1998); Doc. 26, Ex. 2 (certified copy of February 6, 1998 Minute Order submitted by P. Martinez); Doc. 26, Ex. 6 (copy of P. Martinez's first petition seeking child-support modification and averring that "the Decree of Divorce [] was rendered on January 12, 1998"); Am. Compl. at 35, ¶ 8 (averring that the "Minute Order was filed on January 12, 1998").  The court awarded primary physical and modified joint legal custody of the parties' son to P. Martinez, Doc. 207, Ex. A at ¶ 2; and set forth several conclusions regarding the payment of costs for M. Martinez's and his son's "facilitated reconciliation," the proper division of community debts and assets, the award of transitional alimony, and the award of child support, *see id.* at 1-3, ¶¶ 3-10.

2.  The February 6, 1998 Order provided that, if either party wished to appeal from the court's decisions, he/she would have to file written proposed findings and conclusions within 14 days of that

5

Order or it would be "deemed the Court's final Order."  Doc. 207, Ex. A at 3-4, ¶ 11.

3.  P. Martinez timely filed proposed findings and conclusions, and she challenged only the court's findings and legal conclusions contained in ¶¶ 3, 4, 5, 6, 8, and 9 of the February 6, 1998 Order, which concerned monetary awards, alimony, division of property, and child support.  *See* Doc. 207, Ex. B at 1-19.  P. Martinez did not challenge the state-court's decree that the parties were now divorced, *see id.*, nor has she ever challenged or appealed from that ruling.  *See* Doc. 194, Ex. 1 at 4, ¶ 12 (stating that P. Martinez "took the child-support issues [to a] Texas [court]" for review after the final judgment was entered in June 1999).

4.  In its subsequent Orders and final Judgment, the state court never modified its February 6, 1998 Order decreeing that the parties were divorced.  *See* Doc. 207, Ex. C at 3, 4 (May 4, 1998 Findings and Conclusions again stating that "the parties have been married eighteen years" and that "the marriage of the parties is dissolved"); *id.* Ex. D (April 28, 1999 Memorandum Order "reaffirming" the May 4, 1998 Conclusions and adopting them as a final decree from which an appeal could be taken unless the parties submitted a different proposed final decree); *Id.* Ex. E at 3 (June 2, 1999 Final Decree of Dissolution of Marriage and Judgment stating that the parties "have been married eighteen years" and that "the marriage of the parties is dissolved").

5.  In her challenge to the February 6,1998 findings and conclusions regarding community property and income from businesses, P. Martinez sought additional findings and conclusions, based upon her submitted documentary evidence and trial testimony, contending that she was entitled to more community property because M. Martinez had "tried to hide his assets."  Specifically, P. Martinez contended that Paul Wiest and his wife purchased a commercial property on Candelaria in Albuquerque with Jean Smith (M. Martinez's alleged girlfriend who supposedly did not have

6

sufficient income to pay her half of the mortgage) on July 24, 1996, which could be transferred to M. Martinez after the divorce.  *See* Doc. 207, Ex. B at 12, 13.  P. Martinez attached a deed showing that the Wiests and Smith purchased and held legal title to the property, and copies of Smith's bank records supporting P. Martinez's contention that Smith could not afford the payments.  *See id.* Atts. 3, 4.  P. Martinez sought a legal conclusion that "the commercial property that is under Jean Smith's [name] is a property of Mr. Martinez. . . . Respondent is entitled to one-half of these properties." *See id.* Ex. B at 13.

6.  P. Martinez also contended that M. Martinez had hidden the pre-divorce purchase of a house on Alberta street in Albuquerque for himself and Jean Smith, and that she was entitled to "one-half" of that asset.  *See* Doc. 207, Ex. B at 12, 13.

7.  On May 4, 1998, the state district court denied P. Martinez's "inconsistent" proposed findings and conclusions, and filed findings of fact and conclusions of law that are almost identical to its February 6, 1998 Order.  *See* Doc. 207, Ex. C; Doc. 194, Ex. 1 at 3, ¶ 7; Doc. 26 at 3, ¶ 7 (acknowledging that the state-court judge "denied [P. Martinez's] proposed findings and COL, assertions reflecting fraud and unreported commissions").

8.  M. Martinez obtained a brokers license for Albuquerque Commercial Realty in October 1997.  Am Compl. at 35, ¶ 9.

9.  M. Martinez "formed" and incorporated Albuquerque Commercial Realty in March 1998, the month after the marriage was dissolved, *see* Am. Compl. at 35, ¶ 10; Doc. 194 at 12, ¶ 12; Doc. 207 at 2, and "started the business Albuquerque Realty thereafter," Doc. 194, Ex. 1 at 4, ¶ 9, incorporating it in 2002, *see* Am. Compl. at 39, ¶ 22.  M. Martinez improved a suite of the Candelaria office building also beginning in March 1998, ultimately using it to house Albuquerque

Commercial Realty's offices.

10.   According to P. Martinez, she learned in March 2005 during a deposition of M. Martinez, *see* Doc. 26 at 7, ¶¶ 22-23, that M. Martinez paid $1000 toward the purchase of the Wiests' interest in the Candelaria commercial property on March 19, 1998; he made improvements to the property as expenses to Albuquerque Commercial Realty beginning in March 1998; he paid another $14,000 toward that purchase on April 4, 1998; he began making  mortgage and escrow payments that the Wiests had formerly made on April 1, 1998; and P. Martinez discovered a letter in February, 2000 in which M. Martinez stated in February 2000 that Albuquerque Commercial Realty, purchased the building "several years ago."  *See* Am. Compl. at 36-37, 41-43 & Exs. 5, 6, 7.  That building is "now sold."  Am. Compl. at 48, ¶ 45.  P. Martinez contends that M. Martinez swore in legal proceedings conducted in 2007 that he did not "acquire" the Candelaria property until January 17, 2002.  Am. Compl. at 36, ¶¶ 12, 13.

11.   The Wiests quit-claimed their ½ interest in the Candelaria property to Jean Smith on April 3, 1998.  *See* Am. Compl. at 41, ¶ 31.

12.   According to P. Martinez, M. Martinez's mother was listed as the owner on the title of a home on Silkwood in Albuquerque that was purchased in October 1997.  The mother resided in the home, and M. Martinez reported to P. Martinez that he lived there as well at times before the divorce.  *See* Am. Compl. at 46, ¶ 38.  According to P. Martinez, M. Martinez swore in previous legal proceedings conducted in 2007 that he did not "acquire" the Silkwood property until October 29, 2003.  Am. Compl. at 36, ¶¶ 12, 13.  A mortgage company sent to M. Martinez, on October 19, 1999, a "home equity loan offer" describing the property as M. Martinez's home.  *Id.* at 46, ¶ 38.

13.  Jean Smith was listed as the owner on the title of the house on Alberta  in Albuquerque,

purchased in May 1995, which is "now sold." *See* Am. Compl. at 46, ¶ 39; *id.* at 48, ¶ 45.

