## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PATRICIA MARTINEZ,

        Plaintiff,

v.                                       No. CIV 09-0281 JB/LFG

MICHAEL MARTINEZ,
LYNDA LATTA,
ELIZABETH WHITEFIELD,
individually and in her official
capacity, PAUL WIEST, and
JEAN SMITH,

        Defendants.

### AMENDED MEMORANDUM OPINION AND ORDER ADOPTING
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION IN PART[1]

---

[1] The Court amends this Memorandum Opinion and Order to correct an error in the previous Memorandum Opinion and Order, filed May 24, 2013 (Doc. 319). The Court incorrectly stated that the Honorable Karen B. Molzen, Chief United States Magistrate Judge, had not warned the Plaintiff Patricia Martinez that the failure to submit timely objections to the Discovery Order and Report and Recommendation, filed June 26, 2012 (Doc. 238)("R&R"), would result in a waiver of appellate review of her objections. See Memorandum Opinion and Order at 44 (Doc. 319). Chief Judge Molzen warned P. Martinez of the consequences of her failure to timely object to the R&R. See R&R at 1 n.1 ("Within fourteen (14) days after the parties are served with a copy of my discovery order and my proposed findings of fact, analysis, and recommended disposition . . . a party may . . . file a motion containing written objections . . . . If no . . . written objections . . . are filed, no appellate review will be allowed."). The Court has chosen, in its discretion, to review all of the documents which may contain objections to the R&R de novo, regardless whether the objections are untimely or are not titled as objections. Moreover, even though Chief Judge Molzen warned P. Martinez of the consequences of failing to timely object to the R&R, the Court has reviewed de novo the portions of the R&R to which P. Martinez has not objected. The Court has thus gone beyond its normal review of the portions of the R&R to which P. Martinez has not objected, which usually would determine only whether any of Chief Judge Molzen's recommendations are "clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)

**THIS MATTER** comes before the Court on: (i) the United States' Magistrate Judge's Discovery Order and Report and Recommendation, filed June 26, 2012 (Doc. 238)("R&R); (ii) Plaintiff Patricia Martinez' objections to the R&R; and (iii) the Motion to Certify Decree Divorce Dates - NM Supreme Court, filed November 13, 2012 (Doc. 310)("Motion to Certify"). P. Martinez filed the following motions addressing the Honorable Karen B. Molzen, Chief Magistrate Judge's findings in the R&R: (i) Motion to Strike Doc. 238, filed July 3, 2012 (Doc. 239)("Motion to Strike"); (ii) Motion to Extend Time to Respond to Doc. 238, filed July 3, 2012 (Doc. 240)("Motion to Extend"); (iii) Partial Objection to Doc. 242 and Response to Deadline - Doc. 240, filed July 13, 2012 (Doc. 243)("Partial Obj."); (iv) Objection 2 - Motion to Strike/Order/Report and Recommendation, filed July 24, 2012 (Doc. 246)("2nd Obj."); (v) Verified Affidavit to Defend - Supporting Objection 2 - Re: Doc. 238, filed July 24, 2012 (Doc. 247)("Verified Aff."); (vi) Reply to Motion to Extend Time (My Doc. 274) for Doc. 266 Issues and Memorandum in Support, filed October 17, 2012 (Doc. 305)("Reply"); and (vii) Amended - Verified Affidavit to Defend - Supporting Objections 2 - Re: Doc. 238 - (Doc. 247) - Memorandum in Support, filed November 13, 2012 (Doc. 311)("Amended Verified Aff."). The Court considers all of P. Martinez' objections, de novo, notwithstanding any issues of timeliness or how P. Martinez titled her pleadings. The primary issues are: (i) whether Defendant Michael Martinez is entitled to judgment as a matter of law on P. Martinez' partition and accounting claims, because the doctrine of res judicata precludes the Court from reviewing some of P. Martinez' claims, and P. Martinez has failed to raise a genuine issue of fact whether the remaining property is community property; (ii) whether M. Martinez and Defendant Lynda Latta are entitled to judgment as a matter of law on P. Martinez allegations of malicious abuses of process addressed in the R&R; and (iii) whether the Court should certify to the Supreme Court of

New Mexico the question: When was the Martinezes' divorce final?  The Court adopts the R&R in part and rejects the R&R in part, and the Court will deny the Motion to Certify.  The Court concludes that M. Martinez is entitled to judgment as a matter of law on P. Martinez' partition and accounting claims, because the doctrine of res judicata precludes the Court from reviewing some of P. Martinez' claims, and the evidence before the Court demonstrates that the remaining property is not community property as a matter of law.  The Court will not adopt Chief Judge Molzen's recommendation that the Court dismiss P. Martinez' claims to M. Martinez' personal property as time-barred under the relevant statute of limitations.  The Court will adopt Chief Judge Molzen's recommendations in the R&R regarding P. Martinez' allegations of malicious abuse of process against M. Martinez and Latta.  The Court will permit M. Martinez to amend his answer to state a statute of limitations defense to P. Martinez' allegations arising from M. Martinez conduct which occurred three-years before March 24, 2009, the date on which she brought this action in federal court.  The Court also concludes that M. Martinez and Latta are entitled to judgment as a matter of law on the remaining allegations addressed in the R&R.  The doctrine of res judicata precludes the Court from reviewing some of P. Martinez' allegations and the other allegations addressed in the R&R fail to raise a genuine issue of material fact whether Latta committed malicious abuse of process as a matter of law.  The Court will not, however, adopt Chief Judge Molzen's recommendation that the Court hold P. Martinez to any statements she made to the United States Court of Appeals for the Tenth Circuit regarding her inability to prosecute this case.  Neither will the Court adopt Chief Judge Molzen's recommendation that the Court dismiss P. Martinez' case as a sanction for her failure to comply with court orders.  Additionally, the Court will not adopt Chief Judge Molzen's recommendation that the case be

dismissed in its entirety, because the R&R does not address all of P. Martinez' allegations of malicious abuse of process.

## FACTUAL BACKGROUND

P. Martinez is the ex-wife of M. Martinez.  See Amended Complaint at 2, filed April 8, 2009 (Doc. 3).  P. Martinez and M. Martinez were divorced in the late 1990s, and Latta represented M. Martinez in the divorce and subsequent state court proceedings.  See Amended Complaint at 16-17.  The Court has previously stated the following facts regarding this case:

> P. Martinez insists that M. Martinez, represented by his attorney, Ms. Latta, filed a malicious-abuse-of-process claim, filed numerous frivolous motions, engaged in forum-shopping, and lied to judges. P. Martinez also alleges that M. Martinez and Ms. Latta engaged in this conduct with the intent to deplete P. Martinez' resources, to keep her from pursuing her rights in a contract dispute initiated in Oklahoma, and to keep her from engaging in discovery that would uncover the assets that she alleges M. Martinez concealed during the divorce proceeding.

Martinez v. Martinez, No. CIV 09-0281 JB/LFG, Memorandum Opinion and Order at 2, (D.N.M. Mar. 30, 2010)(Doc. 81)(Browning, J.).

## PROCEDURAL BACKGROUND

In March 2009, P. Martinez brought this lawsuit against M. Martinez and Latta, along with other Defendants whom the Court subsequently dismissed.  P. Martinez alleges, among other claims, malicious abuse of process against both M. Martinez and Latta, and a claim of "partition and accounting" against M. Martinez.  Amended Complaint at 32-49.  See id. at 21-32. She seeks an award of damages against M. Martinez and Latta.  See Amended Complaint at 49-51.

District courts may refer dispositive motions to a magistrate judge for a recommended disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter

dispositive of a claim or defense . . . .").  See also 28 U.S.C. § 636(b)(1)(B).  On December 11, 2009, the Court referred this matter to Chief Judge Molzen for proposed findings and a recommended disposition.[2]  See Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings, filed December 11, 2009 (Doc. 66).  On December 14, 2009, the Court amended the Order of Reference to correct an error.  See Amended Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, Non Prisoner Pro Se Cases, and Immigration Habeas Corpus Proceedings, filed December 14, 2009 (Doc. 67).  The Order of Reference directed Chief Judge Molzen to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court, in accordance with 28 U.S.C. § 636(b)(1)(B), an ultimate disposition of the case.

The record in this case is long, and the Court has issued numerous interlocutory orders. The Court begins its discussion of the procedural history of this case with those motions and orders that have brought this case to its current procedural posture.

Chief Judge Molzen issued a scheduling order on May 21, 2010, and P. Martinez objected to it.  See Scheduling Order and Discovery Plan, filed May 21, 2010 (Doc. 103)("Scheduling Order"); Objection to: 1 The Scheduling Order and Discovery Plan Provisions Filed May 21, 2010 (D 103) - and 2. to the Clerk's Minutes Filed on May 20, 2010 (D 99) With Brief in Support & Exhibits, filed June 2, 2010 (Doc. 107)("Objections to Scheduling Order"). Discovery closed in this matter on November 19, 2010.  See Scheduling Order at 1.  The Court overruled P. Martinez' Objections to Scheduling Order on December 21, 2010.  See

_____

[2] Chief Judge Molzen became the Chief United States Magistrate Judge for the District of New Mexico on April 1, 2011.  See Scott Sandlin, Former Scientist is New Chief U.S. Magistrate Judge for N.M., Albuquerque Journal (May 3, 2011), available at http://www.abqjournal.com/news/state/032321560101newsstate05-03-11.htm.

Memorandum Opinion and Order Denying Reconsideration, filed December 21, 2010 (Doc. 125)("Dec. 21 Order").  P. Martinez appealed the Dec. 21 Order on January 14, 2011, and the Tenth Circuit subsequently dismissed her appeal, finding that it lacked appellate jurisdiction over her case, because the Court had not entered a final, appealable order or judgment.  See Notice of Appeal, filed January 14, 2011 (Doc. 127); Order, filed April 19, 2011 (Doc. 142-1).  After the Tenth Circuit dismissed P. Martinez' appeal, P. Martinez moved the Court for a new scheduling order, explaining that "[a]ll of the dates set forth in that [Scheduling] Order have been exhausted due to the wait for responses from your Court."  Motion for New Scheduling Order to Judge Browning, filed April 24, 2011 (Doc. 143).  P. Martinez subsequently informed the Court that she was "unable to properly continue to prosecute this case until the objections were ruled on by Judge Browning."  Reply to Motion for New Scheduling Order at 1, filed May 2, 2011 (Doc. 150)("Reply to Scheduling Order").  P. Martinez asserted that the Court was required "by law" to address her Objections to Scheduling Order "before this case could continue to proceed."  Reply to Scheduling Order at 1.  P. Martinez asserted that, because the Court did not overrule her objections until after the discovery period ended, she has demonstrated good cause for modifying the Scheduling Order, as "all the deadline dates [were] exhausted and off track because the District Court's response did not come until after those dates were exhausted."  Reply to Scheduling Order at 2.  P. Martinez asserted that she could not "be held responsible if the time [the Scheduling Order] gives expires because you have waited six to nine months before you get a response from an objection."  Reply to Scheduling Order at 2.

On July 6, 2011, Chief Judge Molzen denied P. Molzen's Motion for New Scheduling Order to Judge Browning.  See Order Modifying Scheduling Order, filed July 6, 2011 (Doc. 158)("July 6 Order").  Chief Judge Molzen noted that P. Martinez did not serve timely discovery

requests and "did nothing toward prosecuting her case." July 6 Order at 2. Chief Judge Molzen also noted that P. Martinez "could have easily conducted and completed her discovery within the controlling deadline if she had simply submitted her new discovery requests to the Defendants while awaiting Judge Browning's ruling on her objections," or P. Martinez could have requested more time before discovery closed, but P. Martinez did neither. July 6 Order at 4. Chief Judge Molzen concluded that P. Martinez likely erroneously believed that "she did not have to obey an order to which she had objected," but Chief Judge Molzen also concluded that P. Martinez' status as a pro se litigant did not excuse her failure to abide by "'the fundamental requirements of the Federal Rules of Civil and Appellate Procedure.'" July 6 Order at 4-5 (quoting Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994)). P. Martinez objected to the July 6 Order, see Objection to Order Denying Modification of Scheduling Order, filed July 15, 2011 (Doc. 160), and the Court overruled P. Martinez' objections thereto, although the Court permitted P. Martinez to discover M. Martinez' post-divorce business records, because the Court did not vacate Chief Judge Molzen's protective order precluding P. Martinez from discovering those records until after discovery had closed. See Memorandum Opinion and Order at 6-8, filed March 28, 2011 (Doc. 139); Memorandum Opinion and Order Overruling Most Objections, filed August 12, 2011 (Doc. 164)("Aug. 12 Order").

P. Martinez petitioned for a writ of mandamus regarding the Aug. 12 Order. See Petition for Writ of Mandamus to the Tenth Circuit United States Court of Appeals for the District of New Mexico, filed August 26, 2011, No. CIV. 11-2174 (10th Cir. Doc. 01018701224)("Petition"). In the Petition, P. Martinez stated that the Aug. 12 Order "would exclude all relevant discovery surrounding of all kinds for all property, and eliminate discovery

for the pre-divorce dates that would be necessary to establish my claims." Petition ¶ 7, at 23-24.[3]

P. Martinez also asserts that the Aug. 12 Order "holds the fatality of a dismissal with prejudice."

Petition ¶ 45, at 34. On September 2, 2011, the Tenth Circuit denied P. Martinez' Petition. See

Order, filed September 2, 2011 (Doc. 167).

On November 10, 2011, Chief Judge Molzen issued an order in which she required the

parties to present evidence and brief certain legal issues relevant to the scope of discovery and

law governing this matter. See Order Denying Motion for Stay and Requiring Briefing of

Preliminary Issues, filed November 10, 2011 (Doc. 196)("Nov. 10 Order"). Specifically, Chief

Judge Molzen ordered the parties to brief the following issues:

> (1) did the state-court's February 2 and May 4, 1998 Orders legally change the
> parties' marital relationship, such that property obtained, purchased, or created by
> them after February 2 or May 9, 1998 is not considered community property? (2)
> even if P. Martinez can prove that M. Martinez's two businesses were created
> before the marriage was dissolve and were never divided, does § 37-1-4 bar P.
> Martinez's suit for partition of Albuquerque Commercial Realty and Albuquerque
> Realty and the $14,175 paid for child support between March 1998 and February
> 2001 because those assets are personal, as opposed to real, property? and (3)
> assuming, without deciding that M. Martinez fraudulently hid the purchase of the
> real properties from P. Martinez until a later date when she discovered that they
> may have been purchased for him during their marriage with community funds
> through "strawmen," was his behavior tantamount to an "ouster" such that the
> four-year statute of limitations should be applied from the date P. Martinez
> discovered the alleged fraud?

Nov. 10 Order at 10. Additionally, Chief Judge Molzen took judicial notice of P. Martinez'

statements to the Tenth Circuit that the Aug. 12 Order "'holds the fatality of a dismissal with

prejudice'" and precludes P. Martinez from prosecuting her case in its entirety. Nov. 10 Order at

11 (quoting Petition ¶ 7, at 23-24). Chief Judge Molzen noted that P. Martinez' inability to

---

[3] The Petition contains two sets of page numbers, those which P. Martinez included, in the bottom-center of the pages, and those which were attached upon the filing of the Petition with the Tenth Circuit, in the upper-right-hand corner of the pages. The Court's citations are to the page numbers attached when the Petition was filed with the Tenth Circuit and are located in the upper-right-hand corner of the document.

conduct discovery was not a "sanction" as P. Martinez contended, but, rather, P. Martinez "waived her right to discovery by failing to timely conduct it."   Nov. 10 Order at 11.   Chief Judge Molzen stated that, if P. Martinez' representations to the Tenth Circuit are true in that she cannot prosecute this case without the discovery she failed to conduct, the Court should dismiss her claims.  See Nov. 10 Order at 11.  Chief Judge Molzen ordered P. Martinez to

> show cause in writing, why, based on her statements made to the Tenth Circuit Court of Appeals, all of her claims should not be dismissed because she does not have, and cannot obtain, sufficient evidence to establish that the real properties and businesses that are the subject of this lawsuit were purchased or created with community funds during the parties' marriage or that Latta and M. Martinez are liable for the tort of malicious prosecution.

Nov. 10 Order at 12.

Chief Judge Molzen set a deadline of December 5, 2011, for the parties to file the ordered briefs.  See Nov. 10 Order at 12.  On December 5, 2011, P. Martinez requested additional time to file the ordered briefing, because she was undergoing eye surgery, and her doctor advised against her reading and "resum[ing] activities involving computer and legal work."   Response to Deadline Date Imposition of Doc. 196 at 1, filed December 5, 2011 (Doc. 204).  The Court granted P. Martinez until January 30, 2012, to file the briefing that Chief Judge Molzen ordered, as P. Martinez' doctor represented that she should be recovered by "mid or end of January." Response to Deadline Date Imposition of Doc. 196 at 3.  See Amended Memorandum Opinion and Order at 9-10, filed December 30, 2011 (Doc. 213).   On January 30, 2012, P. Martinez informed the Court and the parties that she had not recovered from her eye surgery and was unable to resume participation in this case.  See Affidavit - Notice of Medical Condition, filed January 30, 2012 (Doc. 215).  P. Martinez did not file a response to the Nov. 10 Order before January 30, 2012.

In March, 2012, P. Martinez notified the Court and the parties that she had experienced complications from her eye surgery and was unable, at that time, to participate in this case.  See Medical Notice/Verified Affidavit, filed March 21, 2012 (Doc. 217).   Chief Judge Molzen ordered P. Martinez to file affidavits from her treating physicians attesting to her eye conditions and noted that, despite P. Martinez' professed inability to litigate this matter, she had filed extensive pleadings from December, 2011.  See Order Requiring Filing of Medical Affidavits, filed March 29, 2012 (Doc. 219).  P. Martinez did not file affidavits from her treating physicians with the Court, but filed numerous other briefs, including an Objection to Doc 219 -- Order Requiring Filing of Medical Affidavits, filed April 11, 2012 (Doc. 225), and a Verified Affidavit of Patricia Martinez Regarding Genuine Disputes Regarding Claims and Defenses in Partitioning and Malicious Abuse of Process Claims on April 11, 2012 (Doc. 224)("Verified Aff."), which seems to respond to the Nov. 10 Order ordering her to submit briefing on relevant legal issues.

In the Verified Aff., P. Martinez makes factual assertions, which she characterizes as "genuine disputes."  Presumably, these are factual assertions respond to Chief Judge Molzen's requested briefing in the Nov. 10 Order, as P. Martinez disputes when M. Martinez acquired ownership of the properties at issue.  P. Martinez maintains, however, that the Verified Aff. is not an "answer or respon[se]" to the Nov. 10 Order.  Motion to Strike at 13.

With the Verified Aff., P. Martinez attaches a page from M. Martinez' 1997 IRS Form 4562, in which M. Martinez lists a deduction of $200,000.00 for property acquired for business use.  See Verified Aff. at 5 (M. Martinez' 1997 IRS Form 4562).  P. Martinez asserts that M. Martinez took the same deduction in 1998, but declined to explain how he qualified for that deduction when asked at a deposition.  See Verified Aff. ¶ 1(21)(b)(v), at 3.  P. Martinez asserts that these deductions evidence that M. Martinez owned the property at 8501 Candelaria Avenue

NE, Albuquerque, New Mexico before they divorced.  See Verified Aff. ¶ 1(21)(b)(ii) at 2.  P. Martinez asserts that Paul Weist, M. Martinez former employer, his wife, and Jean Smith, whom P. Martinez believes is M. Martinez' girlfriend, acquired the Candelaria property as "straw figures holding the property in the name of Michael Martinez," in 1996.    Verified Aff. ¶ 1(21)(b)(iii), at  2.  She also asserts that neither Smith nor P. Weist conducted business at the Candelaria property.  See Verified Aff. ¶ 1(21)(b)(iv), at 203.  P. Martinez also attaches a ledger sheet, which she asserts evidences that M. Martinez paid the Weists for the purchase of the Candelaria property and made monthly payments to the escrow account for the Candelaria property.  See Verified Aff. ¶ 1(21)(b)(vi), 18.  It appears as though the oldest entry on this ledger is dated February 28, 1998, although the exact month is nearly illegible.  See Verified Aff. at 18.