14.  M. Martinez used checks from his business, Albuquerque Commercial Realty, to pay for $14,175 in child support for his son, starting in March 1998.  Am. Compl. at 47-48, ¶ 44.

15.  P. Martinez knew by May 2000 that M. Martinez served as the selling realtor in October 1995 for Dennis King when King sold a property he owned on Blake Road to Cord Mounkes.  *See* Doc. 26, Ex. 8 at 19, ¶ E (P. Martinez's motion to set aside divorce decree filed May 31, 2000).  M. Martinez hired Mounkes as a real-estate associate at Albuquerque Commercial Realty in 1998 and Mounkes began subdividing the Blake property into lots called "the Stables," which Albuquerque Commercial Realty then listed for sale.  Am. Compl. at 44-45, ¶¶ 35-37.  In 2000, P. Martinez suspected that M. Martinez may have actually also owned the property because of information on Albuquerque Commercial's 1998 listing that had the initials "ARC" "as owner of this property." Am. Compl. at 44-45, ¶ 36.

16.  After an Oklahoma court dismissed P. Martinez's complaint alleging her right to receive more child support in 1999, *see* Doc. 26 at 4, ¶ 12, P. Martinez reopened the divorce case (No. DR 95-2963) on May 31, 2000 "based on fraud" and also filed a subsequent "Motion to Review Child Support" on June 30, 2000.  Doc. 26 at 4-5, ¶ 14.  She voluntarily dismissed those actions in October 2000 after reaching a settlement with M. Martinez.  *See id.* at 5, ¶ 16.

17.  When M. Martinez failed to comply with the terms of the settlement in March 2001, P. Martinez immediately brought a breach-of-contract action against him in a small-claims court in Albuquerque but the court dismissed that claim for lack of subject-matter jurisdiction in May 2002. *See id.* at 5-6.

18.  P. Martinez reopened the divorce proceedings with a motion to enforce the settlement

agreement on January 15, 2003, but voluntarily dismissed the motion in February 2003 and filed a suit for breach of contract against M. Martinez in Oklahoma in August 2003 and began conducting depositions in March 2005. *See* Doc. 26 at 6-7, ¶¶ 18-22.

19. Here in New Mexico, M. Martinez filed a state-court complaint against P. Martinez for malicious abuse of process on May 19, 2005 in case number CV 2005-3878. P. Martinez filed, on July 14, 2005, a counter-claim for malicious abuse of process based in part on the filing and service of that complaint, *see* Am. Compl. at 4, and on M. Martinez's attempts to prevent P. Martinez "from obtaining her apportionment of undisclosed, co-tenancy property." Doc. 26 at 8, ¶ 24.

20. P. Martinez also brought a second counterclaim for undivided community property in case number CV 2005-3878, but Judge Huling dismissed that counterclaim without prejudice on July 5, 2006 on M. Martinez's assertion that the judge in their divorce case should decide the community-property issues. *See* Doc. 26 at 8, ¶ 25. Judge Huling told P. Martinez that she "should file Count II in the domestic relations court." Am. Compl. at 7, ¶ 31, *id.* at 9, ¶ 43.

21. Accordingly, P. Martinez paid a fee and moved to reopen the divorce proceedings, DR 95-2963, on January 5, 2007, to divide the allegedly undivided community property. *See id.* at 15, ¶ 77.

22. P. Martinez then filed a new, independent action to divide the allegedly undivided community property in case number D-2007-0085 on January 8, 2007, but she did not serve the complaint until May 1, 2007 and voluntarily dismissed that complaint on May 23, 2007, the same day M. Martinez filed an answer to the complaint. *See* Am. Compl. at 7, ¶ 31; *id.* at 8, ¶¶ 33, 34.

23. According to the docket sheet in DR 95-2963, part of which P. Martinez submitted, P. Martinez filed a notice of withdrawal of her motion to reopen the divorce proceedings for division

of undivided community property on May 2, 2007. *See* Am. Compl. at 7, ¶ 31; *see also* Docket Sheet in DR 95-2963.

24.   Defendant Latta, acting for M. Martinez, filed duplicative motions for a declaratory judgment regarding the community-property issues in case numbers DR 95-2963 and D-2007-0085 on August 28, 2007. *See* Am. Compl. at 8-9, ¶¶ 39-41.  Judge Whitefield in DR 95-2963 appointed a special master to hear the community-property issues on November 15, 2007. *See* Doc. 26, Ex. 16 at 2; Am. Compl. at 12, ¶ 52.

25.   Mr. Loughren, the special master appointed in case number D-2007-0085, filed a report on September 7, 2007, recommending that the court find that P. Martinez had effectively dismissed her complaint on May 23, 2007, but Judge Walker, the presiding judge, did not file an order adopting that recommendation until January 14, 2008. *See* Am. Compl. at 8, ¶ 37; Doc. 26, Ex. 17 (March 24, 2009 Order in DR 95-2963 summarizing procedure in D-2007-0085).

26.   In November 2007, Judge Huling in CV 2005-3878 ordered the parties to engage in a settlement conference that was intended to achieve a "global" settlement of all claims in all courts. *See* Am. Compl. at 6, ¶ 19; Doc. 26, Ex. 20 (26-2 at 19) (December 11, 2007 letter from Latta to the special master stating that she believed "the parties have reached a global settlement of all outstanding and pending matters."); Doc. 26, Ex. 23 at 3 (26-2 at 23) (Transcript of March 14, 2008 hearing in which counsel for P. Martinez notes that M. Martinez's motion to enforce the settlement agreement was "related to multiple cases").  The parties reached an oral agreement, but P. Martinez refused to sign a final written agreement because it contained some "alterations" to the oral agreement.  Am. Compl. at 6, ¶ 21.

27.  M. Martinez filed duplicative motions to enforce the settlement agreement on January

25, 2008 in case numbers CV 2005-3878 and DR 95-2963.  *See id.* ¶¶ 22, 25.

28.  Judge Whitefield in DR 95-2963 declined to rule on the motion to enforce, deferring to Judge Huling in CV 2005-3878, who denied the motion to enforce on June 5, 2008.  *See id.* at 6-7, ¶¶ 23, 26; Doc. 26, Ex. 24 (26-2 at 27) (March 14, 2008 Minute Order "staying its decision on Petitioner's Motion to Enforce Settlement pending ruling by Judge Huling . . . .").

29.  Although Judge Walker dismissed P. Martinez's complaint in D 2007-0085 on January 14, 2008, on January 22, 2008 she re-appointed the special master, Mr. Loughren, to hear M. Martinez's motion for a declaratory judgment.  *See* Am. Comp. at 10, ¶ 44.  Judge Walker ultimately entered a final order on May 1, 2008, holding that the court had no jurisdiction to decide M. Martinez's motion for declaratory judgment.  *See id.* at 11, ¶ 49.