Regarding her malicious-abuse-of-process claims, P. Martinez asserts that Latta persisted in seeking a declaratory judgment in a case that was closed and cites to a transcript of proceedings before the Hearing Officer James Loughren.  See Verified Aff. ¶ 1(21)(b)(vii), at 4; Transcript of Proceedings at 19:11-25 (taken March 13, 2008)(Latta, Loughren), filed April 11, 2012 (Doc. 224)("Mar. 18, 2008 Tr.").

On May 28, 2012, the Court overruled P. Martinez' objections to the Order Requiring Filing of Medical Affidavits and denied P. Martinez' request for a stay.  See Memorandum Opinion and Order Denying Reconsideration and Denying Stay, filed May 28, 2012 (Doc. 233)("May 28 Order").  The Court also ruled that "P. Martinez may not file, and the Court will not consider, any briefs regarding the discovery issues set forth in the November 10, 2011 Order that were due on January 30, 2012."  May 28 Order at 13-14.  Shortly thereafter, Chief Judge Molzen issued the R&R.  Chief Judge Molzen stated that the Verified Aff. does "not directly

address any of the issues I directed P. Martinez to brief the November 10, 2011 Order," and, even if it did, it is untimely, and Chief Judge Molzen noted that the Court has stated it will not consider untimely responses to the Nov. 10 Order.  R&R at 2 n.2.  Chief Judge Molzen warned P. Martinez that the failure to timely object to the R&R would waive P. Martinez' rights to appellate review of the R&R.  See R&R at 1 n.1.

The primary question to be decided in this opinion is whether the Court should adopt Chief Judge Molzen's recommendation to dismiss P. Martinez' Amended Complaint and this entire matter, with prejudice.  See R&R at 4, 23-33.  In her R&R, Judge Molzen set forth thirty-two undisputed facts consistent with P. Martinez' allegations.  See R&R ¶¶ 1-32, at 5-13.  Chief Judge Molzen thoroughly analyzed applicable New Mexico law in relation to the claims and undisputed facts. See R&R at 13-20.  Chief Judge Molzen concluded that the undisputed facts demonstrated that M. Martinez was entitled to dismissal of P. Martinez' claims for division of allegedly undivided community real property under New Mexico law and that he was also entitled to dismissal of her claims for division of undivided personal community property under New Mexico law.  See R&R at 4.  Thus, Chief Judge Molzen recommends that the Court dismiss those claims with prejudice.

In addition, because Chief Judge Molzen found P. Martinez refused to brief the issue whether she could establish malicious-abuse-of-process claims without further discovery, Chief Judge Molzen recommends that the Court dismiss those claims, because of P. Martinez' refusals to obey court orders.  See R&R at 4-5.  Alternatively, Chief Judge Molzen recommends that the

Court dismiss the malicious-abuse-of-process claims on the merits, or because they are time-barred.  See R&R at 27-33.[4]

About a week after Chief Judge Molzen entered the R&R, Martinez filed the Motion to Strike the R&R and the Motion to Extend, in which she requested additional time to object to the R&R.  Chief Judge Molzen denied the Motion to Strike, finding it frivolous and unsupported by law, but granted P. Martinez an extension until July 17, 2012, to object to the R&R, although Chief Judge Molzen observed it was difficult to see why P. Martinez needed more time given that she already challenged the R&R with a twenty-seven page Motion to Strike.  See Order, filed July 10, 2012 (Doc. 242).  P. Martinez then filed her Partial Obj. on July 13, 2012.  The Partial Obj. and the Motion to Strike and Motion to Extend -- to the extent the latter two may be considered objections to the R&R -- are the only objections P. Martinez filed to the R&R in accordance with the July 17, 2012 deadline.  In the Partial Obj., P. Martinez contends that Chief Judge Molzen did not grant her enough time to respond to the R&R.  See Partial Obj. at 6.

P. Martinez objects, throughout her pleadings, that Chief Judge Molzen lacked authority to issue the R&R.  P. Martinez contends that her "Primary Objection" to the R&R is that Chief Judge Molzen and the Court "have no authority to make findings and rule on the merits of my case," because P. Martinez has demanded a trial by jury.  Partial Obj. at 7.  Martinez complains that Chief Judge Molzen had no authority to rule on the merits of the case "when a jury has been evoked."  Motion to Strike at 6.  See Motion to Strike at 2; Motion to Extend at 1; Partial Obj. at

---

[4] Chief Judge Molzen also granted M. Martinez' Motion for Extension of Time to Provide Relevant Records and Protective Order or in the Alternative to Deem Plaintiff's Discovery Requests as Overly Burdensome, filed September 26, 2011 (Doc. 173), and denied P. Martinez' Motion to Compel, filed October 11, 2011 (Doc. 180).  See R&R at 33.  In this Memorandum and Opinion and Order, the Court addresses only the recommendation to dismiss Martinez' Amended Complaint and this matter with prejudice, and P. Martinez' objection that she was not granted sufficient time to respond to the R&R.

2; 2nd Obj. at 2.  P. Martinez asserts that Chief Judge Molzen "as a bench magistrate has no authority to go to the merits of this case."  2nd Obj. at 20.  P. Martinez asserts that the R&R violates her right to due process, guaranteed under the Fourteenth Amendment, because Chief Judge Molzen had rendered an opinion based upon M. Martinez', and not P. Martinez', brief.  See Motion to Strike at 3-4; 2nd Obj. at 25.  P. Martinez also contends that she has not been allowed to conduct discovery.  See 2nd Obj. at 2; 2nd Verified Aff. at 5, 13.  P. Martinez further asserts that she was "never given notice that a summary judgment would issue and . . . this is unfair."  Reply at 2.  P. Martinez contends that Chief Judge Molzen's Nov. 10 Order was inappropriate, and that Chief Judge Molzen should not have required her to brief "13 years of impeachment evidence . . . and offer a five page brief to cover all of the issues."  2nd Obj. at 3.  P. Martinez asserts that Chief Judge Molzen has "become the Defendants' advocate" and improperly made "findings for them in defenses they have not formerly raised," to P. Martinez' prejudice.  Motion to Strike at 7-9.  See Partial Obj. at 3; 2nd Obj. at 11.   The majority of the Motion to Strike accuses Chief Judge Molzen of making "scandalous," "false," "twisted," "distorted," and "maligning" statements.  Motion to Strike at 4-9, 11-12.  See Motion to Extend at 1.

    P. Martinez additionally objects to some of Chief Judge Molzen's factual and legal findings in the R&R.  P. Martinez asserts that Chief Judge Molzen's findings of undisputed facts in the R&R are based upon P. Martinez' statements "taken out of context" and are "filled with contradictions, misstatements and omissions."  Motion to Strike at 4-5.  P. Martinez also informs the Court that her Verified Aff. "was not filed to answer or respond to [Chief Judge Molzen's] November, 2011 Discovery Order, but just, as a protection for herself from this kind of potential ambush."  Motion to Strike at 13.   P. Martinez asserts, nonetheless, that the Verified Aff.

demonstrates that M. Martinez owned the Candelaria property in 1997, and, therefore, it was community property, regardless whether the divorce was final in 1998 or 1999.  See Motion to Strike at 13.  P. Martinez asserts that the 1997 IRS Form 4562, which she included with her Verified Aff., demonstrates that M. Martinez acquired the Candelaria property in 1997, and that he conducted realty business in 1997, earning income to which P. Martinez asserts she is entitled. See 2nd Obj. at 6, 9; 2nd Verified Aff. at 7-9 (citing Amended Complaint ¶¶ 9-10, at 36; R&R ¶ 9, at 7-8).  P. Martinez contends that M. Martinez has previously admitted that he would not "'amortize and depreciate a building that'" he did not own, and, therefore, because he listed a $200,000.00 depreciation on the 1997 IRS Form 4562, he owned the Candelaria property at that time.  2nd Verified Aff. at 11 (quoting Deposition of Michael D. Martinez at 11:1-4 (taken May 19, 2005), filed July 24, 2012 (Doc. 247 Ex. M).  P. Martinez asserts that M. Martinez fraudulently concealed his ownership of the Candelaria property and that his 1997 IRS Form 4562 is evidence of this fraud.  See 2nd Obj. at 11.  P. Martinez asserts that her information in the Verified Aff. regarding the Candelaria property controverts Chief Judge Molzen's statement that M. Martinez "improved a suite of the Candelaria office building also beginning in March 1998, ultimately using it to house Albuquerque Commercial Realty's offices."  R&R ¶ 9, at 7-8. See Motion to Strike at 14; Reply at 10.  P. Martinez asserts that she has established that M. Martinez owned the Candelaria property before the divorce was final.  See Reply at 10.

P. Martinez asserts that M. Martinez had a fiduciary duty to disclose "information about the existence of 'community property' and the necessary facts to determine its value until entry of the divorce decree and division of the community property by the court."  Reply at 5.  P. Martinez contends that Chief Judge Molzen "misapplied the law regarding partitioning of

undisclosed business property where there is a fiduciary duty to disclose at the time of the divorce."  Motion to Strike at 14-15.

P. Martinez also asserts that the state court did not pay "any attention" to her assertion of an interest in the Candelaria property and a property on 4908 Alberta Lane NW, Albuquerque. See 2nd Obj. at 11; Amended Complaint ¶ 39, at 46.  P. Martinez asserts that the state court never decided "on the merits" whether "the Candalaria [sic] property or any properties" were community property.  2nd Obj. at 13-14.  P. Martinez contends that the state judge did not review her exhibits evidencing that M. Martinez had hidden assets from the state court.  See 2nd Obj. at 14; Reply at 3-4.  P. Martinez asserts, therefore, that the state court's findings regarding the Candelaria property, Alberta property, and a home at 6700 Silkwood Avenue NW, Albuquerque, are not final decisions on the merits subject to res judicata.  See 2nd Obj. at 14-15. P. Martinez asserts that her Verified Aff. "refutes and disputes J. Molzen's unfounded statements" in the R&R.  2nd Obj. at 12.

P. Martinez further contends that her divorce from M. Martinez was not final in February, 1998.  P. Martinez asserts that, because she filed a complaint alleging fraud in New Mexico state court on May 31, 2000, and M. Martinez did not object that the complaint was barred under New Mexico's one-year time period for setting aside a divorce based on fraud, M. Martinez' failure to raise a statute-of-limitations defense evidences that the divorce was final on June 2, 1999.  See Motion to Strike at 12.  P. Martinez so asserts, notwithstanding that Honorable Anne Kass, New Mexico State District Court Judge, entered a Minute Order on February 6, 1998 stating: "The parties are divorced."  Minute Order, filed in state court February 6, 1998, filed in Federal Court December 5, 2011 (Doc. 205-1)("Divorce Minute Order").  See 2nd Verified Aff. at 7.  P. Martinez asserts, alternatively, that May 4, 1998, is the date the divorce was final, because on

this date Judge Kass entered her findings of fact and conclusion of law, or, the divorce was final

on June 2, 1999, when the state court entered a final decree.  See 2nd Verified Aff. at 7 (citing

state Court's Findings of Fact and Conclusions of Law, filed in state court May 4, 1998, filed in

federal court July 24, 201 (Doc. 247); 2nd Verified Aff. at 6-7; 2nd Obj. at 12; Final Decree of

Dissolution of Marriage and Judgment, filed in state court June 2, 1999, filed in federal court

July 24, 2012 (Doc. 247 Ex. C)).  P. Martinez asserts that the Divorce Minute Order is not the

date the divorce was final, because the Divorce Minute Order allowed either party to appeal, and

P. Martinez appealed the Divorce Minute Order; P. Martinez contends, therefore, that the divorce

was not final until after Judge Kass issued her Findings of Fact and Conclusions of Law on May

4, 1998.  See 2nd Obj. at 12.  P. Martinez asserts that, because the divorce was not finalized until

May, 1998, M. Martinez' business and income therefrom are community property.  See 2nd Obj.

at 13.  P. Martinez contends that she has refuted Chief Judge Molzen's findings regarding the

date the divorce was final.  See Reply at 6.

Regarding P. Martinez' malicious-abuse-of-process claims, P. Martinez asserts that Chief

Judge Molzen has "erred regarding statute of limitations in the area of malicious abuse of

process."  Motion to Strike at 14-15.  P. Martinez also asserts that the statute of limitations for

her malicious-abuse-of-process claim has not run, if the Court adopts Chief Judge Molzen's

finding of a three-year limitation period for her allegations besides "the 1st charge of malicious

abuse of process," because "each occurrence is a new count in that claim and the time accrues at

the time it was performed."  2nd Obj. at 18-19.  P. Martinez also asserts that she has stated a

meritorious claim for malicious abuse of process against Latta, because P. Martinez accurately

alleged that Latta falsely told a state court judge that P. Martinez was sanctioned in her previous

federal filings, when, P. Martinez asserts, her attorney was the one sanctioned for failing to

provide case law in her previous federal suit.  See Motion to Strike at 9-11.  P. Martinez contends, therefore, that her claim under Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, was not "always . . . frivolous," as Chief Judge Molzen states.[5]  Motion to Strike at 11.

P. Martinez also asserts that Chief Judge Molzen mischaracterized her statements to the Tenth Circuit, and that P. Martinez intended to state that, had the Court not allowed P. Martinez to discover post-divorce business records, she would have been precluded her from obtaining the discovery she needs to prosecute her claims.  See Motion to Strike at 27 (citing Petition ¶ 7, at 23-24).  P. Martinez asserts that she did not mean that, without the discovery she failed to conduct, her case would be "totally untriable," but rather, she meant that her case was "extremely handicapped and prejudiced and contrary to law."  Motion to Strike at 28.

P. Martinez requests that the Court certify for the Supreme Court of New Mexico when the Martinezes' divorce "became final by law."  Motion to Certify at 1.  P. Martinez asserts that the parties' divorce was not a "bifurcated divorce" under New Mexico law.  Motion to Certify at 1.  M. Martinez and Latta assert that M. Martinez and P. Martinez were divorced as of February 6, 1998, and they note that P. Martinez did not challenge Judge Kass' decree that the parties were divorced at that time.  See Defendants' Joint Reply to Plaintiff's Motion to Certify Decree Divorce Dates - NM Supreme Court Document No. 310, filed November 26, 2012 (Doc. 315)("MTC Response").  M. Martinez and Latta contend that the state district court orders regarding when M. Martinez and P. Martinez were divorced are "clear," and that P. Martinez

---

[5] In 2002, P. Martinez brought suit in federal court against M. Martinez, P. Weist, Smith, Sun Star Associates "and others yet unnamed" alleging RICO violations, among other claims. Martinez v. Martinez, 207 F. Supp. 2d 1303, 1303 (D.N.M. 2002)(Black, J.)

cannot now challenge the date of the divorce, because she has not challenged the date of the

divorce before Chief Judge Molzen issued the Nov. 10 Order.  MTC Response at 2.

## LAW REGARDING PROPOSED FINDINGS AND RECOMMENDATIONS AND OBJECTIONS THERETO

District courts may refer dispositive motions to a magistrate judge for a recommended

disposition.  See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the

required proceedings when assigned, without the parties' consent, to hear a pretrial matter

dispositive of a claim or defense . . . .").  Rule 72(b)(2) governs objections: "Within 14 days after

being served with a copy of the recommended disposition, a party may serve and file specific

written objections to the proposed findings and recommendations."  Finally, when resolving

objections to a magistrate judge's proposal, "the district judge must determine de novo any part

of the magistrate judge's disposition that has been properly objected to.  The district judge may

accept, reject, or modify the recommended disposition; receive further evidence; or return the

matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  Similarly, 28 U.S.C.

§ 636 provides:

> A judge of the court shall make a de novo determination of those portions of the
> report or specified proposed findings or recommendations to which objection is
> made. A judge of the court may accept, reject, or modify, in whole or in part, the
> findings or recommendations made by the magistrate judge.  The judge may also
> receive further evidence or recommit the matter to the magistrate judge with
> instructions.

28 U.S.C. § 636(b)(1)(C).

"The filing of objections to a magistrate's report enables the district judge to focus

attention on those issues -- factual and legal -- that are at the heart of the parties' dispute."

United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements,

and Contents, 73 F.3d 1057, 1059 (10th Cir. 1996)("One Parcel")(quoting Thomas v. Arn, 474

U.S. 140, 147 (1985)).  As the Tenth Circuit has noted, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency." One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir. 1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit held "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'" One Parcel, 73 F.3d at 1059 (citations omitted).  In addition to requiring specificity in objections, the Tenth Circuit has stated that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit stated that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate." Pevehouse v. Scibana, 229 F. App'x 795, 796 (10th Cir. 2007)(unpublished).[6]

_____

[6] Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . . However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United

In <u>One Parcel</u>, the Tenth Circuit, in accord with other courts of appeals, expanded the

waiver rule to cover objections that are timely but too general.  <u>See</u> <u>One Parcel</u>, 73 F.3d at 1060.

The Supreme Court of the United States -- in the course of approving the United States Court of

Appeals for the Sixth Circuit's use of the waiver rule -- noted:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.  The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report.  <u>See</u> S. Rep. No. 94-625, pp. 9-10 (1976) (hereafter Senate Report); H. R. Rep. No. 94-1609, p. 11 (1976), U.S. Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.  Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates.  Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or <u>ruling</u> on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time."  <u>See</u> Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975) (emphasis added) (hereafter Senate Hearings).  The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice.  <u>See</u> <u>id.</u>, at 11 ("If any objections come in, . . . I review [the record] and decide it.  If no objections come in, I merely sign the magistrate's order.").  The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report.  <u>See</u> Senate Hearings, at 35, 37.  Congress

<hr>

<u>States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that <u>Pevehouse v.</u>
<u>Scibana</u> has persuasive value with respect to a material issue, and will assist the Court in its
disposition of this Memorandum Opinion and Order.

apparently assumed, therefore, that any party who was dissatisfied for any reason
with the magistrate's report would file objections, and those objections would
trigger district court review.  There is no indication that Congress, in enacting §
636(b)(1)(C), intended to require a district judge to review a magistrate's report to
which no objections are filed.  It did not preclude treating the failure to object as a
procedural default, waiving the right to further consideration of any sort.  We thus
find nothing in the statute or the legislative history that convinces us that
Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original)(footnotes omitted).

The Tenth Circuit also noted, "however, that '[t]he waiver rule as a procedural bar need

not be applied when the interests of justice so dictate.'"  One Parcel, 73 F.3d at 1060 (quoting

Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)("We join those circuits that have

declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's

order does not apprise the pro se litigant of the consequences of a failure to object to findings and

recommendations." (citations omitted)).  Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while

"[a]ny party that desires plenary consideration by the Article III judge of any issue need only

ask," a failure to object "does not preclude further review by the district judge, sua sponte or at

the request of a party, under a de novo or any other standard").  In One Parcel, the Tenth Circuit

noted that the district judge had decided sua sponte to conduct a de novo review despite the lack

of specificity in the objections, but the Tenth Circuit held that it would deem the issues waived

on appeal because it would advance the interests underlying the waiver rule.  See 73 F.3d at

1060-61 (citing cases from other circuits where district courts elected to address merits despite

potential application of waiver rule, but circuit courts opted to enforce waiver rule).

Where a party files timely and specific objections to the magistrate judge's proposed

findings and recommendation, "on [] dispositive motions, the statute calls for a *de novo*

determination, not a *de novo* hearing."  United States v. Raddatz, 447 U.S. 667, 674 (1980).

"[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations."   United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)).  The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate's report.   In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).   "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . .  the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing."   Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the magistrate's report "based upon conflicting evidence or testimony."   Gee v. Estes, 829 F.2d at 1009.   On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable deference to the magistrate's order."   Ocelot Oil Corp. v. Sparro Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).   A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record."   Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir. 2000).   "[T]he district court is presumed to know that de novo review is required. . . . Consequently, a brief order expressly stating the court conducted de novo review is sufficient."   Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).   "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."

Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit has previously held that a district court properly conducted a de novo review of a party's evidentiary objections when the district court's "terse" order contained one sentence for each of the party's "substantive claims" and did "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion."  Garcia v. City of Albuquerque, 232 F.3d at 766.  The Tenth Circuit has explained that brief district court orders that "merely repeat the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducted a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis.  We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1).  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the magistrate judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and  United States v. Raddatz require).

Where no party objects to the magistrate judge's proposed findings and recommended disposition, the Court has in the past, as a matter of course and in the interests of justice,

reviewed the magistrate judge's recommendations.  In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. Feb. 27, 2013)(Browning, J.), the plaintiff failed to respond to the magistrate judge's proposed findings and recommended disposition, and thus waived his right to appeal the recommendations, but the Court nevertheless conducted a review. The Court generally does not, however, "review the PF&RD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  The Court, thus, does not determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the proposed findings and recommended disposition where "[t]he Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. Feb. 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations of the Honorable Stephan M. Vidmar, United States Magistrate Judge, to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. Feb. 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").  This review, which is deferential to the magistrate judge's work when there is no objection, nonetheless provides some review in the interest of justice, and

seems more consistent with the waiver rule's intent than no review at all or a full-fledged review. Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is going at the bottom of the order adopting the magistrate judge's proposed findings and recommendations.

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A

party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the

factfinder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. at 550-55; Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## LAW REGARDING SUA SPONTE SUMMARY JUDGMENT

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986).  Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment without being so moved:

> **(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:
>
> > **(1)** grant summary judgment for a nonmovant;
> >
> > **(2)** grant the motion on grounds not raised by a party; or
> >
> > **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.

Fed. R. Civ. P. 56(f).  The United States Court of Appeals for the Tenth Circuit has explained that a district court granting summary judgment sua sponte must give "the losing party an adequate opportunity to oppose summary judgment." Blakely v. USAA Cas. Ins. Co., 633 F.3d 944, 949 (10th Cir. 2011).  "[C]ourt[s] may grant summary judgment sua sponte so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 892 (10th Cir. 1997).  The Tenth Circuit has held that a plaintiff had sufficient notice to come forward with its evidence when a defendant informed the plaintiff that it sought judgment as a matter of law on each of the plaintiff's claims, the plaintiff stated that several relevant facts were "incontestable," and the plaintiff had an opportunity to submit a response. Roscoe v. Fed. Home Loan Mortg. Ass'n, 201 F.3d 449, 1999 WL 1188829 at *6 (10th Cir. Dec. 10, 1999)(unpublished).

# THE ROOKER-FELDMAN DOCTRINE[7]

The Rooker-Feldman doctrine embodies the principle that federal district courts may not serve as courts of appeal for state courts.  See Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507, 2012 WL 1132374, at *19 (D.N.M. 2012)(Browning, J.).   Review of state court judgments is within the Supreme Court of the United States' exclusive jurisdiction.  See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Bolden v. City of Topeka, 441 F.3d 1129, 1140 (10th Cir. 2006)  A district court has no jurisdiction over a matter in which: "(i) a state-court loser; (ii) is asking a federal district court; (iii) to review the correctness of a judgment rendered by a state court; and (iv) [the state court] judgment was rendered before the commencement of the federal proceeding."   Valdez v. Metro. Prop. & Cas. Ins. Co., 2012 WL 1132374, at *38 (citing Guttman v. Khalsa, 446 F.3d 1027, 1032 (10th Cir. 2006)).

Although Rooker-Feldman, with its four elements, appears to be a straight-forward principle, the application of the doctrine can be complex.  For example, a challenge to a state court judgment is "barred even if the claim forming the basis of the challenge was not raised in the state proceedings," yet "Rooker-Feldman does not bar a federal-court suit raising a claim previously decided by a state court unless the federal suit actually seeks to overturn, as opposed to simply contradict, the state court judgment."  Bolden v. City of Topeka, 441 F.3d at 1141, 1144.  The Tenth Circuit has reconciled these principles by concluding that the scope of Rooker-Feldman is "confined to the cases of the kind . . . brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings

---

[7] The Rooker-Feldman doctrine derives from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The Tenth Circuit has recognized that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments."  Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1142-43 (10th Cir. 2006)(citations omitted).

commenced and inviting district court review and rejection of those judgments."  Bolden v. City

of Topeka, 441 F.3d at 1142-43 (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S.

280, 282 (2005)).  Thus, an essential characteristic of a suit barred under Rooker-Feldman is that

the "loser in state court invites a federal district court to overturn state court judgments."  Bolden

v. City of Topeka, 441 F.3d at 1143-44.  Conversely, Rooker-Feldman would not bar a plaintiff

whose "claims do not rest on any allegation concerning the state court proceedings or judgment."

Bolden v. City of Topeka, 441 F.3d at 1145.[8] Thus, where a plaintiff does not put the state court

judgment itself at issue, the plaintiff may bring a federal suit "regarding the same subject matter,

or even the same claims, as those presented in the state court action."  Bolden v. City of Topeka,

441 F.3d at 1139.[9]

　　　　The distinction between claims that Rooker-Feldman bars, and those that allege the same

cause of action but are not barred, is best understood through the Tenth Circuit's application of

the doctrine.  The Tenth Circuit provided an example of this distinction in a hypothetical child-

---

[8] The Court has previously discussed the relation of Rooker-Feldman and Younger v. Harris, 401 U.S. 37 (1971).  See F.D.I.C. v. Harger, 778 F. Supp. 2d 1123, 1135 n.6 (D.N.M. 2011)(Browning, J.).   In brief, whereas Rooker-Feldman bars a federal district court from reviewing state court judgments which are final, Younger v. Harris "prevents the federal district court from interfering in an ongoing state proceeding."  F.D.I.C. v. Harger, 778 F. Supp. 2d at 1135, n.6.  Thus, a plaintiff may not request a federal district court to interfere before a state court judgment is final or pray for relief from a state court judgment once it becomes final.

[9] The doctrine of res judicata may bar a complaint that Rooker-Feldman does not. Rooker-Feldman is related to the principle that federal courts possess only original jurisdiction, whereas res judicata can preclude a suit which Rooker-Feldman does not.  See Rooker v. Fidelity Trust Co., 263 U.S. at 416 ("Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the [state court] judgment. . . .  To do so would be an exercise of appellate jurisdiction.  The jurisdiction possessed by the [federal] District Courts is strictly original."); Bolden v. City of Topeka, 441 F.3d at 1145 (discussing that, where Rooker-Feldman is not a bar, "a myriad of doctrines, including res judicata, would almost certainly bar the suit" which was brought after a state court judgment adverse to the plaintiff).  See also Campbell v. City of Spencer, 682 F.3d 1278, 1283 (10th Cir. 2012)("Rooker-Feldman does not . . . override or supplant preclusion doctrine."  (citing Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. at 282)).

custody case in Bolden v. City of Topeka.  See 441 F.3d at 1129.  The Tenth Circuit explained that a father, who lost custody of his child in a state court judgment, could not then bring suit in federal court alleging that the state court judgment was invalid.  The father would be barred even if his claims in federal court were different from those in state court; were the father, perhaps, to argue that the state court judgment deprived him of due process or was contrary to federal law on other grounds, Rooker-Feldman would bar such an action.   Rooker-Feldman would not, however, bar the father from seeking custody of his child in federal court, so long as the father's complaint did not raise any allegations regarding the state court judgment specifically.  See 441 F.3d at 1145.

The Tenth Circuit in Bolden v. City of Topeka, ruled that a district court was wrong to bar a plaintiff's suit under Rooker-Feldman where the plaintiff "did not seek to overturn the state court judgment."  441 F.3d at 1138.  The City of Topeka notified the plaintiff in Bolden v. City of Topeka that several properties he owned failed to meet housing code regulations and thus would be demolished.  See 441 F.3d at 1131-32.  The plaintiff initially sought to enjoin the destruction of his buildings in state court, and the state court denied his request.  The plaintiff then filed suit in federal district court, once again seeking to enjoin the destruction of his buildings.  His federal suit did not address the validity of the state court judgment or argue that federal court should override, on any grounds, the state court judgment denying his requested injunction.  See 441 F.3d at 1132.  The district court dismissed his request for an injunction under Rooker-Feldman, but the Tenth Circuit found that the district court misapplied the doctrine.  See 441 F.3d at 1132, 1138.   The Tenth Circuit focused on the plaintiff's claims in federal court being "identical to what they would have been had there been no state court proceeding."  441 F.3d at 1138.  Because the plaintiff did not argue that the "judgment itself

inflicted an injury," Rooker-Feldman did not bar the plaintiff's claims alleging violations against the city's action of destroying his buildings.  441 F.3d at 1138, 1145.  Rooker-Feldman did not apply, because the plaintiff's claims "would be identical even had there been no state court judgment." 441 F.3d at 1145.

Similarly, the Tenth Circuit has endorsed the logic of Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995), wherein the United States Court of Appeals for the Seventh Circuit found that Rooker-Feldman does not apply to a party's claims that do not request relief from a state-court judgment.  See Read v. Klein, 1 F. App'x 866, 870 (10th Cir. 2001)(quoting Nesses v. Shepard, 68 F.3d at 1005).  In Nesses v. Shepard, the plaintiff suffered several losses in state court before suing the lawyers and judges involved in those state-court decisions in federal court. See 68 F.3d at 1004.  He "allege[d] a massive, tentacular conspiracy among the lawyers and the judges to engineer [his] defeat[s]" in the state court suits.  68 F.3d at 1004.  The federal district court dismissed the federal case for want of jurisdiction on the basis of the Rooker-Feldman doctrine.  See 68 F.3d at 1004.  On appeal, the Seventh Circuit held that Rooker-Feldman did not apply.  The Honorable Richard Posner, Circuit Judge for the United States Court of Appeals for the Seventh Circuit, explained:

> [The Rooker-Feldman doctrine] is not that broad. Were [a plaintiff is] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm.  Otherwise there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment.

Nesses v. Shepard, 68 F.3d at 1005 (internal citation omitted).  The Seventh Circuit distinguished the case from one Rooker-Feldman bars by pointing out that, although the plaintiff "was in a sense attacking the ruling by the state court," by asserting that he lost in state-court because the "lawyers and the judges [engineered the plaintiff's] defeat," the plaintiff was not "seeking to undo a remedial order of some sort."  68 F.3d at 1005.

Conversely, the Tenth Circuit has barred a plaintiff's due-process claims against a city, under Rooker-Feldman, where the alleged violations occurred because of a state court's order. See Campbell v. City of Spencer, 682 F.3d, 1278, 1284 (10th Cir. 2012).  In Campbell v. City of Spencer, a plaintiff filed suit in federal court, alleging, among other claims, that the City of Spencer violated her due-process and Eighth Amendment rights by seizing her horses and imposing an "excessive fine" pursuant to a state court order.  682 F.3d at 1280.  The federal court dismissed her due-process allegations, finding that Rooker-Feldman barred the claims.  682 F.3d at 1280.  The Tenth Circuit agreed.  Because the plaintiff's "deprivation of property . . . allegedly without just compensation or due process was the deprivation ordered by the state court . . . [her] claim [had] merit only if the state court forfeiture order was unlawful on the record before the court."  682 F.3d at 1284.  The plaintiff's suit was a "direct attack on the state court's judgment because an element of [her] claim [was] that the judgment was wrongful."  682 F.3d at 1284.  "The alleged constitutional wrong was the content of the judgment . . . not . . . some act by a defendant that led to the judgment."  682 F.3d at 1285.  Thus, Rooker-Feldman barred the plaintiff's claims because the harm the plaintiff alleged would not have occurred but-for the state court judgment.

**LAW REGARDING THE FINALITY OF STATE COURT JUDGMENTS IN FEDERAL
COURT**

Res judicata and collateral estoppel are common-law doctrines of finality, which serve to relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and prevent inconsistent decisions.  See Allen v. McCurry, 449 U.S. 90, 94 (1980).  Res judicata precludes a party from re-litigating issues that were or could have been raised in a final judgment on the merits.  Collateral estoppel precludes re-litigation of a common issue of law or fact which was necessarily decided in a prior court's final judgment.  See Allen v. McCurry, 449 U.S. at 94. In determining whether a doctrine of finality applies, a decision from a state court has the same preclusive effect in federal court as the decision would have in a subsequent state court action. See Reed v. McKune, 298 F.3d at 949-50 (citing 28 U.S.C. § 1738 ("[The] judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States  . . . as they would by law or usage in the courts of such State . . . from which they are taken.")).   A district court in the Tenth Circuit applying res judicata or collateral estoppel to a decision from a state court must look to the laws of that state to determine the required elements for either doctrine to preclude a claim or issue brought in federal court.  See Reed v. McKune, 298 F.3d at 949.  Thus, if a state law in state court would preclude re-litigation of a claim or an issue of law or fact, the same claim or issue is precluded in federal court.  See Reed v. McKune, 298 F.3d at 949 (applying Kansas law to determine whether collateral estoppel precludes an issue of fact or law in federal court).

Under New Mexico law, res judicata, also known as claim preclusion, bars re-litigation of "the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits."  Deflon v. Sawyers, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577.  New Mexico law prescribes four elements for a party seeking to assert res judicata:

"(i) the same parties or parties in privity; (ii) the identity of capacity or character of persons for or against whom the claim is made; (iii) the same subject matter; and (iv) the same cause of action in both suits."  Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d 1278, 1285-86 (D.N.M. 2011)(Browning, J.)(citing Apodaca v. AAA Gas Co., 2003-NMCA-085, ¶ 75, 134 N.M. 77, 73 P.3d 215).  Res judicata is a broad bar, precluding a party from bringing any claims which were, or which could have been raised in a prior proceeding finally determined on the merits.  See Kirby v. Guardian Life Ins. Co., 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87. To determine whether a claim in a second suit is precluded under res judicata by a prior suit, New Mexico courts will look to: "(i) the relatedness of the facts in time, space origin, or motivation; (ii) whether, taken together, the facts form a convenient unit for trial purposes; and (iii) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage."  Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1285-86 (citing Bank of Santa Fe v. Marcy Plaza Assocs., 2002-NMCA-014, 131 N.M. 537, 40 P.3d 442).  Additionally, res judicata bars a claim only where a party had a "full and fair opportunity to litigate issues arising out of that claim."  Kirby v. Guardian Life Ins. Co., 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87.

### NEW MEXICO LAW REGARDING MALICIOUS ABUSE OF PROCESS

In New Mexico, the tort of malicious abuse of process is disfavored, because of "the potential chilling effect on the right of access to the courts."  Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 19, 142 N.M. 150, 164 P.3d 31 (citation omitted).  "New Mexico courts state that the tort of malicious abuse of process should be construed narrowly to protect the right of access to the courts."  Aragon v. San Jose Ditch Ass'n, No. CIV 10-0563 JB/RHS, 2011 WL 6013284, at *11 (D.N.M. Nov. 22, 2011)(Browning, J.)(citing Durham v. Guest, 2009-

NMSC-007, ¶¶ 26-27, 145 N.M. 694, 204 P.3d 19; Weststar Mortg. Corp. v. Jackson, 2003-NMSC-002, ¶¶ 3-4, 133 N.M. 114, 61 P.3d 823).   Malicious-abuse-of-process claims involve balancing "the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 14, 124 N.M. 512, 953 P.2d 277, overruled on other grounds by Durham v. Guest, 2009-NMSC-007, 145 N.M. 694, 204 P.3d 19.   "[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 16, 124 N.M. 512, 953 P.2d 277.

The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages.   See Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19.   An improper use of process may be shown by: (i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process.   See Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19.

The Supreme Court of New Mexico has defined probable cause in the malicious-abuse-of-process context as "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury." Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 13, 142 N.M. 150, 164 P.3d 31 (internal quotations marks omitted)(citations omitted).   "The lack of probable cause must be

manifest." Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 13, 142 N.M. 150, 164 P.3d 31 (citation omitted). Probable cause is to be judged on the facts as they appeared at the time; it is not to be judged on later-discovered facts. See Weststar Mortg. Corp. v. Jackson, 2003-NMSC-002, ¶ 16, 133 N.M. 114, 61 P.3d 823 ("Probable cause . . . is to be judged by facts as they appeared at the time, not by later-discovered facts.")(citing Restatement (Second) of Torts § 662 cmt. e). The existence of probable cause in the underlying proceeding is a question of law that the court must decide. See Weststar Mortg. Corp. v. Jackson, 2003-NMSC-002, ¶ 17, 133 N.M. 114, 61 P.3d 823  ("[T]he existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial judge.")(internal quotation marks omitted)(citations omitted).  A malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." DeVaney v. Thriftway Marketing Corp., 1998-NMSC-001, ¶ 27, 124 N.M. 512, 953 P.2d 277.

Lack of probable cause is not the only way to establish misuse of process; a plaintiff can also show misuse of process by pointing to "some irregularity or impropriety suggesting extortion, delay or harassment." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 28, 124 N.M. 512, 953 P.2d 277.  A plaintiff may prove misuse of process through procedural irregularity -- such as misuse of discovery, subpoenas, and attachments -- or an act that otherwise indicates wrongful use of proceedings -- such as an extortion attempt. See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 28, 124 N.M. 512, 953 P.2d 277. Some examples of misuse of process include: (i) excessive execution on a judgment; (ii) attachment of property other than the property involved in the litigation; (iii) oppressive conduct in connection with an

arrest or seizure of property; and (iv) extortion of excessive sums of money.  See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 28, 124 N.M. 512, 953 P.2d 277.

"Under the requirement of a primary improper motive, it is insufficient that the malicious-abuse-of-process defendant acted with ill will or spite." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 29, 124 N.M. 512, 953 P.2d 277 (citing William Lloyd Prosser, W. Page Keeton, Dan B. Dobbs, Robert E. Keeton, & David G. Owen, Prosser and Keeton on the Law of Torts § 121, at 897 (5th ed. 1984)("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created."  (emphasis added)). "There must be a purpose to accomplish an illegitimate end." DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 29, 124 N.M. 512, 953 P.2d 277.  The Supreme Court of New Mexico has given several examples of improper purpose, including: (i) a litigant who pursues a claim knowing that the claim is meritless; (ii) a litigant who pursues a claim primarily to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (iii) a litigant who misuses the law primarily for harassment or delay; or (iv) a litigant who initiates proceedings primarily for the purpose of extortion.  See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 30, 124 N.M. 512, 953 P.2d 277.  An overt misuse of process may support an inference of an improper purpose, but a court may not infer from evidence of an improper purpose alone that there was not probable cause or that there was not a proper use of process.  See DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 30, 124 N.M. 512, 953 P.2d 277.

The Court has analyzed the New Mexico law on malicious abuse of process claims in previous cases.  In Aragon v. San Jose Ditch Ass'n, No. CIV 10-0563 JB/RHS, 2011 WL 6013284 (D.N.M. Nov. 22, 2011)(Browning, J.), the Court determined that the defendant, a ditch

association, failed to demonstrate a genuine issue of material fact whether plaintiffs' suit against the ditch association over water and ditch rights was a malicious abuse of process. The defendants asserted that the plaintiffs had relinquished their water and ditch rights by failing to timely pay their dues to the association. The Court explained that the plaintiffs had probable cause to file suit, because the plaintiffs could reasonably believe that the ditch association "was not authorized to determine that [the plaintiffs'] ditch rights had been abandoned because of [their] prolonged non-payment, absent notice of the ditch-right holder," because, under New Mexico law, a ditch-rights owner normally can relinquish rights to a ditch only by evidencing a "clear and unequivocal intention to do so," and not by non-payment of ditch dues. 2011 WL 6013284, at **18-19 (internal quotations omitted). In Mosley v. Titus, 762 F. Supp. 2d 1298 (D.N.M. 2010)(Browning, J.), the Court found that, where an individual made a pre-filing inquiry and reasonably interpreted New Mexico case law, the Court should grant summary judgment in favor of the defendant on a malicious-abuse-of-process claim. See 762 F. Supp. 2d at 1327, 1329. The Court found that an individual's pre-filing inquiry supported a reasonable belief that he had grounds to sue based on the law and facts before him. See Mosley v. Titus, 762 F. Supp. 2d at 1329.