30.  In her December 23, 2008 motion to dismiss M. Martinez's motion for declaratory judgment filed in DR 95-2963, P. Martinez accused Latta of leading "Judge Huling [in case CV 2005-3878] to believe that this court (2963) had subject-matter jurisdiction inappropriately," and specifically sought damages for abuse of process for filing the motion to enforce settlement and the motion for declaratory judgment in two courts that, P. Martinez contended, did not have subject-matter jurisdiction.  *See* Doc. 26, Ex. 25 at 2 ("This is clearly an abuse of process, to improperly reopen this case here and in the other (0085) domestic relations court.").

31.  In her March 24, 2009 Order, Judge Whitefield in case number DR 95-2963 rejected P. Martinez's contentions that the divorce court had no subject-matter jurisdiction over P. Martinez's January 5, 2007 motion to reopen the divorce proceedings to divide undivided community property, but the court granted M. Martinez's motion to dismiss P. Martinez's motion to reopen for failure to prosecute under Rule 41 of the New Mexico Rules of Civil Procedure.  In addition, Judge Whitefield

specifically denied P. Martinez's request for travel and hotel costs and attorney fees that she claimed she was entitled to as damages because it was an "abuse of process" for Latta to have filed the two motions for declaratory judgment and for enforcement of the settlement agreement in two courts. *See* Doc. 26, Ex. 17; Am. Compl. at 14, ¶ 68; Am. Compl. at 15-18, ¶¶ 75-80.  P. Martinez stated that she would appeal from that final order.[3]  *See* Am. Compl. at 18, ¶ 80(f); Doc. 26, Ex. 17.

32.  Judge Huling in case number CV 2005-3878 never entered a written order dismissing M. Martinez's claim for malicious abuse of process; instead the court just closed the whole case on June 5, 2008 after the order denying the motion to enforce settlement was filed.  *See* Am. Compl. at 13-15, ¶¶ 58-61, 70; Doc. 26 at 9, ¶ 28.  P. Martinez did not appeal from those actions, deciding instead "to let it remain closed" and to file suit in this Court to bring "issues that were a part of that counterclaim."  Doc. 26 at 9, ¶ 28.[4]

## II.  APPLICABLE NEW MEXICO LAW.

Under New Mexico law, "'[s]eparate property' means:  (1) property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage . . . ."  N.M.S.A. 1978, § 40-3-8.  Conversely, "[p]roperty acquired during marriage by either husband or wife, or both, is presumed to be community property."  N.M.S.A. 1978, § 40-3-12.  "A court may dissolve the marital

---

[3]  The Court takes judicial notice that, according to the docket sheet in DR 95-2963, part of which P. Martinez submitted, P. Martinez moved to set aside the March 24, 2009 judgment and then withdrew that motion on July 20, 2009.  The court closed the case on 3/10/2010 "for lack of prosecution."

[4]  The Court takes judicial notice that, according to the docket sheet in CV 2005-3878, part of which P. Martinez submitted, P. Martinez filed a motion to reopen and reconsider the case on January 8, 2009 and M. Martinez filed a response and counter-motion to dismiss the case, but before the court held a hearing, P. Martinez filed a notice withdrawing her motion for reinstatement and reconsideration on April 20, 2009, and the court closed the case that same day.  *See* Am. Compl. at 15, ¶ 72.

13

relationship prior to [finally] ruling on the other issues raised in the divorce petition." *Mitchell v.*
*Mitchell*, 104 N.M. 205, 215-16, 719 P.2d 432, 433-34 (Ct. App. 1986).  Thus, once a court enters
an order dissolving the marriage, even though the court has not yet entered a final judgment or
decree, the marital relationship between the parties ends and their earnings, income, and purchases
of assets from the date the order of divorce is issued are separate property under N.M.S.A. 1978, §
40-3-8.  *See In re Miller's Estate*, 44 N.M. 214, 220, 100 P.2d 908, 912 (1940) (stating that "[w]hen
the decree of divorce is signed the marital status of both spouses ends simultaneously," and
undivided "community property becomes their property as though it had been held by them as
tenants in common"); *Mitchell*, 104 N.M. at 215-16, 719 P.2d at 442-43.  This principle also applies
to income from a business created during the marriage in which only one of the spouses practices
under a professional license.  "When a partial decree of divorce is entered, even though the decree
is not final for purposes of appeal, subsequent earnings of a former spouse are not subject to division
up to the date of the final decree.  Upon dissolution of the marriage, the community no longer owns
the labor of the parties."  *Mitchell*, 104 N.M. at 215-16, 719 P.2d at 442-43 (affirming divorce-
court's holding that "the community was not entitled to any monies generated by the C.P.A.
business" that the former husband had created during the marriage and worked at between the time
the court entered its order dissolving the marriage and entry of the final divorce decree over a year
later).

     Personal property "in its broad and general sense includes everything which is the subject of
ownership not coming under the denomination of real estate."  *McFadden v. Murray*, 257 P. 999,
1001 (N.M. 1927).  Thus, ownership of a business is personal property, and "the value of the practice
as a business at the time of dissolution of the community is community property." *Mitchell*,  104

14

N.M. at 209, 719 P.2d at 436.  However, "the individual right [or license] to practice a profession is a property right that cannot be classed as a community property." *Id.*; *see Muckleroy v. Muckleroy*, 84 N.M. 14, 15, 498 P.2d 1357, 1358 (1972) ("A medical license is only a permit issued by the controlling authority of the State, authorizing the individual licensee to engage in the practice of medicine.  The medical license may be used and enjoyed by the licensee as a means of earning a livelihood, but it is not community property because it cannot be the subject of joint ownership. We hold, therefore, that for purposes of the community property laws of the State of New Mexico, a medical license is not community property.").

"[W]here there is an allegation that the district court failed to distribute [community] property upon entry of a judgment of dissolution of marriage, relief may be sought through an independent action brought pursuant to NMSA 1978, Section 40-4-20(A) (1993)." *Matthews v. Jones*, No. 31,252, 2011 WL 5041526, *1 (Ct. App. Sept. 29, 2011) (unpublished); N.M.S.A. 1978, § 40-4-20 ("The failure to divide or distribute property on the entry of a decree of dissolution of marriage or of separation shall not affect the property rights of either the husband or wife, and either may subsequently institute and prosecute a suit for division and distribution or with reference to any other matter pertaining thereto that could have been litigated in the original proceeding for dissolution of marriage or separation.").  The four-year statute of limitations provided in N.M.S.A. 1978, § 37-1-4 generally applies to suits to divide personal property brought under Section 40-4-20. *See Plaatje v. Plaatje*, 95 N.M. 789, 790, 626 P.2d 1286, 1287 (1981).  The New Mexico appellate courts

> have identified two circumstances in which the four-year statute of limitations will not apply to a division of undivided assets under Section 40–4–20, namely, when the asset consists of retirement benefits and when the asset is real property. *See Plaatje*, 95 N.M. at 790–91, 626 P.2d at 1287–88 (concluding that the wife was not barred by the four-year statute of limitations from maintaining an action against the husband

for her share of retirement benefits); *Martinez v. Martinez*, 2004–NMCA–007, ¶ 18, 135 N.M. 11, 83 P.3d 298 (filed 2003) (concluding that the four-year statute of limitations does not apply to divisions of undivided real property under Section 40–4–20).