## ANALYSIS

The Court has reviewed the R&R, and all of P. Martinez' objections thereto, de novo. P. Martinez has recognized that Chief Judge Molzen is recommending sua sponte summary judgment, appreciates fully what that means, and has been trying to cram all her evidence into motions and objections. See Motion to Strike at 12 ("J. Molzen does not dub her recommendation as a sua sponte summary judgment but it is unclear on what other basis it could

be . . . .").   The Court will deal with all of the evidence P. Martinez presents, regardless whether she presented her evidence in the proper form or in a timely motion.

The Court adopts the R&R in part, rejects the R&R in part, sustains P. Martinez' objections in part, and overrules her objections in part.  The Court determines that Chief Judge Molzen correctly concludes that the doctrine of res judicata precludes the Court from reviewing P. Martinez' claims to the Candelaria and Alberta properties, and the Court also concludes that the Rooker-Feldman doctrine precludes the Court from reviewing these claims.  The Court also agrees with Chief Judge Molzen' that P. Martinez has failed to demonstrate a genuine issue of fact whether the Silkwood property and a property at 3401 Blake Road, SW are community property, and the Court adopts Chief Judge Molzen's recommendation that the Court find that those properties are separate property as a matter of law.  The Court also adopts Chief Judge Molzen's recommendation that the Court find M. Martinez' businesses are not, as a matter of law, community property.  The Court does not, however, adopt Chief Judge Molzen's recommendation that the Court dismiss P. Martinez' claims on M. Martinez' businesses as time-barred under the relevant statute of limitations.

The Court adopts Chief Judge Molzen's recommendation that the Court reconsider its previous ruling regarding the relevant statute of limitations for P. Martinez' malicious-abuse-of-process claims, and the Court will allow M. Martinez to amend his answer to the Amended Complaint to state a statute-of-limitations defense to P. Martinez' allegations arising from M. Martinez' conduct that occurred three years before March 24, 2009.  The Court overrules P. Martinez' objections to this aspect of the R&R.  The Court also determines that the doctrine of res judicata precludes the Court from reviewing P. Martinez' allegations that M. Martinez and Latta's filing motions in the Martinezes' divorce case was a malicious abuse of process, and the

Court adopts Chief Judge Molzen's recommendation that the Court grant M. Martinez and Latta summary judgment on those allegations. The Court also determines that Latta is entitled to summary judgment in her favor on P. Martinez' allegations that some of Latta's statements made in state court were false and a malicious abuse of process, and the Court overrules P. Martinez' objections thereto. On the other hand, the R&R does not address all of P. Martinez' allegations of malicious abuse of process, and the Court will not grant summary judgment in favor of either M. Martinez or Latta on the allegations that Chief Judge Molzen did not address in the R&R.

Additionally, the Court determines that the New Mexico courts have given sufficient direction regarding when the M. Martinez and P. Martinez were divorced, and the Court denies P. Martinez' Motion to Certify this question to the Supreme Court of New Mexico.

## I.    THE COURT MAY PROPERLY GRANT SUMMARY JUDGMENT IN FAVOR OF M. MARTINEZ AND LATTA.

P. Martinez contends that Chief Judge Molzen had no authority to recommend that the Court grant summary judgment in favor of M. Martinez and Latta. See Partial Obj. at 7. P. Martinez contends that, because she has demanded a jury trial, Chief Judge Molzen had no authority to address the merits of her case. See Motion to Strike at 2, 6; Motion to Extend at 1; Partial Obj. at 2; 2nd Obj. at 2. P. Martinez also asserts that summary judgment is improper, because she has not been allowed to conduct discovery. See 2nd Obj. at 2; 2nd Verified Aff. at 5, 13. She asserts that Chief Judge Molzen has become an advocate for M. Martinez and Latta, and that Chief Judge Molzen may not address defenses that M. Martinez and Latta have not themselves raised. See Motion to Strike at 7-9; Partial Obj. at 3; 2nd Obj. at 11. She also asserts that Chief Judge Molzen did not grant her enough time to respond to the R&R. See Partial Obj. at 6.

Contrary to P. Martinez' allegations that the R&R has violated her rights to a jury trial and due process, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. at 326. A district court may "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Chief Judge Molzen twice identified for the parties material facts that may not genuinely be in dispute. First, In the Nov. 10 Order, Chief Judge Molzen ordered the parties to brief certain issues, including the date of the parties' divorce, whether the statute of limitations set forth in N.M.S.A. 1978 § 37-1-4 bars P. Martinez' asserted interest in M. Martinez' businesses and income derived therefrom, and whether P. Martinez' claims for partition of certain real property allegedly hidden during the divorce proceedings are subject to a four-year statute of limitations because M. Martinez ousted P. Martinez. See Nov. 10 Order at 10. Second, in the R&R, Chief Judge Molzen outlined thirty-two undisputed material facts. See R&R at 5-13. Chief Judge Molzen has the statutory authority to recommend a dispositive ruling to the Court, as outlined in 28 U.S.C. § 636 (b)(1)(A), (B) (stating that a district court judge may "designate a magistrate judge to conduct hearing, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by the judge of the court, of any motion excepted in subparagraph (A)," and one of the motions excepted in (A) is "for summary judgment"). P. Martinez was allowed to respond both to the Nov. 10 Order, albeit her Verified Aff. is an untimely response, if it is a response, and P. Martinez has had ample time to file objections to the R&R. See Order (Doc. 242) at 2 (granting P. Martinez an extension of time to object to the

R&R).  Accordingly, the Court overrules P. Martinez' objection that she was not given sufficient time to respond to the R&R.

Chief Judge Molzen, therefore, notified P. Martinez twice of material facts that may not be in dispute, and P. Martinez was given every opportunity to come forward with all of her evidence.  Indeed, P. Martinez has fully recognized what Chief Judge Molzen is trying to do in the R&R labeled a sua sponte summary judgment.  See 2nd Obj. ("J. Molzen's Doc. 238 Order and Report and Recommendation encompasses what can be construed as a Federal Rule 56 sua sponte summary judgment recommendation for dismissal." (emphasis in original)).  In response, P. Martinez has put all her evidence into objections and motions, which the Court will consider, regardless whether they were timely filed or are in a questionable form.

Moreover, P. Martinez cannot allege that she was not allowed to conduct discovery; neither Chief Judge Molzen nor the Court issued orders precluding P. Martinez from conducting timely discovery.  Rather, as Chief Judge Molzen explains, P. Martinez failed to conduct discovery in accordance with the Scheduling Order.  See Nov. 10 Order at 6, 11.  While P. Martinez objected to portions of the Scheduling Order, really, P. Martinez' pursuit of procedural perfection precluded her from doing discovery.

Perfection, with her many motions, objections, petitions for writ of mandamus and appeals, was always the enemy of her conducting good and adequate discovery.  In the end, she preferred to file pleadings rather than do the hard work of discovery.  Nevertheless, the Court has chosen, in its discretion to consider all of the pleadings in which P. Martinez sets forth what may be construed as a response to the Nov. 10 Order and objections to the R&R, whether P. Martinez so characterizes the pleadings or they are untimely.  See Fed. R. Civ. P. 72(b)(3)("The district judge must determine de novo any part of the magistrate judge's disposition that has been

properly objected to.  The district judge may . . . receive further evidence . . . .").  P. Martinez

has had sufficient notice, and the Court's grant of summary judgment is in accordance with the

Federal Rules of Civil Procedure and Tenth Circuit law.  See Roscoe v. Fed. Home Loan Mortg.

Ass'n, 1999 WL 1188829 at *6 (finding that a plaintiff had sufficient notice to respond to a

summary judgment motion where undisputed facts were identified and the plaintiff had an

opportunity to respond).

## II.    PARTIAL SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS IS WARRANTED.

The relevant matters of dispute between the parties are: (i) at what date was the Martinez'

divorce final, such that property acquired by P. Martinez and M. Martinez after that date is not

community property? (ii) did the state court decide P. Martinez' claims to the Candelaria and

Alberta properties, such that the state court's judgment in the Martinez' divorce precludes the

Court from hearing P. Martinez' claims regarding those properties under res judicata?  (iii) does

a genuine issue of material fact exist whether the Silkwood and Blake properties were

community property at the time of the divorce such that P. Martinez may assert an interest

therein?   (iv) does a genuine issue of material fact exist whether M. Martinez' real-estate

brokerage businesses and income derived therefrom are community property? and (v) Does a

genuine issue of material fact exist whether the Defendants are liable for malicious abuse of

process to P. Martinez?[10]  Chief Judge Molzen examined each of these issues and determined,

_____

[10] Chief Judge Molzen also determined that the relevant statutes of limitations bar several
of P. Martinez' claims.  Chief Judge Molzen explained that the four-year statute of limitations
for P. Martinez' asserted interests in M. Martinez' businesses and income derived therefrom,
which are personal property, accrued as early as March, 2002, because P. Martinez admits she
was aware that P. Martinez was receiving income from these business in March, 1998.  See R&R
¶ 14, at 9 (citing Amended Complaint ¶ 44, at 47-48); R&R at  22 (citing N.M.S.A. § 1978 37-1-
4; Plaatje v. Plaatje, 95 N.M. 789, 790, 626 P.2d 1286, 1287 (1981)).   M. Martinez did not raise
a statute-of-limitations defense until after Chief Judge Molzen informed the him in the Nov. 10

based upon her findings of undisputed material facts, that M. Martinez and Latta are entitled to judgment in their favor on P. Martinez' claims as a matter of law.  The Court has reviewed de novo the Verified Aff., the R&R, and P. Martinez' objections to the R&R, and the Court determines that Chief Judge Molzen's recommendation for an award of partial summary judgment in favor of the Defendants is in accordance with law.  The Court, therefore, adopts Chief Judge Molzen's recommendation of summary judgment, in part.

### A.   M. MARTINEZ' AND P. MARTINEZ' DIVORCE WAS FINAL ON FEBRUARY 6, 1998.

Chief Judge Molzen concludes M. Martinez and P. Martinez were "legally divorced on February 6, 1998," when Judge Kass issued a minute order announcing that the "'parties are divorced.'"  R&R at 5 (quoting Divorce Minute Order at 1).   P. Martinez contends that the divorce was not final until the state court issued its Findings of Fact and Conclusion of Law on May 4, 1998, and announced that the marriage is "dissolved."  2nd Obj. at 12; 2nd Verified Aff. at 6-7.  P. Martinez alternatively contends that the divorce was not final until the Final Decree of

---

Order that the statute-of-limitations may have run on P. Martinez' claims to his personal property.  See Nov. 10 Order at 7-10; Amended Joint Memorandum Pursuant to Order Filed November 11, 2011 at 3, filed December 6, 2011 (Doc. 207)("Joint Response")(stating, in response to the Nov. 10 Order, that the relevant statute of limitations bars P. Martinez' claims alleging an interest in M. Martinez' personal property).  He has now put that defense in his pleading.  See Joint Response at 3.

The Court is wary of granting summary judgment in favor of M. Martinez on the basis of an expired statute of limitations, a defense which he did not raise in his Answer to the Amended Complaint.  Statute-of-limitations defenses may be waived, and M. Martinez may have waived this defense by not raising it in their initial answers.  Indeed, P. Martinez objects to the R&R, in part, because Chief Judge Molzen raises defenses the Defendants have not asserted.  See Motion to Strike at 7-9.  The Tenth Circuit has held that, "[i]n general, a statute of limitations may not be raised *sua sponte* and all circuits to consider this issue have held so explicitly."  United States v. Mitchell, 518 F.3d 740, 748-49 (10th Cir. 2008)(citing Eriline Co. S.A. v. Johnson, 440 F.3d 648, 653-54 (4th Cir. 2006); Haskell v. Wash. Twp., 864 F.2d 1266, 1273 (6th Cir. 1988); Davis v. Bryan, 810 F.2d 42, 45 (2d Cir. 1987); Wagner v. Fawcett Publ'ns, 307 F.2d 409, 412 (7th Cir. 1962)).  The Court, therefore, does not adopt the portions of the R&R which recommend that the Court dismiss P. Martinez' claims to M. Martinez' personal property as time-barred.

Dissolution of Marriage and Judgment was filed on June 2, 1999.  See Motion to Strike at 12; 2nd Verified Aff. at 7.

Chief Judge Molzen relied upon N.M.S.A. 1978 § 40-3-8, and Mitchell v. Mitchell, 104 N.M. 205, 719 P.2d 432 (Ct. App.), cert denied, 104 N.M. 84, 717 P.2d 60 (1986)(table),  in finding that M. Martinez and P. Martinez were divorced on February 6, 1998.  See R&R at 13-14.  N.M.S.A. 1978, § 40-3-8 states that separate property is "property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage."  N.M.S.A. 1978, § 40-3-8 (A)(1).  Chief Judge Molzen explained that, "once a court enters an order dissolving the marriage, even though the court has not yet entered a final judgment or decree, the marital relationship between the parties ends" and their assets acquired thereafter are separate property. R&R at 14 (citing In re Miller's Estate, 44 N.M. 214, 220, 100 P.2d 908, 912 (1940)).  In Mitchell v. Mitchell, the issues before the Court of Appeals of New Mexico were substantially similar to those before the Court here.[11]  The trial court entered a decree declaring that the

---

[11] Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996).  In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case.  See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007). The federal court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently."  Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940). To predict how the state's highest court would rule, the federal court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and 'the general weight and trend of authority' in the relevant area of law."  Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007)(citations and internal quotation marks omitted). Because the Supreme Court of New Mexico denied certiorari in Mitchell v. Mitchell, see 104 N.M. 84, 717 P.2d 60, and has recently cited the decision with approval, see Diamond v. Diamond, 2012-NMSC-022, ¶ 34 283 P.3d 260, the Court concludes that the Supreme Court of New Mexico, if presented with the same

marriage was dissolved on March 29, 1983, but retained jurisdiction to determine property division and debt allocation.  On December 17, 1984, the trial court entered a final decree of divorce, filed findings of fact and conclusions of law, and also entered final judgment.  See 104 N.M. at 434, 100 P.2d at 207.  On appeal, Josephine Mitchell contested that she was entitled to income her husband earned from his certified public accountant's practice after March 29, 1983, but before the entry of a final decree of divorce.  The Court of Appeals of New Mexico disagreed.  The Court of Appeals of New Mexico held that, when the trial court entered a partial decree of divorce, "even though the decree is not final for purposes of appeal, subsequent earnings of a former spouse are not subject to division up to the date of the final decree."  104 N.M. at 442, 100 P.2d at 215.  The Court of Appeals of New Mexico held, therefore, that, after the divorce was announced on March 29, 1983, "the community no longer owns the labor of the parties."  104 N.M. at 442, 100 P.2d at 215.  The Court of Appeals of New Mexico explained that a court may "dissolve the marital relationship prior to ruling on the other issues raised in the divorce petition."  104 N.M. at 442-43, 100 P.2d at 215-16.

Here, the state court announced as of February 6, 1998, that "the parties are divorced." Divorce Minute Order at 1.  Although P. Martinez contends that the divorce was not final until at least May 4, 1998, when Judge Kass issued her Findings of Fact and Conclusions of Law regarding the parties' property rights, see, e.g., 2nd Verified Aff. at 7,  Mitchell v. Mitchell holds otherwise.   From the time Judge Kass announced the parties' marital status as divorced, "property acquired by either spouse before marriage or after entry of a decree of dissolution of marriage."  N.M.S.A. 1978, § 40-3-8 (A)(1)  Although a "decree" of divorce was not entered

_____

case, would rule on Mitchell v. Mitchell in the same manner as the Court of Appeals of New Mexico.

until much later, see Final Decree of Dissolution of Marriage and Judgment at 1-2, nothing

precludes the state court from dissolving the parties' marriage while retaining jurisdiction to

divide the parties' property, see Mitchell v. Mitchell, 104 N.M. at 442-43, 100 P.2d at 215-16

("A court may dissolve the marital relationship prior to ruling on the other issues raised in the

divorce petition.").  Accordingly, P. Martinez' argument -- that the Martinezes' divorce was not

final as of the Divorce Minute Order -- does not create a genuine issue of material fact whether

the Divorce Minute Order ended the Martinez' marriage.  See 2nd Obj. at 12.  Conversely,

although the parties were free to appeal Judge Kass' pronouncements in the Divorce Minute

Order, it held the power of becoming a final order absent the parties' appeal, and in P. Martinez'

Proposed Findings and Conclusions filed within the time frame allowed in the Divorce Minute

Order, nowhere does P. Martinez contest whether the parties are divorced.  See Proposed

Findings and Conclusions, filed in state court February 25, 1998, filed in federal court December

6, 2011 (Doc. 207-1).  The Court determines, therefore, as a matter of New Mexico law, that the

parties were divorced as of February 6, 1998, and overrules P. Martinez' objections to this

portion of the R&R.

> **B.    P. MARTINEZ MAY NOT ASSERT AN INTEREST IN THE CANDELARIA, ALBERTA, SILKWOOD, AND BLAKE ROAD PROPERTIES AS A MATTER OF LAW.**

Chief Judge Molzen concludes that the state court determined that the Candelaria and

Alberta Properties are not undivided community property, and recommends that the Court find,

under the doctrine of res judicata, that P. Martinez may not assert an interest in those properties.

See R&R at 20.  Chief Judge Molzen also concludes that P. Martinez has not alleged facts to

demonstrate that a genuine issue of material fact exists whether the Silkwood and Blake Road

properties were ever community property, and, rather, the facts P. Martinez has alleged

demonstrate that M. Martinez had no ownership interest in those properties before the parties were divorced.  Chief Judge Molzen recommends, therefore, that the Silkwood and Blake Road properties were never community property as a matter of law.  See R&R at 20-21.  The Court has reviewed these conclusions and P. Martinez' objections thereto, de novo, and the Court agrees with Chief Judge Molzen's conclusions.

### 1.    The Court may not Review the State Court's Determination that the Candelaria and Alberta Properties are not Community Property.

Chief Judge Molzen found the following undisputed facts:

5.    In her challenge to the February 6, 1998 findings and conclusions regarding community property and income from businesses, P. Martinez sought additional findings and conclusions, based upon her submitted documentary evidence and trial testimony, contending that she was entitled to more community property because M. Martinez had "tried to hide his assets."  Specifically, P. Martinez contended that Paul Wiest and his wife purchased a commercial property on Candelaria in Albuquerque with Jean Smith (M. Martinez' alleged girlfriend who supposedly did not have sufficient income to pay her half of the mortgage) on July 24, 1996, which could be transferred to M. Martinez after the divorce.  [citing Proposed Findings and Conclusions at 12-13].  P. Martinez attached a deed showing that the Wiests and Smith purchased and held legal title to the property, and copies of Smith's bank records supporting P. Martinez' contention that Smith could not afford the payments.  [citing Proposed Findings and Conclusions at 12-13; Real Estate Contract for La Sala Grande, filed in state court February 25, 1998, filed in federal court December 6, 2011 (Doc. 207-1 at 17)("Real Estate Contract")].  P. Martinez sought a legal conclusion that 'the commercial property that is under Jean Smith's name is a property of Mr. Martinez . . .  Respondent is entitled to one-half of these properties."  [quoting Proposed Findings and Conclusions at 13].

6.    P. Martinez also contended that M. Martinez had hidden the pre-divorce purchase of a house on Alberta street in Albuquerque for himself and Jean Smith, and that she was entitled to "one-half" of that asset.  [citing Proposed Findings and Conclusions at 12-13].