*Gilmore v. Gilmore*, 147 N.M. 625, 632, 227 P.3d 115, 122 (Ct. App. 2009).

A joint tenant of real property may also file an independent action for partition of that property under New Mexico's Partition Act, N.M.S.A. 1978 § 42-5-1 ("When any lands, tenements or hereditaments shall be owned in joint tenancy, tenancy in common or coparcenary, whether the right or title be derived by donation, grant, purchase, devise or descent, it shall be lawful for any one or more persons interested, whether they be in possession or not, to present to the district court their complaint in chancery, praying for a division and partition of such premises, according to the respective rights of the parties interested therein, and for a sale thereof, if it shall appear that partition cannot be made without great prejudice to the owners."). But "[t]he Act may not be used to compel the partition of types of property that it does not expressly mention," thus § 42-5-1 applies only to "lands, tenements or hereditaments." *Sims v. Sims*, 122 N.M. 618, 630, 930 P.2d 153, 165 (1996). And, of course, a pre-condition to partition under § 42-5-1 is the establishment of the pre-existing joint tenancy of the plaintiff and defendant by "donation, grant, purchase, devise, or descent," N.M.S.A. 1978, § 42-5-1, because "[a] decree of partition does not create, manufacture, alter, or divest title to the property in question. It does not change the origin or character of the property. Its only effect is to sever the unity of possession; jointly held property is converted into severally held property." *Id.* at 631-632, 930 P.2d at 166-67; *see Rodriguez v. La Cueva Ranch Co.*, 17 N.M. 246, 251-52, 134 P. 228, 229-30 (1912) (noting that partition simply severs "the unity of possession," and, once partition is complete, each party possesses "precisely the same title which he had before; but

that which before was a joint possession was converted into a several one") (internal quotation marks omitted).

When a former spouse alleges that the other former spouse made fraudulent statements to hide community assets, any claim for fraud is subject to a four-year statute of limitations, with the claim accruing on the date the aggrieved party discovers the alleged fraud. *See Martinez*, 135 N.M. at 14, 83 P.3d at 301.

New Mexico classifies a claim for malicious abuse of process, which "is disfavored in the law," as a tort claim "designed to offer redress to a plaintiff who has been made the subject of legal process improperly, where the action was wrongfully brought by a defendant merely for the purpose of vexing or injuring the plaintiff, and resulting in damage to his or her personal rights." *DeVaney v. Thriftway Mktg. Corp.*, 124 N.M. 512, 517, 519, 953 P.2d 277, 282, 284 (1998), *abrogated in part on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux*, 142 N.M. 150, 164 P.3d 31 (2007). *And see Durham v. Guest* 145 N.M. 694, 701, 204 P.3d 19, 26 (2009) (setting out the elements of the "tort of malicious abuse of process"). The tort has three elements: (i) "the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge;" (ii) "a primary motive in the use of process to accomplish an illegitimate end;" and (iii) damages. *Durham*, 145 N.M. at 701, 204 P.3d at 26.

> An improper use of process may be shown by (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process. A use of process is deemed to be irregular or improper if it (1) involves a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or (2) indicates the wrongful use of proceedings, such as an extortion attempt. Finally, we emphasize that the tort of malicious abuse of process should be construed narrowly in order to protect the right of access to the courts.

*Id.* "When the judicial process is used for an illegitimate purpose such as harassment, extortion, or delay, the party that is subject to the abuse suffers harm, as does the judicial system in general." *Id.* at 702, 204 P.3d at 27. False statements made with a "design and purpose to bring on the prosecution" of an innocent individual may support a claim for malicious abuse of process. *See Nelson v. Hill*, 232 P. 526, 527 (1924) (overruled in part on other grounds by *Montgomery v. Vigil*, 65 N.M. 107, 332 P.2d 1023 (1958)); *Hughes v. Van Bruggen*, 44 N.M. 534, 538-39, 105 P.2d 494, 497 (1940) ("In order to charge a private person with responsibility for the initiating of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to commence the prosecution or that the information furnished by him upon which the official acted was known to be false.") (internal quotation marks omitted); *Durham*, 145 N.M. at 698, 204 P.3d at 23 (noting that the New Mexico Supreme Court has "combined the torts of abuse of process and malicious prosecution and restated them as a single cause of action known as malicious abuse of process"). "An abuse of process arises only when there has been a perversion of court processes to accomplish some end which the process was not intended by law to accomplish, or which compels the party against whom it has been used to do some collateral thing which he could not legally and regularly be compelled to do." *Farmers Gin Co. v. Ward*, 73 N.M. 405, 406, 389 P.2d 9, 11 (1964).

New Mexico's personal-injury statute provides that "[a]ctions must be brought . . . for an injury to the person or reputation of any person, within three years." N.M.S.A.1987, § 37-1-8. Because malicious abuse of process is a tort that damages an individual's "personal rights," *DeVaney*, 124 N.M. at 517, 953 P.2d at 282, the statute of limitations on a state-law malicious-

abuse-of-process claim appears to be, therefore, three years.  *See Mercer-Smith v. N.M. Children,*

*Youth & Families Dep't,*  No. 10-2053, 416 Fed. App'x 704, 712-713 & n.7, 2011 WL 971132, *7

(10th Cir. March 21, 2011) (affirming district court's dismissal of malicious-prosecution claim based

on New Mexico's 3-year statute of limitations for personal tort claims).   New Mexico does "not

recognize favorable termination as an element of a cause of action for malicious abuse of process,"

*Devaney*, 124 N.M. at 521, 953 P.2d at 286, so a plaintiff does not have to await the termination of

an allegedly wrongful underlying lawsuit to bring a claim, *see Fleetwood Retail Corp.*, 142 N.M. at

154, 164 P.3d at 34.

"The defense of the statute of limitations may be raised by motion to dismiss where it is

clearly apparent on the face of the pleading that the action is barred."  *Apodaca v. Unknown Heirs*

*of Following Persons Who Are Adjudged to be Owners & Proprietors of Tome Land Grant*, 98 N.M.

620, 623-24, 651 P.2d 1264, 1267-68 (1982).