7.    On May 4, 1998, the state district court denied P. Martinez's "inconsistent' proposed findings and conclusions, and filed findings of fact and conclusions of law that are almost identical to its February 6, 1998 Order.  [citing Court's Findings of Fact and Conclusions of Law; Response to Memorandum Brief in Support of Defendant Judge Elizabeth Whitefield's Motion to Dismiss ¶ 7, at 3, filed September 14, 2009 (Doc. 26)("MTD Response")](acknowledging

that the state-court judge "denied P. Martinez's proposed findings and COL, assertions reflecting fraud and unreported commissions").

R&R ¶¶ 5-7, at 6-7 (internal alterations omitted).   Based upon these findings, Chief Judge Molzen concludes that the state court "denied P. Martinez's requested findings that M. Martinez" owned the Candelaria and Blake Road properties "before the divorce and refused to award P. Martinez one-half of those properties."   R&R at 20.   Chief Judge Molzen explains that, because P. Martinez admittedly did not appeal from the state-court judgment, the judgment is final, and res judicata precludes the Court from reaching the merits of P. Martinez' claims regarding those properties.   See R&R at 20, 23-24.

P. Martinez asserts that she has brought forward evidence that genuinely disputes a material fact regarding when M. Martinez acquired ownership of the Candelaria property.   The most compelling piece of evidence which P. Martinez includes is M. Martinez' recently-disclosed 1997 IRS Form 4562, which evidences that M. Martinez took a deduction for the depreciation of $200,000.00 in real property used for business purposes during the tax year 1997. See 1997 IRS Form 4562 at 1; Verified Aff. ¶ 1(21)(b)(ii) at 2; 2nd Verified Aff. at 11; 2nd Obj. at 11.   P. Martinez contends that this information specifically controverts Chief Judge Molzen's finding in the R&R that M. Martinez did not begin improving the Candelaria property until March, 1998.   See Motion to Strike at 14; R&R ¶ 9, at 7-8.   Additionally, P. Martinez asserts that the ledger sheet she provided to the Court indicates that M. Martinez began making payments on the Candelaria property to the Weists as of February 28, 1998; however, by that point in time, M. Martinez and P. Martinez were divorced, and, therefore, his payments on the Candelaria property after the divorce do not establish that the property was community in nature.   See Verified Aff. ¶ 1(21)(b)(vi), 18.   These allegations address whether the date that M. Martinez acquired an interest in the Candelaria property is an undisputed material fact; these allegations do not address

whether the state court conclusively determined that the Candelaria and Alberta properties are not community property.[12]   P. Martinez further asserts that the state court never made a final

---

[12] P. Martinez' allegations that M. Martinez withheld relevant tax information from her from the time of their divorce is indeed troubling.  P. Martinez asserts that she was not provided with M. Martinez' 1997 IRS Form 4562 until September 29, 2011.  See Verified Aff. ¶ 1(21)(b)(i) at 2.  P. Martinez appears to have requested such information from M. Martinez as early as December 18, 1999.  See Letter from P. Martinez to M. Martinez, dated December 18, 1999, filed in Oklahoma state court January 14, 2003, filed in federal court September 14, 2009 (Doc. 26 Ex. 7)("I have requested from both you and your attorney on several occasions to submit to me your 1997 and 1998 Federal and State Tax Return.").  Indeed, the 1997 IRS Form 4562 substantiates P. Martinez' long-standing allegations that M. Martinez hid the Candelaria property from Judge Kass in the divorce proceedings.  See Proposed Findings and Conclusions at 13 (asserting that M. Martinez has hid income and assets from the state court, that M. Martinez is the co-owner of the Alberta property and a commercial property and that P. Martinez is entitled to one-half of these properties).  As P. Martinez points out, M. Martinez has admitted that he would not take a deduction for the amortization of real property in an IRS Form 4562 if he did not own that property.  See 2nd Verified Aff. at 11; Deposition of Michael Martinez at 11:1-4 (taken May 19, 2005)(M. Martinez), filed July 24, 2012 (Doc. 247 at 39)).  Although this information is troubling, this newly discovered evidence does not relieve P. Martinez of the hurdles that res judicata and Rooker-Feldman present to her case.

Further, in addition to alleging in the state court that M. Martinez hid his income and assets from Judge Kass, in 2000, P. Martinez instituted a separate action under N.M. R. Civ. P. 60(b), alleging that the state court should set aside the Final Decree of Dissolution of Marriage and Judgment for fraud.  P. Martinez informs the Court that, "on May 31, 2000, under Rule 60(b) based on fraud" she moved the state court to set aside its judgment in their divorce.   See Response to MTD ¶ 14, at 4.  P. Martinez voluntarily dismissed this case, without obtaining discovery that may have revealed M. Martinez' fraud, after M. Martinez agreed to pay a set amount each month to P. Martinez and their son, Joshua Martinez.  See Response to MTD ¶ 15, at 5.  When M. Martinez did not follow through on his promise, P. Martinez brought a motion to enforce his promised payments in New Mexico family court.  See MTD Response ¶ 18, at 6.  P. Martinez eventually voluntarily dismissed that matter, apparently because she "met continual resistance in filing" with the court.  MTD Response ¶ 19, at 6.  P. Martinez then sued M. Martinez for breach of contract -- for his failure to make his promised payments -- in Oklahoma state court.  See MTD Response ¶¶ 20-21, at 6-7.  M. Martinez then brought suit for malicious abuse of process in New Mexico state court against P. Martinez.  See MTD Response ¶ 24, at 8.  P. Martinez counterclaimed, asking the New Mexico state court overseeing M. Martinez' suit to determine whether P. Martinez had an interest in the property which M. Martinez allegedly hid during the divorce.  See MTD Response ¶ 24, at 8.  The state court dismissed P. Martinez' counterclaims, and a "clerical error" apparently closed that proceeding.  MTD Response ¶ 28, at 8-9 ("[T]he judge agreed to dismiss that portion of the counter suit and then said to re file it in a domestic relations court. . . .  That court (CV 05-3878) dismissed this Plaintiff's cross claim by clerical error in June of 2008 Plaintiff learned later.").  P. Martinez chose, for reasons she does not provide the Court, to not re-file her suit.  MTD Response ¶ 28, at 9 ("Plaintiff then, after

decision on the merits regarding her interests in the Candelaria, Alberta, and Silkwood properties, and, therefore, the state court's judgment is not a final decision on the merits subject to res judicata.  See 2nd Obj. at 14-15; Reply at 3-4.

New Mexico law prescribes four elements for a party seeking to assert res judicata: "(i) the same parties or parties in privity; (ii) the identity of capacity or character of persons for or

---

notifying that court of this error at a hearing, for several reasons, decided that rather than re-open it . . . considering various ramifications and complexities not worth taking time here, decided to let  it remain closed by clerical error.").

This procedural history evidences that P. Martinez has twice had the opportunity to bring her claims for fraud before the New Mexico state courts.  P. Martinez initially asserted in the parties' divorce that M. Martinez had fraudulently hid income and assets from the state court.  P. Martinez subsequently brought a motion to set aside Judge Kass' allocation of property on account of M. Martinez' fraud.  See N.M.R.A. 1-060 (B)(2) (providing that a court may, within one year of the entry of a judgment,  set aside the judgment on account of newly discovered evidence and fraud, and that a court may set aside a judgment for fraud upon the court at any time, notwithstanding the one-year time limit to set aside a judgment for a party's fraud).

To the extent P. Martinez alleges that the Court may review M. Martinez' alleged hiding of assets because he committed fraud on the court, her allegations fall short of the standard necessary for revisiting Judge Kass' property allocations at this point.  In federal court, M. Martinez' conduct does not rise to the level of "fraud on the court" such that the Court may set aside the Final Decree of Dissolution of Marriage and Judgment.  Fed. R. Civ. P. 60(d)(3) (stating that a court may set aside a judgment or order on the basis of a party's fraud on the court, notwithstanding the one-year time limit provided for bringing an action based upon a party's fraud or newly discovered evidence in subsection (b)(2),(3)).  See  Bulloch v. United States, 763 F.2d 1115, 1118 (10th Cir. 1985)(en banc)(holding that "fraud on the court . . . is fraud which is directed to the judiciary machinery itself and is not fraud between the parties or fraudulent document, false statements or perjury," and "nondisclosure in pretrial discovery will not support an action for fraud on the court"); O'Brien v. Mitchell, 883 F. Supp. 2d 1055, 1092-93 (D.N.M. 2012)(Browning, J.)(finding that allegations of perjury and that an attorney has a history of unethical behavior are insufficient to establish fraud on the court).  M. Martinez' failure to produce tax returns when requested, therefore, is not sufficient evidence of fraud on the court for the Court to take action on the state court's Final Decree of Dissolution of Marriage and Judgment.

Had P. Martinez persisted in her state court proceedings after M. Martinez breached a contract for support payments, P. Martinez may have been able to uncover evidence demonstrating M. Martinez' fraud -- the allegation which she dropped in exchange for M. Martinez' agreement to make support payments.  Unfortunately for P. Martinez, in an uncharacteristic move, she chose to not pursue further state court proceedings when it "was her right" to do so.  MTD Response ¶ 28, at 9.  She must, therefore, come to terms with the state court judgments that she chose to leave undisturbed.

against whom the claim is made; (iii) the same subject matter; and (iv) the same cause of action

in both suits." Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d 1278, 1285-86 (D.N.M.

2011)(Browning, J.)(citing Apodaca v. AAA Gas Co., 2003-NMCA-085, ¶ 75, 134 N.M. 77, 73

P.3d 215). P. Martinez asserts that Judge Kass' conclusion that the Candelaria and Alberta

properties were not community property is not a final decision on the merits, because, P.

Martinez contends, Judge Kass did not review her exhibits demonstrating that M. Martinez hid

these assets from the state court. See 2nd Obj. at 14-15. P. Martinez notes, however, in her

Proposed Findings and Conclusions, that "evidence was offered at the trial both in testimonial

and circumstantial evidence" regarding M. Martinez' ownership of the Alberta property and a

"commercial property" in Smith's name.[13] Proposed Findings and Conclusions ¶ 5, at 13; id. ¶¶

5(e),(g), at 16-17. P. Martinez includes with her Proposed Findings and Conclusions the Real

Estate Contract that she asserts, in this matter, evidences that the Weists and Smith were

strawmen purchasers of the Candelaria property for M. Martinez. See Proposed Findings and

---

[13] Indeed, in the Proposed Findings and Conclusions, P. Martinez notifies the Court that, although the Candelaria property is in Smith's name, M. Martinez lived at the residence, as he allegedly "paid for the cement for the patio," and built the patio at the Candelaria property. Proposed Findings and Conclusions ¶ 5(e), at 16. P. Martinez substantiates this allegation with her findings from the trash at the Candelaria property: "A sketch was found in Jean Smith's trash of a deck for a patio. Mr. Martinez denies it to be his handwriting. After living with Mr. Martinez for 15 years, I recognize his handwriting." Proposed Findings and Conclusions ¶ 5(e), at 16. P. Martinez further explains that, "[a]fter going through the trash at this home, there was various material retrieved, such as notes to Mr. Martinez from Ms. Smith written on his real estate papers, restaurant receipts, notes to each other questioning if they should make loans to their church for $2,000 on a church bulletin." Proposed Findings and Conclusions ¶ 5(e), at 16. P. Martinez contends that "[a]ll this and more reflects Mr. Martinez indeed lives with Ms. Smith" at the Candelaria property before the divorce. Proposed Findings and Conclusions ¶ 5(e), at 16. Further, P. Martinez contends that, although M. Martinez stated he lived with his mother at the Alberta property before the divorce, P. Martinez' surveillance of that property reveals he did not reside there before the divorce. "This home was under detection for a period of time and never once did Mr. Martinez or his Cadillac either reside at this dwelling or was he seen coming to and fro from this home for this period of time." Proposed Findings and Conclusions ¶ 5(f), at 16. Notwithstanding these allegations, Judge Kass determined that the Candelaria and Alberta properties are not community property.

Conclusions, Ex. 3; Verified Aff. ¶ 1(21)(b)(iii).  Although P. Martinez asserts that Judge Kass did not review her exhibits, there is no evidence in the record to suggest that Judge Kass disregarded P. Martinez' evidence presented at trial, and in her Proposed Findings and Conclusions, asserting that M. Martinez hid his ownership of the Candelaria and Alberta properties from the state court, and denied P. Martinez a "full and fair opportunity to litigate issues" relating to her claims.  Kirby v. Guardian Life Ins. Co., 2010-NMSC-014, ¶ 61, 148 N.M. 106, 231 P.3d 87.

The Divorce Minute Order invited the parties to appeal Judge Kass' allocation of property, and P. Martinez timely appealed Judge Kass' findings in the Divorce Minute Order. Subsequently, in the state Court's Findings of Fact and Conclusions of Law, issued after P. Martinez' Proposed Findings and Conclusions, Judge Kass denied "Proposed Findings & Conclusions inconsistent" with the property rights she set forth therein.  Court's Findings of Fact and Conclusions of Law ¶ 18, at 35.  P. Martinez' allegations regarding the Candelaria and Alberta properties are inconsistent with Judge Kass' findings, as Judge Kass did not find that P. Martinez was entitled to a one-half interest in those properties.  Moreover, Judge Kass affirmed the state Court's Findings of Fact before entering the Final Decree of Dissolution of Marriage and Judgment.  See Final Decree of Dissolution of Marriage ¶ 18, at 41.  P. Martinez is now asserting that M. Martinez fraudulently hid his ownership of the Candelaria and Alberta properties from the state court: a claim that alleges the same cause of action, against the same party, regarding the same subject matter, as that which Judge Kass determined was not community property in the divorce.  See Deflon v. Sawyers, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577 (defining res judicata as a doctrines barring subsequent litigation of "the same claim between the same parties or their privies when the first litigation resulted in a final

judgment on the merits").  Therefore, the doctrine of res judicata precludes the Court's review of P. Martinez' claims to the Candelaria and Alberta properties.

The Court previously held that the <u>Rooker-Feldman</u> doctrine does not bar P. Martinez' claims regarding the Candelaria and Alberta properties, because "P. Martinez' factual justification for her entitlement to a partition does not draw into question the correctness of the state court's division of property based on the information available to the judge at the time." <u>Martinez v. Martinez</u>, slip op. at 22.  The Court determined that P. Martinez may bring a claim for partition and accounting of property not divided in the divorce under N.M.S.A. 1978, § 40-4-20, because the P. Martinez' asserted property interest would not call into question the "correctness of the division that the first state-court judge ordered." <u>Martinez v. Martinez</u>, slip op. at 23.  The Court now has more evidence to review, which was not before it when it previously announced that <u>Rooker-Feldman</u> is not a bar to P. Martinez' claims asserting a property interest in the Candelaria and Alberta properties.  The Court is no longer convinced that P. Martinez' asserted interests in the Candelaria and Alberta properties is a new cause of action under N.M.S.A. 1978, § 40-4-20 that the <u>Rooker-Feldman</u> doctrine does not prohibit the Court from entertaining.

First, the language of N.M.S.A. 1978, § 40-4-20 does not seem to allow a divorced party to bring a new cause of action for properties that were covered by an earlier divorce.  The statute states that the "failure to divide or distribute property on the entry of a decree of dissolution of marriage" does not affect the property rights of a husband or wife, or prohibit a court from dividing property "that could have been litigated in the original proceeding."  N.M.S.A. 1978, § 40-4-20.  The language's plain meaning implies that, where a decree does not address a husband and wife's rights in relation to a particular property, a court may subsequently determine those

rights even if the property "could have been litigated" in the divorce proceeding, but was not. N.M.S.A. 1978, § 40-4-20.  Property that was litigated in the original proceeding, therefore, would seem to fall outside this statute.  Further, New Mexico courts applying this statute indicate that it is not available to address property that was covered in a decree of divorce.  For example, in Martinez v. Martinez, 2004-NMCA-007, 135 N.M. 11, 83 P.3d 298, the Court of Appeals of New Mexico, in holding that the four-year statute of limitations set forth in N.M.S.A. 1978 § 37-1-4 does not apply to an action for accounting and partition of real property, stated that a "bond of contention" between the parties would be whether the divorce decree divided the real property at issue. [14]  2004-NMCA-007, ¶¶ 19-20, 135 N.M. 11, 83 P.3d 298.  The Court of Appeals of New Mexico explained that its "discussion regarding partition" would not apply to the parties' dispute over the real party if the divorce decree divided the property.  2004-NMCA-007, ¶¶ 19-20, 135 N.M. 11, 83 P.3d 298.  Additionally, under the 1953 version of N.M.S.A. 1978, § 40-4-20, the Supreme Court of New Mexico held that, although the statute would allow a husband or wife to file suit for partition of property "not adjudicated between husband and wife in a divorce proceeding . . .[,] insofar as property rights were considered and an agreement covering them ratified and approved by the court in the divorce decree, probably no change therein could be accomplished . . . ."  Zarges v. Zarges, 79 N.M. 494, 495, 445 P.2d 97, 98 (1968).  These cases indicate that N.M.S.A 1978, § 40-4-20 is not intended to allow divorced parties to re-litigate their rights to property that the original divorce proceeding discussed and divided.  Accordingly, because the state court reviewed P. Martinez' allegations of an interest in the Candelaria and Alberta properties, and chose not to adopt her proposed findings that she was entitled to one-half

---

[14] The parties in Martinez v. Martinez, 2004-NMCA-007, 135 N.M. 11, 83 P.3d 298 are not the same as those before the Court here.

of those properties, N.M.S.A 1978, § 40-4-20 does not provide P. Martinez a cause of action for relitigating her rights to properties decided in the divorce.

Second, the Court's previous determination that the real properties in which P. Martinez alleges an interest were not divided in the original divorce led the Court to conclude that the Rooker-Feldman doctrine did not bar the Court's review of P. Martinez' claims.  See Martinez v. Martinez, slip op. at 23.  Just as the Court has now determined that P. Martinez is not seeking the partition and accounting of properties that were not divided in the original divorce, the Court also concludes that the Rooker-Feldman doctrine precludes the Court from reviewing P. Martinez' allegations of an interest in those properties.   Indeed, as the Court explained in its former opinion: "To the extent that P. Martinez' Amended Complaint is alleging that she was harmed by the state-court judge's incorrect division of property in 1998, she asks the Court to review and correct the decree of divorce, conduct in which the Rooker-Feldman doctrine bars the Court from engaging."  Martinez v. Martinez, slip op. at 28 n.10 (citing Lance v. Dennis, 546 U.S. at 460; Guttman v. Khasla, 446 F.3d at 1032).  Specifically, P. Martinez contends that, in the state Court's Findings of Fact and Conclusions of Law, Judge Kass failed to divide the Candelaria and Alberta properties, because M. Martinez fraudulently hid his ownership interests in those properties.  P. Martinez is not asserting claims "identical to what they would have been had there been no state court proceeding," Bolden v. City of Topeka, 441 F.3d at 1138, because the fulcrum of P. Martinez' contention is that M. Martinez' fraud caused the state court to incorrectly allocate property in the parties' divorce.  P. Martinez made the same claim regarding the same property in the parties' divorce as she does here, and Judge Kass ruled that the Candelaria and Alberta properties are not community property, overruling P. Martinez' claims on these properties -- a final decision on the merits which res judicata bars the Court from revisiting.

P. Martinez should have appealed Judge Kass' ruling in New Mexico state courts, not to the Court, which, under the Rooker-Feldman doctrine, is not a court of appeal for state courts. P. Martinez, therefore, may not seek relief from Judge Kass' determination that the Candelaria and Alberta properties are not community property by bringing her suit in federal court.

> ### 2.   No Genuine Issue of Material Fact Exists Whether the Silkwood and Blake Road Properties are not, as a Matter of Law, Community Property.