> "Claim preclusion, or res judicata, bars subsequent actions involving the same claim,
> demand or cause of action."  *Wolford v. Lasater*, 1999-NMCA-024, ¶ 5, 126 N.M.
> 614, 973 P.2d 866 (internal quotation marks and citation omitted).   The purpose of
> res judicata is to "relieve parties of the cost and vexation of multiple lawsuits,
> conserve judicial resources, and, by preventing inconsistent decisions, encourage
> reliance on adjudication."  *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 66
> L.Ed.2d 308 (1980). . . . . We apply res judicata when all of the following elements
> are established: "'(1) identity of parties or privies, (2) identity of capacity or character
> of persons for or against whom the claim is made, (3) . . . same cause of action, and
> (4) . . . same subject matter.'"  *Wolford*, 1999-NMCA-024, ¶ 5, 126 N.M. 614, 973
> P.2d 866 (quoting *City of Las Vegas v. Oman*, 110 N.M. 425, 432, 796 P.2d 1121,
> 1128 (Ct. App.1990)).

*Chaara v. Lander*, 132 N.M. 175, 45 P.3d 895 (Ct. App. 2002); *Three Rivers Land Co., Inc. v.*

*Maddoux*, 98 N.M. 690, 694, 652 P.2d 240, 244 (1982) (accord), *reversed in part on other grounds*

*by Universal Life Church v. Coxon*, 105 N.M. 57, 728 P.2d 467 (1986) (reversing only insofar as the

*Three Rivers* opinion discouraged the practice of permitting a defendant to move for dismissal of a claim based on the defense of res judicata).

### III.   P. MARTINEZ IS NOT ENTITLED TO THE DISCOVERY SHE REQUESTS.

**A.   The state court has already ruled that the Candelaria and Alberta properties are not undivided community property.**

M. Martinez argues, and I agree, that the record conclusively establishes that P. Martinez has already litigated in the original divorce action the issue whether the commercial property on Candelaria and the house on Alberta were community property.  As noted above, the divorce court denied P. Martinez's requested findings that M. Martinez owned those properties before the divorce and refused to award P. Martinez one-half of those properties, and that judgment is final.  P. Martinez did not appeal from that judgment, thus it is res judicata.[5]  *See State ex rel. Sofeico v. Heffernan*, 41 N.M. 219, 234, 67 P.2d 240, 249 (1936) (stating that a judgment that is not appealed becomes "res judicata as to any and all future litigation between the same parties" involving the question resolved).  She, therefore, is not entitled to discovery of documents or other information related to these properties.

**B.   P. Martinez has alleged facts demonstrating that the Silkwood and Blake Road properties are NOT undivided community property, thus she has failed to state a cognizable claim.**

P. Martinez' Amended Complaint alleges that M. Martinez' mother owned and held legal title to the Silkwood house, where she resided at the time of the divorce, and that Dennis King

---

[5]  Even if I considered P. Martinez's Affidavit and exhibits filed April 11, 2012, they are irrelevant when a claim is barred by the doctrine of res judicata or by a statute of limitations.

owned the property on Blake Road until he sold it to Cord Mounkes in 1995.  The Amended Complaint alleges that M. Martinez did not become involved with the subdivision and sale of the Blake Road property until *after* the divorce, when he hired Mounkes to work for Albuquerque Commercial Realty.  P. Martinez has failed to allege, therefore, any facts to indicate that M. Martinez ever owned or held legal title to either property during the marriage by "donation, grant, purchase, devise, or descent."  N.M.S.A. 1978, § 42-5-1.  Therefore, she cannot establish that the properties were community property at the time of the divorce on February 6, 1998.  Because a partition action brought under N.M.S.A. 1978 § 42-5-1 "does not create, manufacture, alter, or divest title to the property in question . . . [or] change the origin or character of the property," *Sims*, 122 N.M. at 630, 930 P.2d at 165, and because P. Martinez does not contend that M. Martinez held legal title to those properties before February 6, 1998 – which is a matter of public record that was available to her before the divorce was final –  she cannot state a valid claim for partition of those properties.  Therefore, the post-divorce business records related to M. Martinez' acquisition of title to his mother's house or to any interests in the Blake Road property that he may have acquired *after* the date of the divorce as separate property are not relevant or discoverable.

**C. M. Martinez' real-estate brokerage businesses and income from those businesses are not community property as a matter of law.**

The undisputed facts as set forth in the Amended Complaint and P. Martinez's other filings also conclusively establish that Albuquerque Commercial Realty and Albuquerque Realty were not formed, incorporated, or operated until *after* February 6, 1998, the date the parties were divorced.  Those businesses, therefore, have always been M. Martinez's separate property under New Mexico law, and are not undivided community property.  *See* N.M.S.A. 1978 § 40-3-8.  Similarly, the

income M. Martinez derived from those businesses after February 6, 1998 is his separate property, and P. Martinez has no valid claim to half of that post-divorce income. *See Mitchell*, 104 N.M. at 209, 719 P.2d at 436. Although M. Martinez obtained his brokerage license in October 1997, that license was not community property. *See Muckleroy*, 84 N.M. at 15, 498 P.2d at 1358. All of P. Martinez' discovery requests relate to M. Martinez' post-divorce business records of businesses that were not formed or incorporated until after the divorce, and, therefore, are not relevant or discoverable.

### D. The statute of limitations has run on claims for division of M. Martinez's businesses.

Additionally, even if P. Martinez could somehow establish that M. Martinez received some unreported income before the divorce by using his brokerage license that was not divided in the divorce proceedings, her claims are time barred. As noted, *supra*, income and businesses are personal property, and the four-year statute of limitations provided in N.M.S.A. 1978, § 37-1-4 applies to suits to divide this type of personal property brought under Section 40-4-20. *See Plaatje*, 95 N.M. at 790, 626 P.2d at 1287. P. Martinez states in her Amended Complaint that she became aware that M. Martinez was receiving income from Albuquerque Commercial Realty when she received child-support checks written on that business's account in March 1998, so her cause of action accrued at least by that time. *See* N.M.S.A. 1978, § 37-1-7 (providing that, "[i]n actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved").

In conclusion, because P. Martinez's requests for post-divorce business records are irrelevant to a time-barred claim for undivided income or personal property like a business; because her claims

for division of the Candelaria and Alberta real properties have already been decided against her; because she has failed to state a claim for partition of the Silkwood and Blake Road properties; and because the documentary evidence and her allegations conclusively establish that M. Martinez's real-estate broker businesses and income generated from those businesses are his separate property obtained post-divorce, I will deny her motion to compel and grant M. Martinez's request for a protective order.