Chief Judge Molzen found the following undisputed material facts:

> 12.    According to P. Martinez, M. Martinez's mother was listed as the owner on the title of a home on Silkwood in Albuquerque that was purchased in October 1997. The mother resided in the home, and M. Martinez reported to P. Martinez that he lived there as well at times before the divorce. [citing Amended Complaint ¶ 38, at 46]. According to P. Martinez, M. Martinez swore in previous legal proceedings conducted in 2007 that he did not "acquire" the Silkwood property until October 29, 2003. [citing Amended Complaint ¶¶ 12, 13, at 36]. A mortgage company sent to M. Martinez, on October 19, 1999, a "home equity loan officer" describing the property as M. Martinez' home. [citing Amended Complaint ¶ 38, at 46].
>
> . . . .
>
> 15.    . . . M. Martinez served as the selling realtor in October 1995 for Dennis King when King sold a property he owned on Blake Road to Cord Mounkes. [citing Motion to Set Aside Judgment ¶ E, filed in state court May 31, 2000, filed in federal court September 14, 2009 (Doc. 26 Ex. 8)]. M. Martinez hired Mounkes as a real-estate associate at Albuquerque Commercial Realty in 1998 and Mounkes began subdividing the Blake property into lots called "the Stables," which Albuquerque Commercial Realty then listed for sale. [citing Amended Complaint ¶¶ 35-37, at 44-45]. In 2000, P. Martinez suspected that M. Martinez may have actually also owned the property because of the information on Albuquerque Commercial's 1998 listing that had the initials "ARC" "as owner of this property." [citing Amended Complaint ¶ 36, at 44-45].

R&R ¶¶ 12, 15, at 8-9. Based upon these findings, Chief Judge Molzen concluded that, as a matter of law, the Silkwood and Blake Road properties are not undivided community property. See R&R at 20-21. P. Martinez has not objected to these conclusions, and the Court, therefore, could review this portion of the R&R only to determine whether Chief Judge Molzen's

recommendation is "clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion."  Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  Nevertheless, in an effort to be as fair as possible to P. Martinez, a pro se litigant, the Court has reviewed these conclusions, as all others that Chief Judge Molzen made, de novo.

As Chief Judge Molzen correctly notes, P. Martinez alleges that the Silkwood property belonged to M. Martinez' mother at the time of the divorce, although M. Martinez admitted to living at the residence and later acquiring the residence.  Neither the fact that M. Martinez lived at the Silkwood property, nor that he acquired it in 1999, after the parties' divorce, creates a genuine issue of material fact regarding M. Martinez' ownership of the property before the divorce.  Accordingly, the record supports Chief Judge Molzen's conclusion that the Silkwood home was not community property, based upon P. Martinez' allegation that M. Martinez' mother owned the home from 1997 through October, 1999.  The Court, therefore, adopts Chief Judge Molzen's recommendation that the Silkwood property was not, as a matter of law, community property.

Additionally, Chief Judge Molzen's conclusion that the Blake Road property was not community property is based upon the facts P. Martinez put into the record.  Although P. Martinez asserts that M. Martinez did not report his commission from the sale of the Blake Road property to Mounkes, P. Martinez has provided the Court with no facts to substantiate this allegation.  See Amended Complaint ¶ 34, at 44.  This failure demonstrates an "absence of evidence to support" P. Martinez' case.  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891.  Moreover, although P. Martinez alleges that Albuquerque Commercial Realty owned the Blake Road property in 1998, the record also demonstrates that Albuquerque Commercial Realty was not incorporated until March, 1998, after the divorce.  Further, P. Martinez' evidence linking

M. Martinez to Blake Road is minimal; she asserts that, because a photograph of the property was listed on Albuquerque Commercial Realty's listing board in 1998, M. Martinez owned the property.  See Amended Complaint ¶ 36, at 45 (asserting that a photograph from Albuquerque Commercial Realty's listing board in 1998 indicates that the entity owned the Blake Road property).  Even if M. Martinez acquired Blake Road through his business endeavors in 1998, because his business was incorporated after the Martinez' divorce, the evidence demonstrates that M. Martinez would have acquired the property through his business after the divorce as well. See Amended Complaint ¶ 10, at 35 (asserting that Albuquerque Commercial Realty was incorporated in March, 1998).  The Court concludes that Chief Judge Molzen's recommendation of summary judgment in favor of M. Martinez on P. Martinez' asserted interests in the Silkwood and Blake Road properties is not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.   Moreover, giving her recommendation a de novo review, the Court concludes that Chief Judge Molzen is correct.   The Court, therefore, adopts Chief Judge Molzen's recommendation that M. Martinez is entitled to summary judgment in his favor on P. Martinez' claims asserting an interest in these properties.

C.     **M. MARTINEZ' REAL-ESTATE BROKERAGE ENDEAVORS, AND INCOME DERIVED THEREFROM, ARE NOT, AS A MATTER OF LAW, COMMUNITY        PROPERTY.**

Chief Judge Molzen made the following finding of undisputed material facts regarding M. Martinez' real-estate brokerage businesses:

> 9.      M. Martinez "formed" and incorporated Albuquerque Commercial Realty in March 1998, the month after the marriage was dissolved, [citing Amended Complaint ¶ 10, at 35; Motion to Compel ¶ 12, at 12, filed November 4, 2011 (Doc. 194); Joint Response at 2], and "started the business Albuquerque Realty thereafter," [citing MTD Response ¶ 9, at 4], incorporating it in 2002, [citing Amended Complaint ¶ 22, at 39].  M. Martinez improved a suite of the Candelaria office building also beginning in March 1998, ultimately using it to house Albuquerque Commercial Realty's offices.

R&R ¶ 9, at 7-8.  Based upon this finding, Chief Judge Molzen concludes that the "undisputed facts as set forth in the Amended Complaint and P. Martinez's other filings . . . conclusively establish that Albuquerque Commercial Realty and Albuquerque Realty were not formed, incorporated, or operated until *after* February 6, 1998, the date the parties were divorced."  R&R at 21 (emphasis in original).  Chief Judge Molzen further concludes that M. Martinez' earnings from his real-estate brokerage businesses have always been separate property, because he did not form his real-estate brokerage businesses until after the divorce.  See R&R at 22.  P. Martinez does not specifically contest the dates upon which Albuquerque Commercial Realty and Albuquerque Realty were formed.  She asserts, however, that the 1997 IRS Form 4562 demonstrates that M. Martinez invested in his real-estate brokerage business before the divorce, and, therefore, creates a genuine issue of material fact whether he derived community-property income from his real-estate work before the divorce.  See 2nd Obj. at 6, 9; 2nd Verified Aff. at 7-9.  P. Martinez also asserts that, because M. Martinez obtained his brokerage license in 1997, a genuine issue of material fact exists whether he earned community-property income with that license before the parties divorced.  See 2nd Verified Aff. at 7-9.

The Court has reviewed the record, Chief Judge Molzen's R&R, and P. Martinez' objections, de novo, and determines that the parties were divorced as of February 6, 1998.  The Court concludes, therefore, that Chief Judge Molzen accurately adduced from the undisputed facts P. Martinez put into the record that neither Albuquerque Commercial Realty nor Albuquerque Realty are community property as a matter of law.  The Court adopts Chief Judge Molzen's recommendation that M. Martinez is entitled to summary judgment regarding P. Martinez' asserted interests in these businesses.

P. Martinez contends that, because M. Martinez deducted $200,000.00 for the depreciation of real property put into business use during the tax year 1997, he must have earned income with his real estate brokerage license in the same year, but P. Martinez has failed to provide the Court with any evidence substantiating her purported link between acquiring the Candelaria property and his earning unreported income with his real-estate brokerage license in 1997. Using a real property space for conducting a business, and earning income from that business, are two separate actions. P. Martinez has not alleged facts into the record that lead the Court to believe that whether M. Martinez earned income with his brokerage license before the divorce "may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. Although M. Martinez' possible acquisition of the Candelaria property before the divorce may present a "scintilla" of evidence that M. Martinez derived income with his brokerage license with that property before the divorce, a scintilla of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Considering the record as a whole, if the only evidence that M. Martinez earned income with his brokerage license before the divorce is that he acquired the Candelaria property and may have conducted business from that location, the Court could not find in favor of P. Martinez regarding her asserted interest in M. Martinez' alleged earnings with his brokerage license before the divorce. The Court concludes, therefore, that M. Martinez is entitled to summary judgment on P. Martinez' claims asserting an interest in his real-estate brokerage businesses and earnings

derived therefrom before the divorce, and overrules P. Martinez' objections to this portion of the R&R.

### D.  M. MARTINEZ AND LATTA ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT ON P. MARTINEZ' ALLEGATIONS OF MALICIOUS ABUSE OF PROCESS .

Chief Judge Molzen recommends that the Court grant summary judgment in favor of the M. Martinez and Latta on P. Martinez' claims of malicious abuse of process for several reasons: (i) P. Martinez represented to the Tenth Circuit that, without an extension on the discovery period, she cannot prove her allegations of malicious abuse of process, see R&R at 24-25; (ii) as a sanction under rule 41(b), because P. Martinez has failed to comply with the Court's orders and the Federal Rules of Civil Procedure, see R&R at 25-27; and (iii) on their merits, see R&R at 27-33.  P. Martinez asserts that: (i) she has not failed to follow Court orders, see Motion to Strike at 6, 8; (ii) Latta lied to the Honorable Elizabeth Whitefield, New Mexico State Family Court Judge, regarding the status of P. Martinez' previous federal suit, see Motion to Strike at 9-11; and (iii) the statute of limitations has not run on her claims of malicious abuse of process,   see 2nd Obj. at 18-19.

The Court will not adopt Chief Judge Molzen's recommendation that the Court should hold P. Martinez to her statements made to the Tenth Circuit that her inability to conduct discovery precludes her from litigating her case.  P. Martinez asserts that Chief Judge Molzen took P. Martinez' statements to the Tenth Circuit out of context, see Motion to Strike at 4-5, 27-28.  It is not clear to the Court that Chief Judge Molzen mischaracterized P. Martinez' statements to the Tenth Circuit, because understanding exactly the point of P. Martinez' pleadings is often a difficult task for the Court.  On the other hand, it is possible that P. Martinez did not intend to tell the Tenth Circuit that she cannot prosecute her case without the discovery extension which the

Court denied.  P. Martinez asserts that Chief Judge Molzen "intentionally" left out the following language from P. Martinez' statements made to the Tenth Circuit, which P. Martinez contends set forth not that her case is "untriable" without the denied discovery, but, rather is "extremely handicapped and prejudiced and contrary to law":

> J. Molzen left out intentionally all of Plaintiff's language. . . .  This is what she left out the words: **"Preclusive discovery sanctions here :** [sic]
>
>> **holds the fatality of a dismissal with prejudice.  Therefore** (*not because*) parties and multiple years of claims and properties will be in essence be dismissed by this August 12, 2011 Order unless this case is reviewed and reversed."  By "holds" here I meant the possibility of an "intended or *threatened* action" (Britannica-Webster Dictionary).
>
> *I did not say **ALL** the years of claims and properties, but **multiple years** of claims and properties.

Motion to Strike at 27-28 (emphasis in original).  The Court, therefore, does not adopt Chief Judge Molzen's recommendation of holding P. Martinez to her statements to the Tenth Circuit as a basis for dismissing her claims of malicious abuse of process, and sustains P. Martinez' objection to this portion of the R&R.

Chief Judge Molzen concludes that P. Martinez' continual failure to comply with the Court's orders is an aggravating factor that outweighs the "judicial system's strong predisposition to resolve cases on their merits," Ehrenhaus v. Reynolds, 965 F.2d 916, 921 (10th Cir. 1992), and warrants dismissal of her claims under rule 41(b).  Although aspects of this case have been difficult, the Court does not believe that P. Martinez' litigation practices warrant the sanction of dismissal.  The Nov. 10 Order, with which P. Martinez failed to comply, and with which Chief Judge Molzen had the most concern, was an attempt by Chief Judge Molzen to get information about the case at an earlier point.  While P. Martinez did not comply in the manner that Chief Judge Molzen wanted, P. Martinez has now given all the information she has in

response to the R&R.  So, while not pretty, the tasks are generally done.  The Court, therefore, does not adopt Chief Judge Molzen's recommendation that the Court dismiss P. Martinez' Amended Complaint under rule 41(b), and sustains P. Martinez' objection to this portion of the R&R.

The Court determines, however, that the Defendants are entitled to partial summary judgment on P. Martinez' malicious abuse of process claims, because the relevant statute of limitations and the doctrine of res judicata prohibits the Court from reviewing some of her allegations of malicious abuse of process, and P. Martinez' remaining allegations do not create a genuine issue of material fact whether the Defendants maliciously abused judicial process against P. Martinez.  On the other hand, Chief Judge Molzen does not address all of P. Martinez' allegations of malicious abuse of process in the R&R, and the Court will not dismiss her remaining allegations.

The following procedural background is helpful in understanding P. Martinez' allegations of malicious abuse of process:

1.      On May 19, 2005, M. Martinez filed suit alleging malicious abuse of process against P. Martinez in New Mexico state court, Case No. CIV-2005-3878.  See Amended Complaint ¶ 12, at 4.  M. Martinez alleged that P. Martinez had maliciously abused process through her suits alleging breach of contract, failure to pay child support, and a RICO claim against him.  See Amended Complaint ¶ 12, at 3-4.  P. Martinez counterclaimed, and sought partitioning and accounting for property allegedly not divided in the divorce.  See Amended Complaint ¶¶ 13-15, at 5.  The Honorable Valerie A. Huling, New Mexico State District Judge, determined that she had jurisdiction over P. Martinez' counterclaims.  See Amended Complaint ¶¶ 13-15, at 5.

2.      On July 5, 2006, upon M. Martinez' motion, Judge Huling dismissed P. Martinez' counterclaims; M. Martinez contended that family court was the proper forum for the relief P. Martinez sought and would be a more expeditious forum for her claims.   See Amended Complaint ¶¶ 13-15, at 5.

3.      P. Martinez filed her suit for partition and accounting in family court as part of the Martinez' divorce proceedings, Case No. DR-1995-2963.  See Amended Complaint ¶ 31, at 7.  A clerk of the court advised P. Martinez that she needed to file a new suit, because the divorce proceedings were closed.  See Amended Complaint ¶ 31, at 7.

4.      P. Martinez then filed a suit for partition and accounting, before the Honorable Deborah Davis Walker, New Mexico State Family Court Judge, Case No. DM-2007-0085. James Loughren was assigned as the hearing officer on P. Martinez' suit before Judge Walker. See Amended Complaint ¶ 16, at 5; id. ¶ 31, at 7.

5.      On November 1, 2007, Judge Huling orally ruled that M. Martinez stated insufficient facts to support a claim for malicious abuse of process against P. Martinez.  See Amended Complaint ¶ 17, at 5.  M. Martinez and P. Martinez attempted to settle their claims before Judge Huling dismissed the case, but P. Martinez did not agree with the settlement agreement distilled into writing.  See Amended Complaint ¶¶ 18-22, at 6.

6.      On May 23, 2007, upon the advice of her counsel, P. Martinez voluntarily dismissed her domestic relations suit in Case No. DM-2007-0085.  See Amended Complaint ¶¶ 32-33, at 8.

7.      Also on May 23, 2007, M. Martinez filed a motion to dismiss P. Martinez' suit in Case No. DM-2007-0085 with prejudice.  On August 31, 2007, Officer Loughren recommended denial of the motion to dismiss with prejudice, and recommended that P. Martinez' voluntary

dismissal be the operative motion dismissing the case without prejudice.  See Amended Complaint ¶ 35, at 8.

8.      On August 28, 2007, M. Martinez filed a motion for declaratory judgment in Case No. DM-2007-0085 before Judge Walker.  See Amended Complaint ¶ 29, at 8-9.

9.      On August 28, 2007, M. Martinez also filed a motion for declaratory judgment in the Martinez' divorce proceeding, Case No. DM-1995-2963.  See Amended Complaint ¶ 41, at 9.

10.     On November 15, 2007, Latta made the following statements to Judge Whitefield during a hearing on the motion for declaratory judgment in Case No. DM-1995-2963: (i) that Judge Huling did not have jurisdiction and Judge Whitefield should re-open M. Martinez' and P. Martinez' divorce; (ii) that P. Martinez' suit before Judge Walker had not been dismissed at that time; (iii) that M. Martinez intended to amend his malicious-abuse-of-process claim; (iv) that P. Martinez' counterclaim for partition and accounting in Case No. CIV-2005-3878 would be dismissed; (v) that Officer Loughren advised P. Martinez to file for partition and accounting in family court; (vi) that Judge Walker had not yet reviewed the motion for declaratory judgment in Case No. DM-2007-0085 and was awaiting Judge Whitefield's rulings; (vii) that P. Martinez' federal RICO suit was dismissed as frivolous and P. Martinez was sanctioned in federal court. See Amended Complaint ¶¶ 43(a-j), at 9-10.

11.     On November 15, 2007, in Case No. DM-1995-2963, based upon Latta's statements that Case No. DM-2007-0085 was pending, Judge Whitefield recommended that M. Martinez' motions for declaratory judgment be consolidated before her.  See Amended Complaint ¶ 43(j), at 10.

12.     On November 15, 2007, in Case No. DM-1995-2963, Judge Whitefield assigned a special master, retired New Mexico State District Judge Robert L. Thompson, to review the Martinez' property rights under N.M.S.A. 1978, § 40-4-20(A).  <u>See</u> Amended Complaint ¶ 52, at 12.

13.     On January 14, 2008, in Case No. DM-2007-0085, Judge Walker adopted Officer Loughren's recommendation dismissing P. Martinez' case without prejudice.  <u>See</u> Amended Complaint ¶¶ 36-37, at 8.

14.     On January 25, 2008, in Case No. CIV-2005-03878 before Judge Huling, M. Martinez filed a motion to enforce the settlement agreement.  <u>See</u> Amended Complaint ¶ 23, at 6.

15.     Also on January 25, 2008, in Case No. DM-1995-2963, before Judge Whitefield, M. Martinez filed a motion to enforce the settlement.  <u>See</u> Amended Complaint ¶ 25, at 6.

16.     Judge Whitefield denied M. Martinez' motion to enforce the settlement, finding that Judge Huling had jurisdiction over the dispute.  <u>See</u> Amended Complaint ¶ 26, at 7.

17.     On January 30, 2008, in Case No. DM-2007-0085 before Judge Walker, M. Martinez moved to consolidate his motions for declaratory judgment in Case No. DM-1995-2963.  <u>See</u> Amended Complaint ¶¶ 43(j), 44, at 10-11.

18.     P. Martinez objected to the consolidation before Judge Whitefield, on the grounds that her case before Judge Walker was dismissed.  <u>See</u> Amended Complaint ¶ 45, at 11.

19.     On March 13, 2008, in Case No. DM-2007-0085, Officer Loughren stated that he had no authority to rule on the motion for declaratory judgment or motion to consolidate, because P. Martinez' case was dismissed.  <u>See</u> Amended Complaint ¶ 48, at 11.

20.     On June 5, 2008, in Case No. DM-2007-0085, Judge Huling denied M. Martinez' motion to enforce the settlement.  <u>See</u> Amended Complaint ¶ 23, at 6.

21.     In December, 2008, P. Martinez learned that her Case No. CIV-2007-0085 was closed by a clerical mistake.  See Amended Complaint ¶¶ 70-71, at 15.

22.     On December 23, 2008, in Case No. DM-1995-2963, P. Martinez filed a motion to dismiss for lack of subject-matter jurisdiction.  See Amended Complaint ¶ 62, at 14.

23.     On January 12, 2009, in Case No. DM-1995-2963, M. Martinez filed a response to the motion to dismiss, asserting that Judge Whitefield should dismiss the case for P. Martinez' lack of prosecution.  M. Martinez asserted that P. Martinez had refused to meet with Special Master Thompson.  See Amended Complaint ¶ 63, at 14.

24.     At the hearing on the motions to dismiss Case No. DR-95-2963, P. Martinez asserted that M. Martinez re-opened the divorce proceedings, and brought a motion for declaratory judgment and to enforce the settlement as an "abuse of process," because the divorce proceedings closed in 2003; P. Martinez requested an award of travel expenses and attorney's fees she incurred in litigating Case No. DM-1995-2963.  Amended Complaint ¶ 80, at 16.