### IV. RECOMMENDATION FOR DISMISSAL OF THIS CASE

For the same reasons supporting the denial of discovery in this case, I recommend that the Court dismiss P. Martinez's claims for the division of personal property, including partition of the two real estate businesses M. Martinez created and the $14,175 in income he earned after February 6, 1998 and used to pay child support. P. Martinez's claims for division of property are based on her erroneous legal conclusion that the parties were not divorced until the final decree was entered in June 1999. As noted, *supra*, New Mexico law provides that divorces are effective the date an order dissolving the marriage is signed, and not on the date the final decree is entered, and that from the date the order is signed, property purchased, obtained, or earned by the parties is separate property, notwithstanding the fact that a final decree is entered later. *See In re Miller's Estate*, 44 N.M. at 220, 100 P.2d at 912; *Mitchell*, 104 N.M. at 209, 719 P.2d at 436. In addition, the four-year statute of limitations has run on all of P. Martinez's claims for allegedly undivided personal community property. *See Plaatje*, 95 N.M. at 790, 626 P.2d at 1287.

Because her claims for division of the Candelaria and Alberta real properties were denied in the state divorce court's findings and conclusions filed in May 1998 and in the final decree filed in June, 1999, they are barred by the principle of res judicata. And because P. Martinez has alleged

facts demonstrating that M. Martinez did **not** hold legal title to the Silkwood or Blake Road properties while the parties were married, she cannot establish an essential element for a partition of those properties under N.M.S.A. 1978 § 42-5-1 – that M. Martinez was a legal owner of the properties at the time of divorce. *See Sims*, 122 N.M. at 630, 930 P.2d at 165.  Further, because at least the Blake Road property has been subdivided and sold, partition under N.M.S.A. 1978 § 42-5-1 is impossible.

Finally, I recommend that the Court dismiss P. Martinez's claims for malicious prosecution against Latta and M. Martinez for two reasons.  First, P. Martinez represented to the Tenth Circuit Court of Appeals that this Court's denial of discovery gutted all of her claims.  *See In re Martinez*, No. 11-2174 Petition at 19-21, 30 (10th Cir.) (filed Aug. 26, 2011) (contending that Judge Browning's August 12, 2011 Order denying discovery except for M. Martinez's business records from 1999 to the present "eliminate[s] discovery for the pre-divorce dates that would be necessary to establish my claims," and that her case "cannot be prosecuted without the proper discovery" and asserting that it "holds the fatality of a dismissal with prejudice . . . [because] parties and multiple years of claims and properties will in essence be dismissed . . . unless this case is reviewed and reversed.").  If P. Martinez knows, as she contends, that her case has been gutted because the Court held that she waived her right to discovery except for certain post-divorce business records related to property purchased or businesses started during the marriage, this Court should take judicial notice of her averments and her case should be dismissed sooner rather than later.  Further, P. Martinez has refused to brief the issue whether she, in fact, will be able to "establish her claims for malicious prosecution against M. Martinez and Lynda Latta without discovery on those issues" as required by my November 20, 2011 Order at 11.  P. Martinez's blatant refusals to comply with this Court's

orders are numerous.

Second, "[u]nder Federal Rule of Civil Procedure 41(b), a district court may dismiss an action with prejudice if the plaintiff fails 'to comply with [the Federal Rules of Civil Procedure] or any order of court.'" *Cosby v. Meadors*, 351 F.3d 1324, 1333 (10th Cir. 2003). I find that the factors set out in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992), weigh in favor of dismissing these claims as a sanction for her noncompliance. Although neither M. Martinez nor Latta have expended an extensive amount of effort in defending this cause of action, I find that they, nevertheless, are prejudiced by P. Martinez's protracted litigation and voluminous filings and her refusal to either retract her statements made to the Tenth Circuit or explain whether she needs discovery to establish her claims.

Noncompliance with Court orders always interferes with the judicial process, and P. Martinez's refusal to comply with the orders requiring briefing have unfairly delayed and significantly interfered with the progress of discovery and speedy disposition of her claims. P. Martinez's culpability in delaying the proceedings over the past five months by refusing to brief critical issues is flagrant. Her act of filing pleading after pleading on other issues before this and other courts belie her purported justifications for refusing to supply the briefing required by the orders of this Court. Indeed, as Defendants point out in a recent responsive brief, "[s]ince Chief Magistrate Judge's November 11, 2011 Order (Doc. 196) instructing P. Martinez to file a responsive brief by December 5, 2011[,] she has filed, at least, 15 pleadings and two Writs of Certiorari to the Supreme Court." Doc. 237 at 1-2.

Although P. Martinez has not been expressly warned in advance that dismissal was a likely sanction for her failure to comply with the briefing orders, she was warned that her failure to brief

the issues would result in waiver of the right to file a brief, and she has given no good reason why her claims should not be dismissed for the reasons stated in the November 10, 2011 Order.  Based on my experience, nothing but the sanction of dismissal will affect P. Martinez.  She repeatedly ignores or mischaracterizes rulings and instructions she does not like and then personally attacks the judge who issued the ruling.  For example, although the Court has cautioned her repeatedly about her refusal to properly title motions so that the adverse parties and the Court are properly notified that she is requesting a ruling, *see* May 28, 2012 MOO at 2, n.1, she has informed the Court that she will continue to defy those instructions.  *See* Doc. 235 at 2-3.

Although she acknowledged that she received Judge Browning's December 30, 2011 Order "imposing a new deadline time" of January 30, 2012 in which to brief the discovery issues, Doc. 235 at 5, and knows that she has never filed responsive briefs, she accused me of making "false allegations that [she] had not complied with . . . Judge Browning's [] Order . . . to respond by January 30, 2012." *Id.* at 7.  She has characterized Judge Browning's true statement noting that she has refused "to comply with the basic requirements of litigation, like briefing discovery issues and filing motions for an extension of time if the party is unable to comply with an order," as "dishonest," "defamatory, twisted and conclusory."  Doc. 235 at 12.  She has repeatedly mischaracterized the scope of my Orders requiring her to file medical affidavits both in this Court and in the Tenth Circuit.  *See* Doc. 235 at 14; Doc. 225 at 6; Doc. 219 at 2.  In short, I conclude that P. Martinez's last two refusals to brief discovery issues or to support her alleged inability to do so with medical affidavits from her eye surgeons were made in bad faith, evincing "a glaring disregard and disrespect for the court's orders" that is sanctionable by harsher measures.  *Beilue v. Int'l Bhd. of Teamsters, Local No. 492*, 13 Fed. App'x 810, 814 (10th Cir. 2001) (unpublished); *cf. Newsome*

26

*v. Farer*, 103 N.M. 415, 419-21, 708 P.2d 327, 331-33 (1985) (noting that the N.M. state courts have both inherent authority and authority under Rule 41 to *sua sponte* dismiss cases for failure to obey court orders, and affirming dismissal with prejudice of suit where record demonstrated that pro se plaintiff's actions indicated his "insistence that only he would dictate the progress of this action,"where the pro se plaintiff's "rigidity in this case not only made normal progress difficult, it prevented any progress at all . . . [because] [h]e intentionally ignored a court order designed to narrow the issues and move the case forward,"and noting that "[a] litigant is not free to disregard an order of the court simply because he disagrees with it."). I recommend dismissal of the malicious-abuse-of-process claims because P. Martinez has unreasonably refused to comply with the Court's Orders to brief important issues regarding those claims or to support her justifications for her refusal to do so. As the New Mexico Supreme Court has noted,

> Somewhere along the line, the rights of . . . defendants to be free from costly and harassing litigation must be considered. So too must the time and energies of our courts and the rights of would-be litigants awaiting their turns to have other matters resolved. The exact point on that line is incapable of exact definition, but we are satisfied that the present case went beyond it.