25.     Latta told Judge Whitefield that P. Martinez re-opened the divorce proceeding, that Officer Loughren told P. Martinez to re-open the divorce, that P. Martinez did not follow up with Special Master Thompson, and that P. Martinez had the responsibility of meeting with Special Master Thompson to determine the Martinezes' property rights.  See Amended Complaint ¶ 80, at 17-18.

26.     Judge Whitefield stated on the record at the hearing on the motions to dismiss that P. Martinez "petitioned in the old divorce case" on January 5, 2007.  Amended Complaint ¶ 80(D), at 18.

27.     Judge Whitefield dismissed Case No. DM-95-2963 by minute order on March 24, 2009, for P. Martinez' lack of prosecution.  See Amended Complaint ¶¶ 77-78, at 15-16.  Judge

Whitefield did not award P. Martinez' requested attorney's fees and related expenses, and again noted that P. Martinez had reopened the divorce proceeding.  See Amended Complaint ¶ 80, at 18; Minute Order, Case No. DM-95-2963, filed in state court March 24, 2009, filed in federal court September 14, 2009 (Doc. 26)("DM Minute Order").

      28.     P. Martinez did not appeal Judge Whitefield's DM Minute Order.

      P. Martinez asserts that the following actions were a malicious abuse of process by M. Martinez and Latta: (i) M. Martinez' suit for malicious abuse of process filed against P. Martinez on May 15, 2009, see Amended Complaint ¶¶ 1, 3, 4 at 21-22; (ii) M. Martinez' motion to dismiss P. Martinez' counterclaim before Judge Huling, in which she alleged an interest in property, see Amended Complaint ¶¶ 13-15, at 5; ¶¶ 30-31, at 7; ¶ 43, at 9; ¶ 2, at 21; (iii)  M. Martinez' filing of motions in courts that lack subject-matter jurisdiction, see Amended Complaint ¶ 2, at 21-22; (iv) M. Martinez' filing in multiple courts a motion to enforce the settlement, with which he knew P. Martinez did not agree, see Amended Complaint ¶ 6, 7 at 23; (v) M. Martinez' and Latta's filing of a motion for declaratory judgment and to consolidate in Case No. DM-2007-0085, after the case was dismissed, see Amended Complaint ¶ 10, at 25; (vi) M. Martinez' filing for declaratory judgment in multiple courts, see Amended Complaint ¶ 11, at 25; and (vii) Latta's alleged misrepresentations to Judge Whitefield and Officer Loughren, see Amended Complaint ¶ 12, at 25; id. ¶ 13, at 27.  P. Martinez contends that she suffered damages from these actions in the form of attorney's fees, travel costs, and emotional distress.  See Amended Complaint ¶¶ 8-11, at 24-25; id. ¶¶ 21-22, at 30-31.  P. Martinez also asserts that Judge Whitefield's dismissal of her case precludes her from bringing her allegations again in another forum.  See Amended Complaint ¶ 18, at 29.

**1.      The Statute of Limitations Bars P. Martinez' Claims Arising From the Defendants' Actions in 2005.**

Chief Judge Molzen determines that P. Martinez' claims for malicious abuse of process have a three-year statute of limitations period, and, therefore, the statute of limitations bars P. Martinez' claims arising from M. Martinez' filing suit for malicious abuse of process against P. Martinez in 2005.  See R&R at 27-28.  P. Martinez admits that, if the correct statutory period is three, rather than four years, the limitations period may have run on her "1st charge of malicious abuse of process," but she otherwise objects to Chief Judge Molzen's calculation of the statute of limitations.  2nd Obj. at 18.

The Court previously determined that New Mexico's statute of limitations on claims for malicious abuse of process is four years.  See Martinez v. Martinez, slip op. at 41-42.  The Court applied the statute of limitations in N.M.S.A. 1978, § 37-1-4, which P. Martinez alleges is the correct statute of limitations.  See Martinez v. Martinez, slip op. at 41-42; Amended Complaint ¶ 3, at 22; 2nd Obj. at 18.  The Court issued its opinion in which it discussed the four-year statute of limitations before M. Martinez answered the Amended Complaint, and M. Martinez did not raise a statute of limitations defense in his answer.  See Defendant Michael Martinez's Answer to Patricia Martinez's Amended Complaint, filed April 19, 2010 (Doc. 86)("Answer").  Chief Judge Molzen recommends that the Court reconsider the correct statute of limitations governing claims of malicious abuse of process, and suggests that M. Martinez did not raise this defense in his Answer because of the Court's previous ruling.  See R&R at 27-28 n.6.  The Court has reviewed Chief Judge Molzen's recommendation, and P. Martinez' objections thereto, de novo, and the Court concludes that the New Mexico statute of limitations governing claims of malicious abuse of process has run on P. Martinez' allegations against M. Martinez arising from his conduct in 2005.  The Court will allow M. Martinez to raise that defense at this point in the litigation if he

wishes, because the Court's previous rulings may have led M. Martinez to believe that the defense was unavailable to him.  The Court also vacates the portion of its <u>Martinez v. Martinez</u>, slip op. which sets forth the statute of limitations for suits alleging malicious abuse of process under New Mexico law as four years.

New Mexico classifies malicious abuse of process as a tort damaging "personal rights." <u>DeVaney v. Thriftway Mktg. Corp.</u>, 1998-NMSC-001, ¶ 14, 124 N.M. 512, 953 P.2d 277. Under N.M.S.A. 1978, § 37-1-8, an action alleging "injury to the person or reputation of any person" must be brought within three years.  N.M.S.A. 1978, § 37-1-8.  The Court concludes that Chief Judge Molzen correctly determined that the statute of limitations for P. Martinez' malicious-abuse-of-process claims is N.M.S.A. 1978, § 37-1-8, and not N.M.S.A. 1978, § 37-1-4, which provides a statutory period for "unspecified actions."  The Court also determines that M. Martinez did not waive his right to assert the statute of limitations defense, because the Court's earlier ruling may have misled M. Martinez to believe that this defense was unavailable to him.  M. Martinez has not yet raised this defense, but that is likely because Chief Judge Molzen did not require the parties to brief the appropriate statute of limitations for P. Martinez' claims of malicious abuse of process.  <u>See</u> Nov. 10 Order at 10-13.  The Court will allow M. Martinez to amend his Answer to state the statute of limitations as a defense to P. Martinez' allegations of malicious abuse of process arising from M. Martinez' actions in 2005, if he desires.

### 2. <u>The Doctrine of Res Judicata Precludes the Court From Entertaining P. Martinez' Claims that M. Martinez' and Latta's Filings in Case No. DM-1995-2963 was a Malicious Abuse of Process</u>.

Chief Judge Molzen concludes that res judicata precludes P. Martinez from asserting that M. Martinez and Latta maliciously abused judicial processes by filing for declaratory judgment

and to enforce the settlement in M. Martinez and P. Martinez' divorce case, Case No. DM-1995-2963, because Judge Whitefield determined, on the merits, that these filings were not an abuse of process.  See R&R at 29-30.  P. Martinez has not specifically objected to this conclusion that Judge Whitefield's DM Minute Order is res judicata, precluding some of her claims of malicious abuse of process.  The Court, therefore, could have reviewed Chief Judge Molzen's conclusion only to determine whether it is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, but the Court has also reviewed Chief Judge Molzen's conclusion de novo.  The Court agrees that res judicata precludes the Court from examining P. Martinez' allegations that M. Martinez' and Latta's filings in the divorce proceeding, Case No. DM-1995-2963, were malicious abuse of process.

P. Martinez' Amended Complaint sets forth that, at the hearing on the motion to dismiss Case No. DM-1995-2963, P. Martinez contended:

> I have incurred costs of $5,034 in attorney fees for the declaratory and the Motion to Enforce and for traveling and hotel expenses for myself to testify and to represent myself.  I believe when an attorney has made a bad case filing, the abuse of process, and this would be by initiating this Court's involvement without probable cause because [Latta] knew or should have known there was no subject matter since 2003 . . . .

Amended Complaint ¶ 80(A), at 16.  P. Martinez also notes that Judge Whitefield denied P. Martinez' request for attorney's fees arising from the Defendants' alleged malicious abuse of process.  See Amended Complaint ¶ 80(E), at 18.  Indeed, in the DM Minute Order, which P. Martinez provided to the Court, Judge Whitefield ruled that P. Martinez' requests for attorney's fees and costs is denied.  See DM Minute Order at 1.  In Case No. DM-1995-2963, P. Martinez alleged that Latta and M. Martinez committed malicious abuse of process by filing motions for declaratory judgment and to enforce the settlement in a matter that lacked subject-matter jurisdiction, and Judge Whitefield entered a final judgment on the merits denying P. Martinez'

request for attorney's fees and costs arising from these actions.  Under New Mexico law, res judicata, also known as claim preclusion, bars re-litigation of "the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." Deflon v. Sawyers, 2006-NMSC-025, ¶ 2, 139 N.M. 637, 137 P.3d 577.  These uncontested facts which P. Martinez put into the record demonstrate that Judge Whitefield's ruling regarding M. Martinez' and Latta's alleged malicious abuse of process committed in Case No. DM-1995-2963 is res judicata, and Chief Judge Molzen correctly recommends that the Court may not, as a matter of law, review P. Martinez' allegations arising therefrom.

> **3.** **The Court Adopts Chief Judge Molzen's Recommendation of Granting Summary Judgment in Favor of Latta on Most of P. Martinez' Allegations That Latta Lied to Judge Whitefield.**

Chief Judge Molzen concludes that some of the statements that Latta made to Judge Whitefield -- which P. Martinez asserts were false -- were either true or do not constitute a malicious abuse of process.  See R&R at 30-33.  P. Martinez also asserts that she has alleged a meritorious claim for malicious abuse of process, because Latta falsely told Judge Whitefield that P. Martinez was sanctioned in her previous federal suit, whereas her attorney, and not P. Martinez, was sanctioned.  See Motion to Strike at 11.  The Court has reviewed Chief Judge Molzen's R&R, P. Martinez' objections thereto, and the record, de novo, and the Court determines that the remaining Defendants are entitled to summary judgment on P. Martinez' allegations of malicious abuse of process addressed in the R&R.

P. Martinez' claims of malicious abuse of process are generally disfavored in New Mexico, and the Court must construe the tort narrowly to protect litigants' right of access to the courts.  See Durham v. Guest, 2009-NMSC-007, ¶¶ 26-27, 145 N.M. 694, 204 P.3d 19; Fleetwood Retail Corp. of N.M. v. LeDoux, 2007-NMSC-047, ¶ 19, 142 N.M. 150, 164 P.3d 31.

The elements of a malicious-abuse-of-process action are: (i) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages. See Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19.

First, P. Martinez contends that Latta lied to Judge Whitefield and maliciously abused process by stating that Judge Huling recommended that P. Martinez file for partition and accounting in M. Martinez' and P. Martinez' divorce case. See Amended Complaint ¶¶ 80-81, at 17-18. P. Martinez contends that the truth is that Judge Huling told her to file for partition and accounting in family court, and not to reopen the divorce case. See Amended Complaint ¶ 81, at 18. Chief Judge Molzen concludes that this representation is not the "sort of 'false' statement that will support a claim for malicious abuse of process," because the statement did not cause P. Martinez to suffer from an "erroneous prosecution," or experience "'extortion, delay, or harassment,' nor was it related to a 'misuse of procedural devices such as discovery, subpoenas, and attachments.'" R&R ¶ 5, at 33 (quoting Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19). The Court agrees with Chief Judge Molzen that Latta's statements to Whitefield regarding whether Judge Huling directed P. Martinez to file in family court generally, or in the Martinez' divorce case specifically, is not a use of process that demonstrates an improper or irregular defense of M. Martinez' case, nor can the Court infer that Latta's primary motive in making these statements to Judge Whitefield was to accomplish an illegitimate end. See Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. The Court also does not see how this statement harmed P. Martinez. Indeed, P. Martinez does not object to Chief Judge Molzen's conclusion that this statement was not a malicious abuse of process. Chief Judge Molzen's recommendation is not clearly erroneous, arbitrary, obviously contrary to law, or

an abuse of discretion, and, using a de novo standard, is correct.  The Court adopts Chief Judge

Molzen's recommendation that Latta is entitled to summary judgment on this allegation.

Second, P. Martinez contends that Latta falsely told Judge Whitefield that P. Martinez

failed to prosecute her case by refusing to meet with Special Master Thompson.  <u>See</u> Amended

Complaint ¶¶ 80-81, at 17-18.   P. Martinez contends that it was M. Martinez', not her,

responsibility to follow-up with Special Master Thompson, because M. Martinez' filing of a

motion to enforce the settlement caused Special Master Thompson's hearing to be postponed.

<u>See</u> Amended Complaint ¶¶ 63-66, at 14.  Chief Judge Molzen concludes that this representation

is "not the kind of statement that can support a claim for malicious abuse of process" and that P.

Martinez cannot show "any damage she suffered by Latta claiming that P. Martinez had been

uncooperative."  R&R ¶ 4, at 32.  P. Martinez does not object to this conclusion.  The Court

agrees with Chief Judge Molzen that Latta's statements to Judge Whitefield regarding meeting

with Special Master Thompson cannot support a claim for malicious abuse of process.  Taking P.

Martinez' allegation as true, that it was M. Martinez', and not her, responsibility to follow-up

with Special Master Thompson, and, therefore, inferring that Latta lied to Judge Whitefield, P.

Martinez still fails to demonstrate how this statement damaged her.  Indeed, P. Martinez was

seeking dismissal of Case No. DM-1995-2963 when Latta made this statement, and Judge

Whitefield granted dismissal, albeit on grounds different from those that P. Martinez advanced.

Latta's statements, therefore, did not preclude P. Martinez from obtaining the relief she sought:

dismissal of the case.  Further, although P. Martinez did not receive the costs and fees she sought

on the basis of Latta and M. Martinez' alleged malicious abuse of process, P. Martinez sought

costs and fees on the theory that Judge Whitefield lacked subject matter jurisdiction over the

case.  The Court cannot reasonably infer, thus, that Latta's statements caused P. Martinez harm

by persuading Judge Whitefield to not award P. Martinez her requested fees and costs.  The Court, therefore, adopts Chief Judge Molzen's recommendation of granting Latta summary judgment on these allegations, as it is not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  Moreover, under the de novo review that the Court has undertaken, Chief Judge Molzen's conclusion is correct.

Third, P. Martinez contends that Latta falsely told Judge Whitefield that the case before Judge Walker, Case No. DM-2007-0085, was dismissed as of November 15, 2007.  <u>See</u> Amended Complaint ¶ 80(B), at 15.  Chief Judge Molzen concludes that this allegation raises no genuine issue of material fact, because, although Officer Loughren recommended dismissal of Case No. DM-2007-0085 on August 31, 2007, <u>see</u> Amended Complaint ¶ 35, at 8, Judge Walker did not adopt that recommendation until January 14, 2008, <u>see</u> Amended Complaint ¶¶ 36-37, at 8.  Chief Judge Molzen determines, therefore, that Latta's statement was correct, because Judge Walker could have decided to not dismiss that case in the interim, and, therefore, as of November 15, 2007, the case was still pending before Judge Walker.  P. Martinez does not object to this conclusion.  The Court has reviewed these findings to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, and under a de novo standard, agrees with Chief Judge Molzen that, because Latta's statement was accurate, no genuine issue of material fact exists whether Latta's statement was a malicious abuse of process. The Court will dismiss this allegation against Latta.

Fourth, P. Martinez contends that Latta falsely told Judge Whitefield on November 15, 2007, that M. Martinez intended to amend his complaint for malicious abuse of process in Case No. CIV-2005-3878, and that P. Martinez' counterclaim in that suit was going to be dismissed. <u>See</u> Amended Complaint ¶ 43(d), at 10.  Chief Judge Molzen concludes that these statements do

not set forth a claim for malicious abuse of process as a matter of law, because a "party may always seek an extension of time in which to modify a scheduling order, and it is not 'fraudulent' to say that you intend to do so."  R&R ¶ 2, at 31.  Chief Judge Molzen also states that it is not an abuse of process for counsel to inform a judge of his or her "perceptions . . . at a hearing, however misinformed or misguided or wrong they may be."  R&R ¶ 2, at 31.  P. Martinez does not object to this conclusion.  The Court agrees with Chief Judge Molzen that Latta informing Judge Whitefield that M. Martinez might seek an extension of time to amend his complaint does not demonstrate an improper use of process that is irregular in the prosecution of his claims; indeed, parties may seek an extension of time to amend their complaint, and seeking such an extension is not, in and of itself, an improper use of process.  See Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19 (listing as the first element of a claim for malicious abuse of process the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge).  Additionally, any statement that P. Martinez' counterclaims would be dismissed appears to be accurate; the record which P. Martinez has put before the Court demonstrates that Judge Huling dismissed P. Martinez' counterclaims on July 5, 2006.  See Amended Complaint ¶¶ 13-15, at 5.  A true statement regarding the status of P. Martinez' counterclaims is not a malicious abuse of process.  The Court, therefore, adopts Chief Judge Molzen's recommendation, as it is not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, and, using a de novo standard, is correct.  The Court grants summary judgment to Latta on this allegation.

Last, P. Martinez alleges that Latta falsely told Judge Whitefield on November 15, 2007, that P. Martinez was sanctioned in her previous federal suit and that P. Martinez' federal suit was dismissed as "frivolous."  Amended Complaint ¶ 43(i), at 10.  P. Martinez contends that her suit

was not frivolous, because it was ultimately remanded to state court without prejudice.  See Amended Complaint ¶ 43(i), at 10.  Chief Judge Molzen determines that Latta's statements are not false because, in P. Martinez' previous federal suit, Martinez v. Martinez, 207 F. Supp. 2d 1303, the Honorable  Bruce D. Black, District Judge for the United States District Court for the District of New Mexico, sanctioned P. Martinez' attorney for re-filing a nearly identical complaint after Judge Black warned P. Martinez and her attorney that her allegations did not appear sufficient to state a claim under RICO, and told P. Martinez' attorney to read several cases before deciding to file an amended complaint.[15]  See R&R ¶ 3, at 32.  Chief Judge Molzen concludes that, because P. Martinez' attorney re-filed an amended complaint that was nearly identical to the complaint P. Martinez filed pro se, Latta's statements that P. Martinez was sanctioned and that her complaint was dismissed as frivolous are accurate.  See R&R ¶ 3, at 32. P. Martinez contends that it was her attorney whom Judge Black sanctioned, and, therefore, her malicious abuse of process allegation is meritorious, because Latta's statements are false.  See Motion to Strike at 11.