*Newsome*, 103 N.M. at 421-22, 708 P.2d at 333-34 (internal quotation marks omitted).

But if the Court chooses instead to address the merits of P. Martinez's malicious-abuse-of-process claims, they nevertheless should be dismissed. Two of P. Martinez's claims for malicious abuse of process are time barred based on the allegations in her Amended Complaint and other filings.[6] "A trial court does not commit error in considering a defense and making a decision on it

---

[6] I note that neither Latta nor M. Martinez raised, in their answers to her amended complaint, the affirmative defense that the statute of limitations bars P. Martinez's claims based on the May 2005 filing of M. Martinez's complaint, *see* Doc. 85 at 5-6; Doc. 86 at 8; nor did either of them move for dismissal of her claim specifically on that basis. *See* Doc. 11 at 2, ¶ 7 (Latta's motion to dismiss contending that "[t]he facts . . . fail to state a claim for Malicious Abuse of Process against

if it appears that a defense is available under the issues litigated, and that substantial competent

evidence supports its prerequisite facts." *Apodaca*, 98 N.M. at, 623, 651 P.2d at 1267. As noted

above, it appears that the three-year statute of limitations applies to claims for malicious abuse of

process in New Mexico.  P. Martinez's claims are based in part on the May, 19, 2005 filing and

service of M. Martinez's complaint against her for malicious abuse of process.  *See* Am. Compl. at

---

Defendant Latta upon which relief may be granted.").  Perhaps after Judge Browning filed his March 30, 2010 opinion (which was filed before they filed their answers to the amended complaint) stating, *sua sponte*, that the statute of limitations for malicious-abuse-of-process claims in New Mexico is four years, *see* Doc. 81 at 41 (relying only on "NMSA 1978, § 37-1-4 (setting the statute of limitations for 'all other actions not herein otherwise provided for' as four years)," they believed that such a defense is not viable.

I urge the Court to review that legal conclusion, which was not briefed by the parties, *see* Doc. 10 at 1 (Wiest's Answer to Complaint stating only that all claims against him are barred by the statute of limitations), on the basis of the law I have cited, *supra*, which indicates that the statute of limitations in New Mexico for a tort that damages personal rights is three years, and not four years. I believe, therefore, that P. Martinez's claims based on the filing and service of the May 2005 complaint are barred as a matter of law.  Therefore, I further conclude that, if the Court did not dismiss the malicious-abuse-of-process claims under Rule 41, the Defendants could be given the opportunity to amend their answer to allege the statute-of-limitations defense.  *See Apodaca v. Unknown Heirs of Following Persons Who Are Adjudged to be Owners and Proprietors of Tome Land Grant*, 98 N.M. 620, 623-24, 651 P.2d 1264, 1267-68 (1982) (noting that "[a] trial court may allow pleadings to be amended to set up the statute of limitations defense, although generally it is true the defense is waived under N.M.R.Civ.P. 12(h) if not asserted in a responsive pleading," and holding that, because the plaintiff "was not prejudiced or surprised" by the assertion of the defense of the statute of limitations during a hearing, the trial court did not err in dismissing the plaintiff's claim on that basis); *Chavez v. Kitsch*, 70 N.M. 439, 442, 374 P.2d 497, 499 (1962) (noting that the "amendment of pleadings for the purpose of asserting the statute of limitations is a matter resting within the sound discretion of the trial court"); *Berry v. Meadows*, 103 N.M. 761, 767-68, 713 P.2d 1017, 1023-24 (Ct. App. 1986) (holding, in post-divorce case for division of undivided community property that, "[w]here an issue in the nature of an affirmative defense is raised and litigated without objection and specifically ruled on by the trial court, defendant's failure to raise the issue as an affirmative defense or seek an amendment at trial does not present a viable issue on appeal").  Here, it would be a waste of judicial resources in a case with no substantive merit, which has already significantly drained the court's resources, to require the defendants to amend their answer before ruling that P. Martinez's claims are barred by the applicable statute of limitations.  And P. Martinez has ample notice and an opportunity to address the issue in her objections to this report and recommendation, so there is no danger of lack of notice or unfair prejudice to her  Thus, I continue to recommend that the Court dismiss this claim.

4; *id.* at 21-22, ¶¶ 1, 3 (alleging that the improper motivation behind bringing the malicious-abuse-of-process suit and serving her with it at a deposition was to "to impose an additional, needless financial burden on Plaintiff . . . so she would drop the . . . breach of contract suit against him;" to prevent her from accessing the courts to bring her suits for undivided community property; and "intimidate, frighten [] harass . . . [and] retaliate against her, so that she would dismiss the breach of contract action").  The statute of limitations for filing a second malicious-abuse-of-process claim[7] based on these two allegedly wrongful acts, therefore, ran on May 19, 2008.  Because this suit was not filed until March 24, 2009, these causes of action are time barred, and I recommend dismissal of the claims on this alternative basis.

Moreover, P. Martinez's malicious-abuse-of-process claims that premised on Latta filing M. Martinez's motions to enforce the settlement agreement (in both CV 2005-3878 and DR 95-2963) and for filing his motions for a declaratory judgment (in both D-2007-0085 and DR 95-2963) have already been resolved against Plaintiff.  The March 24, 2009 state-court ruling expressly denied her request for monetary damages for traveling and hotel costs and attorney fees, which she specifically requested because of what she perceived as an "abuse of process" based on her contention that neither court (D-2007-0085 and DR 95-2963) had subject-matter jurisdiction over M. Martinez' motions.  *See* Am. Compl. at 18, ¶ 80(f); Doc. 26, Ex. 17, Ex. 25.  Judge Whitefield specifically found that, "based on the record" in D-2007-0085 and DR 95-2963, that P. Martinez "was the one who filed two simultaneous actions;" thereby invoking the court's jurisdiction when she "petitioned

---

[7]  As noted, P. Martinez filed her counterclaim for malicious abuse of process on July 15, 2005, which was her right, since favorable termination of M. Martinez's suit was not an element of her counterclaim.  *See Devaney*, 124 N.M. at 521, 953 P.2d at 286; *Fleetwood Retail Corp.*, 142 N.M. at 154, 164 P.3d at 34.

in [DR 95-2963] for division and distribution of property that was not divided in the divorce." Am. Compl. at 18, ¶ 80(f).  The court dismissed P. Martinez's motion to reopen for failure to prosecute, thereby determining that the court *did* have subject-matter jurisdiction over P. Martinez's claim for division of property.[8]  As P. Martinez notes in her Amended Complaint, *see* Am. Compl. at 29, ¶ 16, the court denied P. Martinez's request for damages based on the alleged abuse of process, Doc. 26, Ex. 17, which, under the principle of res judicata, now precludes P. Martinez from again bringing suit for malicious abuse of process based on those actions.