The Court has reviewed Chief Judge Molzen's conclusion and P. Martinez' objection thereto de novo, and agrees with Chief Judge Molzen that these allegations are insufficient to raise a genuine issue of fact whether Latta's statements are a malicious abuse of process.  The Court does not, however, adopt Chief Judge Molzen's conclusion that P. Martinez' characterization of her federal suit is "false."  R&R ¶ 3, at 32.  First, it is common in hearings for a party's attorney to refer to the party alone and not to their attorney.  For example, the Court normally refers to motions as being filed by the party whom an attorney represents, and not the

---

[15] Judge Black took senior status on October 1, 2012.  See United States District Court for the District of New Mexico, Wikipedia (April 3, 2013 6:48 PM), https://en.wikipedia.org/wiki/United_States_District_Court_for_the_District_of_ New_ Mexico.

attorney, although the attorney likely drafted the motion and submitted it to the Court. Therefore, a statement that P. Martinez was sanctioned, when in truth her attorney was sanctioned, is not entirely false.  On the other hand, P. Martinez correctly maintains that it was her attorney, and not she, whom Judge Black sanctioned.  The Court also notes that Judge Black determined that refilling P. Martinez' original complaint was unreasonable and not done in good faith, and the Tenth Circuit stated, on appeal, that the allegations in P. Martinez' amended complaint were "without merit."   Martinez v. Martinez, 62 F. App'x 309, 315 (10th Cir. 2003)(unpublished).  Latta's statement, therefore, that P. Martinez' complaint was dismissed as "frivolous" is not completely false, although perhaps a poor word choice.  Amended Complaint ¶ 43(i), at 10.  In any case, the Court does not see how P. Martinez suffered any harm from Latta's statements regarding the status of P. Martinez' previous federal suit.  See Durham v. Guest, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19 (listing damages as one of the elements of a claim for malicious abuse of process).  The Court does not agree with Chief Judge Molzen, however, that P. Martinez' statement that her attorney was sanctioned for failing to supply requested case law is "false."  R&R at 32.  It appears as though Judge Black sanctioned P. Martinez' attorney for failing to read relevant case law and amend P. Martinez' complaint accordingly; this sanction is substantially similar to P. Martinez' statement that her attorney was sanctioned for supplying case law necessary to support her complaint.  See Martinez v. Martinez, 207 F. Supp. 2d at 1305 (stating that P. Martinez' counsel was instructed to "read several cases before deciding whether to file an amended complaint retaining the RICO claim").  In the rough and tumble of oral advocacy in court, where statements often have to be made at a machine-gun pace, these are within the range of oral statements that are reasonably accurate and understandable.  While precision is always preferable, the law gives advocates some room to

maneuver without being subject to personal liability.  The courts of New Mexico -- both state and federal -- should not become a breeding ground for an endless number of suits every time an attorney opens his or her mouth in court.   The Court adopts Chief Judge Molzen's recommendation that Latta is entitled to summary judgment on this allegation, but does not adopt Chief Judge Molzen's conclusions that P. Martinez' allegations are false.  Accordingly, the Court overrules P. Martinez' objection to this recommendation.

**4.       The R&R Does Not Address All of P. Martinez' Allegations of Malicious Abuse of Process.**

Chief Judge Molzen does not address the following alleged malicious abuses of process in the R&R: (i) that M. Martinez' motion to dismiss P. Martinez' counterclaim before Judge Huling was an attempt to achieve a more favorable forum, and to improperly reopen the divorce proceeding, see Amended Complaint ¶¶ 13-15, at 5; ¶¶ 30-31, at 7; ¶ 43, at 9; ¶ 2, at 21; (ii) that Latta falsely told Judge Whitefield on November 15, 2007 that Judge Huling did not have jurisdiction and that Judge Whitefield should re-open the Martinez' divorce, see Amended Complaint ¶ 43, at 9; (iii) that Latta falsely told Judge Whitefield that Judge Walker had not yet reviewed the motion for declaratory judgment in Case No. DR-2007-0085, and was awaiting Judge Whitefield's rulings, see Amended Complaint ¶ 43(f), at 10;  (iv) that Latta falsely told Judge Whitefield that P. Martinez re-opened the divorce proceeding, see Amended Complaint ¶ 80, at 16; id. ¶ 83, at 19; (v) that M. Martinez' filing of a motion to enforce the settlement, with which he knew P. Martinez did not agree, in two courts, (Case Nos. CIV 2007-3878 and DR 1995-2963), was a malicious abuse of process see Amended Complaint ¶¶ 6, 7 at 23; and (vi) that M. Martinez and Latta's filing of motions for declaratory judgment and to consolidate in Case No. DM-2007-0085, after the case was dismissed, were malicious abuses of process, see Amended Complaint ¶ 10, at 25.  Because the Court may only grant summary judgment sua

- 82 -

sponte after the Court identifies facts that may not genuinely be in dispute, see Fed. R. Civ. P. 56(f), and after P. Martinez has been "on notice that she had to come forward with all of her evidence," Celotex Corp. v. Catrett, 477 U.S. at 326, the Court cannot grant summary judgment on these allegations, because Chief Judge Molzen does not address them in the R&R.

Although Chief Judge Molzen addresses P. Martinez' allegation that Latta falsely told Judge Whitefield that Judge Huling was in the process of dismissing P. Martinez' counterclaims, and that Judge Huling directed P. Martinez to file for relief in the divorce case, see R&R ¶¶ 2, 5, at 31-33, Chief Judge Molzen does not address P. Martinez' contention that the filing of a motion to dismiss P. Martinez' counterclaims was, itself, a malicious abuse of process. Although P. Martinez alleges that Latta and M. Martinez "deceived" Judge Huling into believing that filing P. Martinez' claim for partition and accounting in family court would "expedite the process," P. Martinez also contends that the very motion to dismiss was a malicious abuse of process. Amended Complaint ¶ 43, at 9. This interpretation is evident, because P. Martinez maintains that M. Martinez moved to dismiss her counterclaims after Judge Huling "stated that it had general authority to rule on this matter." Amended Complaint ¶ 30, at 7. The Court concludes that, although her claim is not clearly pled, P. Martinez' intent is to allege that M. Martinez, through "motioning the court to sever her property claims to a different court," Amended Complaint ¶ 2, at 21-22, for the purpose of obtaining a more favorable forum, see Amended Complaint ¶ 43(c), at 10, caused her to suffer additional costs and emotional distress, see Amended Complaint ¶ 8, at 24. M. Martinez may be able to defeat this allegation by demonstrating that the statutory period has run; it is not clear to the Court when he filed his motion to dismiss, except that he filed it before July 5, 2006, when Judge Huling ruled on the motion. Additionally, M. Martinez may have had probable cause for filing this motion, as Judge

Huling ultimately agreed with him that family court was a preferable forum. Because, however, the R&R has not put P. Martinez on notice that this allegation may be dismissed if she does not bring forward all of her evidence, the Court will not grant summary judgment in favor of M. Martinez on this allegation.

Neither does the R&R address three allegedly false statements that Latta made to Judge Whitefield on November 15, 2007, and at the hearing on the motions to dismiss. The Court recognizes that these allegations may fail to raise a genuine issue of material fact whether Latta maliciously abused process. The Court believes that P. Martinez is alleging that Latta falsely told Judge Whitefield that Judge Huling did not have jurisdiction over P. Martinez claims relating to marital property, although the Amended Complaint is not very specific. See Amended Complaint ¶ 43, at 9 ("Defendant 3 and her co-counsel also lied to Judge Whitefield and told her that Judge Huling told them that she (Judge Huling) did not have subject matter jurisdiction and that is why they were before her then."). This allegation may fail for the absence of a genuine issue of material fact; it is not apparent to the Court whether Judge Huling reconsidered her previous ruling that she had subject matter jurisdiction over P. Martinez' counterclaims or dismissed P. Martinez' counterclaims because family court is a preferential forum. If Judge Huling, indeed, reconsidered her previous ruling, then P. Martinez' allegation would likely fail as a matter of law -- if Judge Huling determined that she did not have jurisdiction over P. Martinez' counterclaims, then the record may not support P. Martinez' allegation that M. Martinez sought to dismiss her counterclaims for an improper purpose. Further, it is unclear how P. Martinez suffered any damages from this alleged mischaracterization of Judge Huling's ruling. At the time Latta made this statement, P. Martinez' claims were already before Judge Whitefield, therefore, Latta likely did not cause P.

Martinez to suffer an additional harm by forcing her to litigate in multiple forums.  Regarding

Latta's allegedly false statement that Judge Walker was awaiting a ruling from Judge Whitefield

on M. Martinez' motion for declaratory judgment, although this statement creates an inference

that, for whatever reason, Latta and M. Martinez were attempting to consolidate all of the

motions before Judge Whitefield, this statement is not false for the reason P. Martinez contends.

See Amended Complaint ¶ 43(f), at 10.  P. Martinez contends that this statement was a falsehood

because the case before Judge Walker was closed; however, as of November 5, 2007, Judge

Walker had not adopted Officer Loughren's recommendation of dismissing the case.

Accordingly, P. Martinez' basis for attacking this statement does not have a sound basis in the

facts.  Last, it is unclear what harm, if any, P. Martinez suffered from Latta informing Judge

Whitefield that P. Martinez reopened the divorce.  At the time this statement was made, M.

Martinez, Latta, and P. Martinez were all seeking the same result: dismissal of Case No. DM-

1995-2963.   Judge Whitefield dismissed the case, albeit not for the reason P. Martinez

propounded.  See DM Minute Order at 1.  Further, Judge Whitefield apparently believed that P.

Martinez reopened the case.  See DM Minute Order at 1 ("On January 5, 2007 [P. Martinez]

moved for . . . relief . . . in this action (which she reopened) . . . .").  Accordingly, no genuine

issue of material fact may exist whether these statements were a malicious abuse of process, as

Latta's statement may have been true.  Nevertheless, because P. Martinez was not put on notice

that these allegations might be subject to dismissal, the Court will not dismiss these allegations

sua sponte.

Chief Judge Molzen also did not specifically address whether M. Martinez' filing for

enforcement of the settlement in two separate courts was a malicious abuse of process.   On

January 25, 2008, M. Martinez filed a motion to enforce the settlement before Judge Whitefield,

see Amended Complaint ¶ 25, at 6, and on June 5, 2008, M. Martinez filed a motion to enforce

the settlement before Judge Huling, see Amended Complaint ¶ 23, at 6.   Although the Court

concludes that Chief Judge Molzen correctly determined that the doctrine of res judicata

precludes the Court from reviewing P. Martinez' allegations regarding M. Martinez and Latta's

filing a motion to enforce the settlement in the divorce case, Case No. DM-1995-2963, see R&R

at 29, Chief Judge Molzen did not address, and P. Martinez did not contend before Judge

Whitefield, that the act of filing for the same relief in multiple courts was a malicious abuse of

process, see Amended Complaint ¶ 80(A), at 16 (contending that filing for enforcement of the

settlement and declaratory judgment in Case No. DM-1995-2963 was an abuse of process,

because that court lacked subject matter jurisdiction, but not because M. Martinez made the same

motions in other courts).   It strikes the Court as odd that M. Martinez would seek to attain the

same relief in multiple forums, and, therefore, P. Martinez' contention that M. Martinez filed in

multiple courts for the purpose of exhausting P. Martinez' resources may be meritorious.   See

DeVaney v. Thriftway Mktg. Corp., 1998-NMSC-001, ¶ 28, 124 N.M. 512, 953 P.2d 277

(defining a lack of probable cause in the context of a claim for malicious abuse of process as

evidence of "some irregularity or impropriety suggesting extortion, delay or harassment").   The

Court will not dismiss this allegation, because P. Martinez was not put on notice that she need

come forward with all of her evidence to prove M. Martinez' malicious abuse of process in this

regard.

Last, Chief Judge Molzen does not address whether M. Martinez and Latta's filing for

declaratory judgment and to consolidate in Case No. DM-2007-0085 was a malicious abuse of

process.   Although Chief Judge Molzen addresses P. Martinez' allegations that moving for

declaratory judgment in Case No. DM-1995-2963 was a malicious abuse of process, see R&R at

29-30, her R&R does not address P. Martinez' companion allegation that M. Martinez and Latta maliciously abused process by filing these motions in a closed case.   See Verified Aff. ¶ 1(21)(b)(vii).  P. Martinez' allegation relating to the motion for declaratory judgment may fail to raise a genuine issue of material fact, because the record before the Court demonstrates that M. Martinez filed this motion before Judge Walker adopted Officer Loughren's recommendation that the case be dismissed.   P. Martinez' allegation, therefore, that M. Martinez filed for declaratory judgment in a closed case is, at least in part, not true.  See Amended Complaint ¶¶ 36-37, at 8 (stating that Judge Walker dismissed Case No. DM-2007-0085 on January 14, 2008); Amended Complaint ¶ 39, at 8-9 (stating that M. Martinez filed his motion for declaratory judgment before Judge Walker on August 28, 2007).   On the other hand, M. Martinez and Latta moved to consolidate Case No. DM-2007-0085 after Judge Walker adopted the recommendation dismissing the case, which is odd, and may have been done for an improper purpose.   See Amended Complaint ¶¶ 43(j), 44, at 10-11 (stating that M. Martinez moved to consolidate his declaratory judgment before Judge Walker on January 30, 2008).  Further, the transcript which P. Martinez attaches to her Verified Aff. indicates that Latta intended to reopen Case No. DM-2007-0085 for the purpose of seeking declaratory judgment in a second forum, in addition to the proceedings before Judge Walker.  See Mar. 13, 2008 Tr. at 19:8-25 (Latta, Loughren)(Officer Loughren informs Latta that he does not have jurisdiction over M. Martinez' motion for declaratory judgment, because the case is closed, and Latta states that she "would move to amend to make it a verified petition for declaratory judgment" so that the case could be reopened).  The record before the Court does not demonstrate whether M. Martinez and Latta succeeded in reopening the case before Judge Walker.  That Latta indicated a desire to seek declaratory relief in a second forum raises an inference, however, that Latta and M. Martinez

were not seeking to vindicate their rights through these filings, but, rather, hoped to drain P. Martinez' resources by causing her to litigate in multiple forums. A more complete record may indicate that no genuine issue of material fact exists supporting P. Martinez' allegations, but P. Martinez was not on notice that a complete record was needed for this specific allegation. The Court will sustain P. Martinez' objection in the Verified Aff. regarding this specific claim of malicious abuse of process, and the Court will not dismiss this claim.

The Court, therefore, adopts the R&R in part and rejects in part. The Court adopts Chief Judge Molzen's recommendation that Latta and M. Martinez be granted summary judgment on the merits of P. Martinez' claims for partition and accounting, and overrules P. Martinez' objections thereto. The Court also adopts Chief Judge Molzen's recommendation that M. Martinez be allowed to amend his Answer to state a statute of limitations defense to P. Martinez' claims of malicious abuses of process arising from his conduct in 2005, and overrules P. Martinez' objections thereto. The Court agrees with Chief Judge Molzen that the doctrine of res judicata precludes the Court from reviewing P. Martinez' allegation that M. Martinez and Latta maliciously abused process by filing motions to enforce the settlement and for declaratory judgment in Case No. DM-1995-2963, over which P. Martinez alleges the state court lacked subject matter jurisdiction. The Court also adopts Chief Judge Molzen's recommendation that Latta is entitled to summary judgment on P. Martinez' allegations that some of Latta's statements to Judge Whitefield were false, and the Court overrules P. Martinez' objections thereto. Chief Judge Molzen did not issue a recommendation on P. Martinez' six remaining allegations of malicious abuse of process, and, therefore, P. Martinez' objections relating to those allegations are sustained, and the Court will not dismiss those allegations.

III.     **THE COURT DENIES THE MOTION TO CERTIFY**.

P. Martinez requests the Court to certify to the Supreme Court of New Mexico the question of when the Martinez' divorce became final.  See Motion to Certify at 1.  M. Martinez and Latta oppose this certification.  See MTC Response at 1.  The Court will not certify this question.

The Tenth Circuit has stated:

> When it comes to certification, we don't seek to "trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves." Pino v. United States, 507 F.3d 1233, 1236 (10th Cir.2007). But when important and close questions of state legal policy arise, we recognize that certification may "in the long run save time, energy, and resources and help[ ] build a cooperative judicial federalism." Lehman Bros. v. Schein, 416 U.S. 386, 391 . . . (1974). Certification in these circumstances "give[s] meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state . . . courts." Pino, 507 F.3d at 1236; see also 10th Cir. Rule 27.1.

United States v. Reese, Case No. 12-2025, 2012 WL 6553794, at *1 (10th Cir. Dec. 11, 2012)(unpublished).  In this case, the Court does not believe it is confronted with an unsettled question of state law, although, admittedly, divorce and marital relations in New Mexico likely implicate "important and close questions of state legal policy."  United States v. Reese, 2012 WL 6553794, at *1.  The Court determines that New Mexico courts have charted a "reasonably clear and principled course," regarding when the Martinez' divorce was final, and the Court will follow that course.  Pino v. United States, 507 F.3d 1236.

The Supreme Court of New Mexico denied certiorari in Mitchell v. Mitchell, see 104 N.M. 84, 717 P.2d 60, and has recently cited the decision with approval, see Diamond v. Diamond, 2012-NMSC-022, ¶ 34 283 P.3d 260.  There is, therefore, no indication that the Supreme Court of New Mexico disagrees with the Court of Appeals of New Mexico's ruling.  In

Mitchell v. Mitchell, the Court of Appeals of New Mexico grappled with a substantially similar situation to that before the Court here: the family court entered a decree of divorce on March 19, 1983, and the Court of Appeals of New Mexico determined that the husband and wife's property acquired after that date was separate property, even though the family court did not enter a final decree until a later date. See 104 N.M. at 215-16, 719 P.2d at 442-43. Neither party asserts that this divorce was bifurcated, wherein "a partial decree of divorce is entered before the division of community property." Gilmore v. Gilmore, 2010-NMCA-013, ¶ 15, 147 N.M. 625, 227 P.3d 115 (internal quotations omitted).[16] The parties, therefore, assert that M. Martinez and P. Martinez had a unified divorce, where "property division judgments are simultaneous with the divorce decree." Gilmore v. Gilmore, 2010-NMCA-013, ¶ 15, 147 N.M. 625, 227 P.3d 115 (internal quotations omitted). On February 6, 1998, Judge Kass announced: "The parties are divorced." Divorce Minute Order at 1. Although P. Martinez appealed many aspects of the Divorce Minute Order, she did not contest whether the parties are divorced. See generally Proposed Findings and Conclusions. The Court determines, therefore, that under New Mexico law, the Martinez' were divorced on February 6, 1998, and the family court retained jurisdiction to hear P. Martinez' appeal of the Divorce Minute Order. This interpretation of New Mexico law

---

[16] The Court notes that the docket sheet from Case No. DM-1995-2963 indicates that the February 6, 1998 decree of divorce was a "partial decree" evidencing that divorce was bifurcated, and not unified. Martinez v. Martinez Case No. DM-9502963 Case Detail at 2, filed September 24, 2009 (Doc. 26-1)("02/06/1998 NCJ: PARTIAL DECREE . . . FILING MINUTE ORDER GRANTING DIVORCE . . ."). Whether the divorce was bifurcated or unified, however, does not alter the Court's determination that, as of February 6, 1998, the parties were divorced. The only difference between a bifurcated and unified divorce is that in a unified divorce, property is allocated at the same time as the divorce, whereas in a bifurcated divorce, the parties are divorced before the property is allocated. Therefore, whether Judge Kass allocated M. Martinez' and P. Martinez' property on February 6, 1998 does not change the Court's determination that the Judge Kass' "GRANTING DIVORCE" on that date through the Divorce Minute Order divorced the parties. Martinez v. Martinez Case No. DM-9502963 Case Detail at 2.

is one that it makes all of the time, and there is no sound reason to send the case to the Supreme Court of New Mexico when it has a good precedent from the Court of Appeals of New Mexico, supported by New Mexico law.  The Court will not certify the question of when the Martinez' were divorced to the Supreme Court of New Mexico.

**IT IS ORDERED** that: (i) the Magistrate Judge's Discovery Order and Report and Recommendation, filed June 26, 2012 (Doc. 238), is adopted in part and rejected in part; (ii) Plaintiff Patricia Martinez' objections to the Discovery Order and Report and Recommendation are overruled in part and sustained in part; and (iii) the Motion to Certify Decree Divorce Dates - NM Supreme Court, filed November 13, 2012 (Doc. 310), is denied.  P. Martinez' Count II of her Amended Complaint, filed April 8, 2009, is dismissed with prejudice.  P. Martinez' allegations of malicious abuse of process are dismissed, in part, with prejudice.  Defendant Michael Martinez may amend the Defendant Michael Martinez's Answer to Patricia Martinez's Amended Complaint, filed April 19, 2010 (Doc. 86), as set forth herein.

_____
UNITED STATES DISTRICT JUDGE

*Parties and Counsel:*

Patricia Martinez
Broken Arrow, Oklahoma

    *Plaintiff pro se*

Joshua R. Simms
Albuquerque, New Mexico

    *Attorney for Defendant Michael Martinez*

Colin Lambert Hunter
Hunter Law Firm
Albuquerque, New Mexico

*Attorneys for Defendant Lynda Latta*