Even if P. Martinez may now be seeking more damages than just costs and attorney fees for defending against those motions, the New Mexico Court of Appeals has specifically held that, when a party in a divorce action accuses the former spouse and her attorney of committing a bad act during litigation, that party is later barred by res judicata from bringing a subsequent action seeking more or different damages for those same bad acts.  *See Chaara*, 132 N.M. at 176-79, 45 P.3d at 896-99 (holding, where divorce court had denied husband's request for sanctions against wife for failing to give childrens' passports to guardian ad litem; husband later incurred financial losses resulting from attorney's subsequent negligent failure to turn the passports over; and husband brought the failure to the court's attention but did not request reimbursement, "[h]usband's expectations that he could pursue Wife's Attorney in a separate action are outweighed by the interest of the courts and Wife's Attorney in bringing litigation to a close" under the doctrine of res judicata).

The only remaining aasserted bad acts that P. Martinez contends support a claim for malicious abuse of process are allegations that Latta lied to Judge Whitefield at the November 15,

---

[8]  Whether this ruling was right or wrong, the appropriate avenue for challenging the ruling was through direct appeal in the state appellate courts, not through arguments made in this Court.

2007 and March 24, 2009 hearings in DR 95-2963.  Plaintiff alleges:

1.  Latta "falsely told Judge Whitefield that the 0085 case that has been dismissed was still pending on November 15, 2007."  Am. Compl. at 9, ¶ 43(a), (e), (f), (j).  According to P. Martinez's allegations and the docket sheet in D-2007-0085, however, this was a true statement because Judge Walker did not adopt Mr. Loughren's recommendation and enter a final order stating that P. Martinez's May 23, 2007 notice of dismissal was effective until January 18, 2008.  *See* Am. Compl. at 8, ¶ 37; Doc. 26, Ex. 17.  Before that point, Judge Walker could have disagreed with the recommendation and held that the notice of dismissal did not operate to achieve dismissal as a matter of right because M. Martinez filed his response to the complaint the same day, and, Judge Walker could have granted M. Martinez's motion to dismiss with prejudice.

2.  Latta "fraudulently told Judge Whitefield that they were going to dismiss [P. Martinez's] former counterclaim and amend their own Malicious Abuse of Process case which was dismissed [but] the deadline in doing this ended in July 2007," Am. Compl. at 10, ¶ 43(d), and "fraudulently led the Court to believe that [the hearing officer in D 2007-0085] advised her to file a Motion in another Court on this issue," *id.* ¶ 43(g).  As a matter of law, these kind of statements made to a judge at a hearing cannot form the basis of a claim for malicious abuse of process, which is to be narrowly construed to protect a party's right to access the courts.  *See Durham*, 145 N.M. at 701, 204 P.3d at 26.  Further, a party may always seek an extension of time in which to modify a scheduling order, and it is not "fraudulent" to say that you intend to do so.  Further, it is not an improper use of judicial process for counsel to explain her perceptions to a judge at a hearing, however misinformed or misguided or wrong they may be.

3.  Latta told Judge Whitefield that P. Martinez's RICO claim brought in federal court in

2001 "was dismissed as 'frivolous' and that plaintiff had been sanctioned," when in fact, the claim "was dismissed on Federal issues . . . [and] Plaintiff's attorney was sanctioned for failing to supply requested case law."  Am. Compl. at 10, ¶ 43(I).  As the Tenth Circuit Court of Appeals noted, however, "[t]he district court concluded that plaintiff failed to state a claim under RICO and failed to establish a basis for diversity jurisdiction for the remainder of her claims.  The district court then imposed sanctions on plaintiff's counsel for filing a frivolous pleading." *Martinez v. Martinez*, Nos. 02-2182, 02-2188, 62 Fed. App'x 309, 311 (10th Cir. April 21, 2003).  The Court also noted that counsel had refiled an amended complaint "containing essentially the same RICO and state law claims set forth in her original complaint," which P. Martinez had filed pro se, so P. Martinez's RICO claim *always* had been frivolous.  *See id.*  Latta's statements, therefore, were true, and P. Martinez's statement that her attorney was sanctioned "for failing to supply requested case law" is false.

4.  Latta "fraudulently stated" to Judge Whitefield at the March 24, 2009 hearing resolving the competing motions to dismiss in DR 95-2963 that P. Martinez had "refused to cooperate with the Special Master," but that Latta also truthfully stated to the Judge that both parties had agreed to the Special Master's postponement of the proceedings regarding community property.  Am. Compl. at 14, ¶¶ 65, 67.  Besides the fact that this is not the kind of statement that can support a claim for malicious abuse of process, P. Martinez cannot show any damage she suffered by Latta claiming that P. Martinez had been uncooperative.  Therefore, she cannot state a viable claim for malicious abuse of process based on this allegation.

5.  Latta "falsely" stated at the March 24, 2009 hearing that Judge Huling in CV 2005-3878 "directed that the property division be held in the DR 95-2963 Court," when in fact Judge Huling

"told Plaintiff to refile it in a domestic relations court." Am. Compl. at 18, ¶ 81. Again, this is not the sort of "false" statement that will support a claim for malicious abuse of process because it neither caused P. Martinez to be subjected to an erroneous prosecution nor suggests "extortion, delay, or harassment," nor was it related to "a misuse of procedural devices such as discovery, subpoenas, and attachments." *Durham*, 145 N.M. at 701, 204 P.3d at 26.

Upon reviewing the allegedly false statements, I conclude that most of P. Martinez's assertions that they were false are belied by the record, and that even if they were false statements, they are not evidence of "an irregularity or impropriety suggesting extortion, delay, or harassment," and that they do not "involve[] a procedural irregularity or a misuse of procedural devices such as discovery, subpoenas, and attachments, or [] indicate[] the wrongful use of proceedings, such as an extortion attempt." *Durham*, 145 N.M. at 701, 204 P.3d at 26. I conclude, therefore, that P. Martinez has failed to state a viable claim.

**IT IS HEREBY ORDERED** that M. Martinez's *Motion for Extension of Time to Provide Relevant Records and Protective Order or in the alternative to Deem Plaintiff's Requests as Overly Burdensome* [Doc. 173] is GRANTED; that P. Martinez's *Motion to Compel* [Doc. 180] is DENIED.

**IT IS FURTHER RECOMMENDED** that in accordance with these proposed findings and recommended disposition, that the Court dismiss all of P. Martinez's claims with prejudice.

**DATED THIS 25th day of June, 2012.**

_____
**UNITED STATES CHIEF MAGISTRATE JUDGE**